FEB. 22, 2008

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No.:

CYNTHIA FARBER,

## 08-80178-CIV-MARRA/JOHNSON

     Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

     Defendant.

_____/

## NOTICE OF REMOVAL

     COMES NOW Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY ("STATE FARM"), by and through its undersigned counsel, and petitions this Honorable Court for the removal of that certain cause of action now pending in the Circuit Court of the Fifteenth Judicial Circuit, in and for Palm Beach County, Florida, styled CYNTHIA FARBER vs. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Case No. 2008-CA-001334XXXXMB AJ, wherein Plaintiff seeks damages in an amount exceeding her policy of uninsured-motorist insurance coverage of $100,000.00 against Defendant, STATE FARM, and respectfully shows unto this Honorable Court as follows:

     1.     STATE FARM was and is a citizen of a foreign state, being incorporated in and a citizen of the State of Illinois. At the time this action was commenced and at the present time, STATE FARM was not and is not a citizen of or incorporated in the State of Florida. At the time this action was commenced and at the present time, STATE FARM did not and does not have its principal place of business in Florida. STATE FARM has its

principal place of business in Bloomington, Illinois. (*See also* Aff. of David B. Krouk, Esq., attached as Exhibit "A.")

2.    This action was commenced in the Circuit Court of the Fifteenth Judicial Circuit of the State of Florida, in and for Palm Beach County, Florida, and service of process was received by the Florida Department of Financial Services on or about January 22, 2008, and forwarded to STATE FARM by Certified Mail on January 24, 2008 The Plaintiff served the undersigned with a First Amended Complaint on February 20, 2008. This action is pending in that court which is within the West Palm Beach Division of the United States District Court for the Southern District of Florida.

3.    At the time when suit was instituted, Plaintiff, CYNTHIA FARBER was a resident of Palm Beach County, Florida. As such, Plaintiff is a citizen of the State of Florida. Complete diversity exists between the parties in accordance with 28 U.S.C. §1332.

4.    This is a civil action brought by Plaintiff seeking damages under a policy of uninsured-motorist insurance with a policy limit of \$100,000.00. The First Amended Complaint seeks "damages greater than the uninsured motorist coverage provided in the . . . insurance contract . . . ." (Pl.'s Am. Compl. at 3, attached as Exhibit "B"; *see also* Aff. of David B. Krouk, Esq., attached as Exhibit "A.") Accordingly, the amount in controversy exceeds \$75,000.00.

5.    Copies of all process, pleadings, and orders served upon STATE FARM are attached hereto as Exhibit "B."

6.    In accordance with 28 U.S.C. § 1446(d), the undersigned shall file a certification of removal with the clerk of the Circuit Court of the Fifteenth Judicial Circuit,

In and For Palm Beach County, Florida, promptly after filing this Notice of Removal with the Court.

WHEREFORE, Defendant, STATE FARM, prays that this Honorable Court exercise jurisdiction over this matter.

Respectfully submitted,

DAVID B. KROUK, ESQ.
Florida Bar No.: 0949840
dkrouk@butlerpappas.com
JAMES MICHAEL SHAW, JR., ESQ.
Florida Bar No.: 0677851
jshaw@butlerpappas.com
BUTLER PAPPAS WEIHMULLER KATZ CRAIG LLP
777 S. Harbour Island Boulevard
Suite 500
Tampa, Florida 33602
Telephone: (813) 281-1900
Facsimile:   (813) 281-0900
Attorneys for Defendant State Farm Mutual Automobile
Insurance Company

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished this 21st day of February, 2008, by facsimile (without attachments) and U.S. Mail (with attachments) to the following:

David C. Prather, Esq.
Lytal, Reiter, Clark, Fountain & Williams, LLP
515 N. Flagler Drive, Suite 1000
West Palm Beach, FL 33401
Attorneys for Plaintiff

JAMES MICHAEL SHAW, JR., ESQ.

# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No.:

CYNTHIA FARBER,

Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

Defendant.

_____/

## **AFFIDAVIT OF DAVID B. KROUK IN SUPPORT OF REMOVAL**

STATE OF FLORIDA

COUNTY OF HILLSBOROUGH

BEFORE ME, the undersigned authority, personally appeared DAVID B. KROUK,

who, after being first duly sworn, deposes and says that he has personal knowledge of the

following:

1.  I am over the age of 18 years and competent to make this Affidavit.

2.  I am a Partner with the firm of Butler Pappas Weihmuller Katz Craig LLP,

attorneys for Defendant STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

in the above-styled cause of action.

3.  My business address is Butler Pappas Weihmuller Katz Craig LLP, 777 S.

Harbour Island Blvd., Suite 500, Tampa, Florida, 33602.

4.  For roughly fifteen (15) years, my practice has been devoted to the defense

of personal injury claims, insurance coverage disputes, and bad-faith claims. Over the past

seven (7) years, I have devoted a significant number of hours to representation of STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and have spent literally thousands of hours examining its business records in connection with various claims. I am familiar with the abbreviations used in STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY's insurance policies.

6.      STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY is a corporation organized under the laws of the State of Illinois. Its principal place of business is also located in Bloomington, Illinois.

7.      I have examined the insurance policy and coverage-disclosure letter referenced in the Plaintiff's Complaint in the above-captioned matter. The abbreviation "U3 100/300" indicates that, at the relevant time, the Plaintiff carried uninsured-motorist coverage in the amount of $100,000.00 per person and $300,000.00 per accident.

8.      Because the Complaint seeks damages exceeding the face value of the policy, the amount in controversy in this matter exceeds $75,000.00.

FURTHER AFFIANT SAYETH NAUGHT.

DAVID B. KROUK

SWORN TO AND SUBSCRIBED BEFORE ME this 21st day of February, 2008, by DAVID B. KROUK, who is personally known to me.

NOTARY PUBLIC
State of Florida at Large

My Commission Expires:

2

# Exhibit B



**ALEX SINK**
**CHIEF FINANCIAL OFFICER**
**STATE OF FLORIDA**
Florida Department of Financial Services


08-03014

*5 9 Z 8 0 1 9 3 5*

CYNTHIA FARBER

PLAINTIFF(S).

VS.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

DEFENDANT(S).

CIVIL ACTION SUMMONS, COMPLAINT, EXHIBIT

CASE #:   50 2008 CA 001334 XXXX MB A.
COURT:   CIRCUIT COURT
COUNTY:   PALM BEACH
DFS-SOP#: 08-03014

# OK To Image

## NOTICE OF SERVICE OF PROCESS

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the State of Florida. Said process was received in my office by MAIL on the 22nd day of January, 2008 and a copy was forwarded by Certified Mail on the 24th day of January, 2008 to the designated agent for the named entity as shown below.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
RICK WILSON (flor.clms-dfs.604K19@statefarm.com)
7401 CYPRESS GARDENS BOULEVARD
WINTER HAVEN FL 33888-0001

* Our office will only serve the initial process (Summons and Complaint) or Subpoena and is not responsible for transmittal of any subsequent filings, pleadings or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule #1.080.

*alex Sink*

Alex Sink
Chief Financial Officer

cc to: Plaintiff's Representative for filing in appropriate court:

DAVID C. PRATHER
515 NORTH FLAGLER DRIVE
10TH FLOOR-NORTHBRIDGE CENTRE
WEST PALM BEACH FL 33401

AJ1

Division of Legal Services - Service of Process Section
200 East Gaines Street - P.O. Box 6200 - Tallahassee, Florida 32314-6200 - (850) 413-4200 - Fax (850) 922-2544

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT, IN AND
FOR PALM BEACH COUNTY, FLORIDA

CIVIL DIVISION

CASE NO.:

**2008 CA 001334 XXXX MB**

CYNTHIA FARBER,

    Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Defendant.

_____/

## CIVIL ACTION SUMMONS

THE STATE OF FLORIDA:
To Each Sheriff of the State:

YOU ARE COMMANDED to serve this summons and a copy of the Complaint and/or Petition in this action on Defendant:

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY**
**by serving its Registered Agent:**
**Chief Financial Officer**
**200 East Gaines Street**
**Tallahassee, FL 32399**

Each defendant is required to serve written defenses to the Complaint or petition on

David C. Prather, Esquire
LYTAL & REITER, CLARK, FOUNTAIN & WILLIAMS, L.L.P.

Plaintiffs' attorney, whose address is:

BY FLORIDA DEPARTMENT
OF FINANCIAL SERVICES
2008 JAN 24  PH 2: 08
SERVED ON DEFENDANT

-1-

515 North Flagler Drive
10th Floor - Northbridge Centre
Post Office Box 4056
West Palm Beach, FL 33402
(561) 655-1990

within twenty (20) days after service of this summons on that defendant, exclusive of the day of service and to file the original of the defenses with the clerk of this court either before service on plaintiffs' attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

DATED on this JAN 16 2008 day of January, 2008.

SHARON R. BOCK
Clerk & Comptroller

As Clerk of the Court

By: SANDRA CUEVA
As Deputy Clerk

In accordance with the Americans With Disabilities Act, persons in need of a special accommodation to participate in this proceeding shall, within a reasonable time prior to any proceeding, contact the Administrative Office of the Court, , telephone , or 1-800-955-8771 (TDD), or 1-800-955-8770 (V), via Florida Relay System.

Dapré ako ki fet avek Americans With Disabilities Act, tout moun ki ginyin yun bézwen éspésiyal pou akomodasiyon pou yo patisipé nan pwogram sa-a dwé, nan yun tan rézonab avan ninpot aranjman kapab fet, yo dwé kontakté Administrative Office of the Court, oubyen 1-800-955-8771 (T.D.D.) oubyen 1-800-9958700(V) an pasan pa Florida Relay Service.

En accordance avec la Loi des "Americans With Disabilities". Les personnes en besoin d'une accommodation speciale pour participer a ces procédures doivent, dans un temps raisonable, avant d'entrepredre aucune autre démarche, contacter l'office adminstrative de la Court, ou 1-800-955-8770 (V) Via Florida Relay Service.

"De acuerdo con el Acto ó Decreto de los Americanos con Impedimentos, Inhabilitados, personas en necesidad del servicio especial para participar en este procedimiento deberán, dentro de un tiempo razonable, antes de cualquier procedimiento, ponerse en contacto con la oficina Administrativa de la Corte, 1-800-955-8770 (V), Vía Florida Relay Service.

-2-

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT, IN AND
FOR PALM BEACH COUNTY, FLORIDA

CIVIL DIVISION

CASE NO.: 50 2008 CA 00 1 33 4 XXXX MB

CYNTHIA FARBER,

Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

Defendant.

_____/

COPY
RECEIVED FOR FILING
JAN 1 5 2008
SHARON R. BOCK
CLERK & COMPTROLLER
CIRCUIT CIVIL DIVISION

## C O M P L A I N T

COMES NOW the Plaintiff, CYNTHIA FARBER, by and through her undersigned attorneys and sues the Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY (hereinafter "STATE FARM"), and alleges:

### ALLEGATIONS COMMON TO ALL COUNTS

1)    This is an action for damages which exceed the sum of Fifteen Thousand Dollars ($15,000.00).

2)    On or about October 24, 2007, driver, Laura A. Tichnell, owned and operated a motor vehicle on Ocean Drive, in Palm Beach County, Florida.

3)    At the time and place aforementioned, driver, Laura A. Tichnell, so negligently operated and maintained her motor vehicle so as to cause it to come in contact with a motor vehicle owned and operated by Plaintiff, CYNTHIA FARBER.

-1-

4)   At all times material hereto, Defendant, STATE FARM, was a foreign corporation, authorized to do business in the State of Florida and more specifically, was doing business in Palm Beach County, Florida.

5)   At all times material hereto, there was in full force and effect, a policy of insurance issued by Defendant, STATE FARM, extending uninsured/underinsured motorist coverage to Plaintiff. The Policy is identified as Policy No. 2560944-594. (See Exhibit "A.")

6)   At all times material hereto, driver, Laura A. Tichnell, was either uninsured or under insured, for the damages caused to Plaintiffs as a result of her negligence in the motor vehicle accident on October 24, 2007.

7)   Under the terms of the Plaintiff's policy of insurance with Defendant, STATE FARM, they are obligated to Plaintiff for damages recoverable by her as a result of the negligence of an uninsured/underinsured motor vehicle.

8)   Plaintiff has complied with all conditions precedent to obtain coverage under the subject Defendant, STATE FARM's policy.

9)   Prior to the initiation of this lawsuit, Plaintiff properly demanded that Defendant, STATE FARM, settle Plaintiff's claims for the uninsured/underinsured motorist policy limits pursuant to the insurance contract. However, Defendant, STATE FARM, has failed and refuses to reasonably settle the claim for the policy limits, which the Plaintiff is entitled to under her insurance contract with Defendant, STATE FARM and Florida Law.

10)   Upon issuance of the insurance contract to Plaintiff, Defendant, STATE FARM, became obligated to comply with the duties of good faith within the Civil Remedy Statute and Florida Statutes §§624.155 and 626.9541.

- 2 -

11)    Plaintiff has performed all conditions precedent to bringing this action under §624.155, Florida Statutes, including providing proper written notice of Defendant, STATE FARM's violation by virtue of a Civil Remedy Notice letter sent to the State of Florida, Department of Insurance and the Defendant, STATE FARM.

## COUNT I - DAMAGES

12)    Plaintiff realleges and reaffirms paragraphs 1 through 11 above as if fully set forth herein.

13)    As a direct and proximate result, Plaintiff was injured in and about her body, suffered aggravation of pre-existing conditions, pain and suffering, disability, disfigurement, inconvenience, impairment of working ability, mental anguish, loss of enjoyment of life, loss of income, and Plaintiff has incurred medical expenses in the care and treatment of said injuries; all of said injuries are permanent within a reasonable degree of medical probability.

WHEREFORE, Plaintiff, CYNTHIA FARBER, demands judgment for damages against the Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, including, but not limited to the damages greater than the uninsured motorist coverage provided in the above-described insurance contract, and further demands trial by jury.

DATED THIS 10th day of January, 2008.

Lytal, Reiter, Clark, Fountain & Williams, LLP
515 N. Flagler Drive, Suite 1000
West Palm Beach, FL 33401
Phone:        (561) 655-1990
Facsimile:    (561) 832-2932
Attorneys for Plaintiff

David C. Prather, Esquire
Florida Bar # 893412

-3-

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT, IN AND
FOR PALM BEACH COUNTY, FLORIDA

CIVIL DIVISION

CASE NO.: 50-08-CA-1334-MB

CYNTHIA FARBER,

      Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Defendant.

_____/

## FIRST AMENDED COMPLAINT

COMES NOW the Plaintiff, CYNTHIA FARBER, by and through her undersigned attorneys and files this First Amended Complaint and hereby sues the Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, and alleges:

## ALLEGATIONS COMMON TO ALL COUNTS

1)    This is an action for damages which exceed the sum of Fifteen Thousand Dollars ($15,000.00).

2)    On or about October 24, 2007, driver, Laura A. Tichnell, owned and operated a motor vehicle on Ocean Drive, in Palm Beach County, Florida.

3)    At all times material hereto, Laura A. Tichnell, was a resident of Boynton Beach, Palm Beach County, Florida.

-1-

4)     At the time and place aforementioned, driver, Laura A. Tichnell, so negligently operated and maintained her motor vehicle so as to cause it to come in contact with a motor vehicle owned and operated by Plaintiff, CYNTHIA FARBER.

5)     At all times material hereto, Defendant, STATE FARM, was a foreign corporation, authorized to do business in the State of Florida and more specifically, was conducting systematic business operations in Palm Beach County, Florida.

6)     At all times material hereto, there was in full force and effect, a policy of insurance issued by Defendant, STATE FARM, extending uninsured/underinsured motorist coverage to Plaintiff. The Policy is identified as Policy No. 2560944-594. (See Exhibit "A.")

7)     At all times material hereto, driver, Laura A. Tichnell, was either uninsured or under insured, for the damages caused to Plaintiffs as a result of her negligence in the motor vehicle accident on October 24, 2007.

8)     Under the terms of the Plaintiff's policy of insurance with Defendant, STATE FARM, they are obligated to Plaintiff for damages recoverable by her as a result of the negligence of an uninsured/underinsured motor vehicle.

9)     Plaintiff has complied with all conditions precedent to obtain coverage under the subject Defendant, STATE FARM's policy.

10)    Plaintiff has performed all conditions precedent to bringing this action under §624.155, Florida Statutes, including providing proper written notice of Defendant, STATE FARM's violation by virtue of a Civil Remedy Notice letter sent to the State of Florida, Department of Insurance and the Defendant, STATE FARM.

-2-

## COUNT I - DAMAGES

11)    Plaintiff realleges and reaffirms paragraphs 1 through 10 above as if fully set forth herein.

12)    As a direct and proximate result, Plaintiff was injured in and about her body, suffered aggravation of pre-existing conditions, pain and suffering, disability, disfigurement, inconvenience, impairment of working ability, mental anguish, loss of enjoyment of life, loss of income, and Plaintiff has incurred medical expenses in the care and treatment of said injuries; all of said injuries are permanent within a reasonable degree of medical probability.

WHEREFORE, Plaintiff, CYNTHIA FARBER, demands judgment for damages against the Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, including, but not limited to the damages greater than the uninsured motorist coverage provided in the above-described insurance contract, and further demands trial by jury.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via facsimile and Regular U.S. Mail to:  Patrick B. Flanagan, Esquire, attorney for Defendant, at 964-8025 and Flanagan, Maniotis & Berger, P.A., 2586 Forest Hill Boulevard, West Palm Beach, Florida 33406 and John W. Weihmuller, Esquire, attorney for Defendant, at 813-281-0900 and Butler, Pappas, Weihmuller, Katz, Craig, LLP, 777 South Harbour Island Boulevard, Suite 500, Tampa, Florida 33602, this the 20th day of February, 2008.

0160075
807

DAVID C. PRATHER, Esquire of
Lytal, Reiter, Clark, Fountain & Williams, LLP
515 No. Flagler Drive, 10th Floor
Post Office Box 4056
West Palm Beach, FL 33402-4056
(561)655-1990 Telephone
(561) 832-2932 Facsimile
Attorneys for the Plaintiff
Florida Bar No. 893412

-3- .



**State Farm®**
Providing Insurance and Financial Services
Home Office, Bloomington, Illinois 61710

November 21, 2007

LYTAL, REITER, CLARK, FOUNTAIN & WILLIAMS    **Florida PIP Office**
PO BOX 4056                                       P.O. BOX 9608
WEST PALM BCH, FL 33402-4056            WINTER HAVEN, FL 33883-9608

RE:     Claim Number:    59-Z801-935
        Our Insured:       FARBER, CINDY K
        Date of Loss:       10/24/2007
        Your Client         CINDY K. FARBER

To whom it may concern:

In response to your request, please find insurance information regarding policy number 2560-944-59 for the above date of loss on the below listed vehicle.

> Year: 2007    Make/Model: PORSCHE CAYMAN
> Vehicle Id Number: WP0AA29867U760118

1.      The name of the insurer:
        State Farm Mutual Automobile Insurance Company

2.      The name of each insured:    CINDY K. FARBER

3.      Available coverage is as follows:
        A 100/300/50,D500,G500,H,R1 80%/500,U3 100/300,S

        Death, Dismemberment and Loss of Sight
        C K FARBER $10,000

**RECEIVED**
DEC    3 2007



59-Z801-935
Page 2
November 21, 2007

COVERAGE SYMBOL REFERENCE:
A – BI/PD Liability (BI per person/BI per accident/PD )
B – PD Liability
P – Personal Injury Coverage
C – Medical Payments Coverage
D – Comprehensive
G – Collision
H – Emergency Road Service
R – Rental Coverage
U – Uninsured Motorist – Stacking
U3 – Uninsured Motorist – Non-Stacking
S – Death, Dismemberment and Loss of Sight

4.    Policy or coverage defenses known to the Company at this time:
      None known at this time

5.    Umbrella or excess insurance known to the Company at this time:
      Unknown

An amendment to this statement will be provided should facts become known which would alter this information. I trust this disclosure of information will satisfy your request. However, should further discussion of this matter be necessary, please contact Phil Petty X81620 at (866) 537-2716.

Under penalties of perjury, I declare that I have read the foregoing Disclosure of Information and that the facts stated in it are true, to the best of my knowledge and belief.

Sincerely,

Joe Land
Team Manager

State Farm Mutual Automobile Insurance Company

Enclosure:    A copy of the policy with the applicable endorsements is enclosed.

PLEASE READ YOUR POLICY CAREFULLY. IF YOU HAVE AN ACCIDENT, CONTACT YOUR STATE FARM AGENT OR ONE OF OUR CLAIM OFFICES AT ONCE. (SEE "REPORTING A CLAIM-INSURED'S DUTIES" IN THIS POLICY.)

Authorized Representative

State Farm Mutual Automobile Insurance Company, Home Office, Bloomington, Illinois

Florida Office   •   7401 Cypress Gardens Boulevard   •   Winter Haven, Florida 33888-0007

# YOUR
# STATE FARM
# CAR
# POLICY

Florida
Policy Form 9810.7

**2**
**8107**

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
BLOOMINGTON, ILLINOIS
A MUTUAL COMPANY

## DEFINED WORDS
## WHICH ARE USED IN SEVERAL PARTS OF THE POLICY

We define some words to shorten the policy. This makes it easier to read and understand. Defined words are printed in boldface italics. *You* can pick them out easily.

*Bodily Injury* – means bodily injury to a *person* and sickness, disease or death which results from it.

*Car* – means a land motor vehicle with four or more wheels, which is designed for use mainly on public roads. It does not include:

1. any vehicle while located for use as a dwelling or other premises; or

2. a truck-tractor designed to pull a trailer or semitrailer.

*Car Business* – means a business or job where the purpose is to sell, lease, repair, service, transport, store or park land motor vehicles or trailers.

*Insured* – means the *person, persons* or organization defined as *insureds* in the specific coverage. If the information *you* have provided State Farm is incorrect or incomplete, or changes during the policy period, State Farm may decrease or increase the premium during the policy period as set out in the provision titled *Premium* of the Conditions section of this policy.

*Loss* – defined in Sections IV and V.

*Newly Acquired Car* – means a *replacement car* or an *additional car*.

> *Replacement Car* – means a *car* purchased by or leased to *you* or *your spouse* to replace *your car*. This policy will only provide coverage for the *replacement car* if *you* or *your spouse*:
>
> 1. tell us about it within 30 days after its delivery to *you* or *your spouse*; and
>
> 2. pay us any added amount due.

> *Additional Car* – means an added *car* purchased by or leased to *you* or *your spouse*. This policy will only provide coverage for the *additional car* if:
>
> 1. it is a *private passenger car* and we insure all other *private passenger cars*; or

2. it is other than a *private passenger car* and we insure all *cars*

owned by *you* or *your spouse* on the date of its delivery to *you* or *your spouse*.

This policy provides coverage for the *additional car* only until the earlier of:

1. 12:01 A.M. on the 31st day after the delivery of the *car* to *you* or *your spouse*; or

2. the effective date and time of a policy issued by us or any other company that describes the *car* on its declarations page.

*You* or *your spouse* may apply for a policy that will provide coverage beyond the 30th day for the *additional car*. Such policy will be issued only if both *you* and the vehicle are eligible for coverage at the time of application.

If a *newly acquired car* is not otherwise afforded comprehensive or collision coverage by this or any other policy, this policy will provide the comprehensive or collision coverage not otherwise provided for the *newly acquired car*. If such coverage is provided by this paragraph, it will apply only until 12:01 A.M. Standard Time at the address shown on the declarations page on the sixth day after the delivery of the *car* to *you* or *your spouse*. Any comprehensive or collision coverage provided by this paragraph is subject to a deductible of $500.

*Non-Owned Car* – means a *car* not owned, registered or leased by:

1. *you, your spouse*;

2. any *relative* unless the *car* meets the requirements described below;

3. any other *person* residing in the same household as *you, your spouse* or any *relative*; or

4. an employer of *you, your spouse* or any *relative*.

A *car* owned, registered or leased by a *relative* is considered a *non-owned car* if, at the time of the accident or *loss*, the *car* has been insured for liability

3

8107

coverage within the la⁻³ ʼ ⁾ days and is driven by an *insured* who does not . or lease the *car*.

*Non-owned car* does not include a:

1. rented *car* while it is used in connection with the *insured's* employment or business; or

2. *car* which has been operated or rented by or in the possession of an *insured* during any part of each of the last 21 or more consecutive days. If the *insured* is an *insured* under one or more other car policies issued by us, the 21 day limit is increased by an additional 21 days for each such additional policy.

A *non-owned car* must be a *car* in the lawful possession of the *person* operating it.

*Occupying* – means in, on, entering or alighting from.

*Person* – means a human being.

*Private Passenger Car* – means a *car*:

1. with four wheels;

2. of the private passenger or station wagon type; and

3. designed solely to carry *persons* and their luggage.

*Relative* – as used in Sections I, III, IV and V means a *person* related . you or *your spouse* by blood, marriage or adoption (including a ward or foster child) who resides primarily with *you*. It includes *your* unmarried and unemancipated child away at school.

As used in Section II, *relative* means a relative of any degree by blood or by marriage who usually makes his home in the same family unit, whether or not temporarily living elsewhere.

*Spouse* – means *your* husband or wife who resides primarily with *you*.

*Temporary Substitute Car* – means a *car* not owned by *you* or *your spouse*, if it replaces *your car* for a short time. Its use has to be with the consent of the owner. *Your car* has to be out of use due to its breakdown, repair, servicing, damage or *loss*. A *temporary substitute car* is not considered a *non-owned car*.

*Utility Vehicle* – means a motor vehicle with:

1. a pickup, panel or van body; and

2. a Gross Vehicle Weight of 10,000 pounds or less.

*You* or *Your* – means the named insured or named insureds shown on the declarations page.

*Your Car* – means the *car* or the vehicle described or the declarations page.

## DECLARATIONS CONTINUED

We, the State Farm Mutual Automobile Insurance Company, agree to insure *you* according to the terms of this policy based:

1. on *your* payment of premium for the coverages *you* chose; and

2. in reliance on *your* statements in these declarations.

*You* agree, by acceptance of this policy that:

1. the statements in these declarations are *your* statements and are true; and

2. we insure *you* on the basis *your* statements are true; and

3. this policy contains all of the agreements between *you* and us or any of our agents.

Unless otherwise stated in the exceptions space or the declarations page, *your* statements are:

1. Ownership. *You* are the sole owner of *your car*.

2. Insurance and License History. Neither *you* nor any member of *your* household within the past 3 years has had:

   a. vehicle insurance canceled by an insurer or .

   b. a license to drive or vehicle registration suspended, revoked or refused.

3. Use. *Your car* is used for pleasure and business.

4

8107

## WHEN AND WHERE COVERAGE APPLIES

### When Coverage Applies

The coverages *you* chose apply to accidents and *losses* that take place during the policy period.

The policy period is shown under "Policy Period" on the declarations page and is for successive periods of six months each for which *you* pay the renewal premium. Payments must be made on or before the end of the current policy period. The policy period begins and ends at 12:01 A.M. Standard Time at the address shown on the declarations page.

### Where Coverage Applies

1. The liability, medical payments, uninsured motor vehicle and physical damage coverages *you* chose apply:

   a. in the United States of America, its territories and possessions or Canada; or

   b. while the insured vehicle is being shipped between their ports.

The liability, medical payments and physical damage coverages also apply in Mexico within 50 miles of the United States border. A physical damage coverage *loss* in Mexico is determined on the basis of cost at the nearest United States point.

2. The no-fault coverage *you* chose applies:

   a. in Florida, and

   b. outside Florida, but:

      (1) within the United States of America, its territories or possessions or Canada, or

      (2) in Mexico within 50 miles of the United States border

      to *you* or a *relative*, while *occupying your car*, a *newly acquired car*, a *non-owned car*, a *temporary substitute car* or a trailer which would be covered at no additional charge under the **Trailer Coverage** provision of either of the liability coverages.

3. The death, dismemberment and loss of sight coverage *you* chose applies anywhere in the world.

## FINANCED VEHICLES

If a creditor is shown in the declarations, we may pay any comprehensive or collision *loss* to:

1. *you* and, if unpaid, the repairer; or

2. *you* and such creditor, as its interest may appear, when we find it is not practical to repair *your car*; or

3. the creditor, as to its interest, if *your car* has been repossessed.

When we pay the creditor for *loss* for which *you* are not covered, we are entitled to the creditor's right of recovery against *you* to the extent of our payment. Our right of recovery shall not impair the creditor's right to recover the full amount of its claim.

The coverage for the creditor's interest only is valid until we terminate it. We will not terminate such coverage because of:

1. any act or negligence of the owner or borrower; or

2. a change in the ownership or interest unknown to us, unless the creditor knew of it and failed to tell us within 10 days; or

3. an error in the description of the vehicle.

The date of termination of the creditor's interest will be at least 10 days after the date we mail the termination notice.

5
8107

## RPORTING A CLAIM — INSURED'S UTIES

1. **Notice to Us of an Accident or Loss**

   The *insured* must give us or one of our agents written notice of the accident or *loss* as soon as reasonably possible. The notice must give us:

   a. *your* name; and

   b. the names and addresses of all *persons* involved; and

   c. the hour, date, place and facts of the accident or *loss*; and

   d. the names and addresses of witnesses.

2. **Notice to Us of Claim or Suit**

   If a claim or suit is made against an *insured*, that *insured* must at once send us every demand, notice or claim made and every summons or legal process received.

3. **Other Duties Under the Physical Damage Coverages**

   When there is a *loss*, *you* or the owner of the property also shall:

   a. make a prompt report to the police when the *loss* is the result of theft or larceny.

   b. protect the damaged vehicle. We will pay any reasonable expense incurred to do it.

   c. show us the damage, when we ask.

   d. provide all records, receipts and invoices, or certified copies of them. We may make copies.

   e. answer questions under oath when asked by anyone we name, as often as we reasonably ask, and sign copies of the answers.

4. **Other Duties Under No-Fault, Medical Payments, Uninsured Motor Vehicle and Death, Dismemberment and Loss of Sight Coverages**

   Any *person* who suffers a *bodily injury* which results in a MEDICAL PAYMENTS – COVERAGE C claim must notify us of the claim in writing as soon as reasonably possible after the *person's* first examination or treatment resulting from the *bodily injury*. Another *person* may give us the required notice on behalf of the injured *person*.

   The *person* making claim also shall:

   a. give us all the details about the death, injury, treatment and other information we need to determine the amount payable.

   b. be examined by physicians chosen and paid by us as often as we reasonably may require. A copy of the report will be sent to the *person* upon written request. The *person*, or his or her legal representative if the *person* is dead or unable to act, shall authorize us to obtain all medical reports and records.

   c. answer questions under oath when asked by anyone we name, as often as we reasonably ask, and sign copies of the answers.

   d. under the uninsured motor vehicle coverage:

      (1) report an accident to the police within 24 hours and to us within 30 days if the accident involves a land motor vehicle with an unknown owner or driver.

      (2) let us see the insured *car* the *person* occupied in the accident.

   e. under the no-fault and uninsured motor vehicle coverages, send us at once a copy of all suit papers if the *person* sues the party liable for the accident for damages.

   f. under the no-fault and death, dismemberment and loss of sight coverages, give us proof of claim as soon as practicable on forms we furnish.

5. **Insured's Duty to Cooperate With Us**

   The *insured* shall cooperate with us and, when asked, assist us in:

   a. making settlements;

   b. securing and giving evidence;

   c. attending, and getting witnesses to attend, hearings and trials.

   The *insured* shall not, except at his or her own cost, voluntarily:

   a. make any payment or assume any obligation to others; or

   b. incur any expense, other than for first aid to others.

LIABILITY – C
erage if "A" appe
declarations page

We will:

1. pay dama
gally liab

   a. *bodil*

   b. dama
cludir

   caused by
ship, mai

2. defend a
damages
We will r
the appli
accident

In addition to th
an *insured* any c
accident.

1. Court co

2. Interest o
to a judg

   a. after
or de
this c.

   b. befo
but c
pay.

3. Premium

   a. to se
erty
amo
be n

   b. requ
dam
liabi

   c. up t
beca

   We hav
bonds.

4. Expense

   a. for l
day
of a

6

# SECTION I — LIABILITY COVERAGES

**LIABILITY – COVERAGE A.** *You* have this coverage if "A" appears in the "Coverages" space on the declarations page.

We will:

1. pay damages which an *insured* becomes legally liable to pay because of:

   a. *bodily injury* to others, and

   b. damage to or destruction of property including loss of its use;

   caused by accident resulting from the ownership, maintenance or use of *your car*; and

2. defend any suit against an *insured* for such damages with attorneys hired and paid by us. We will not defend any suit after we have paid the applicable limit of our liability for the accident which is the basis of the lawsuit.

In addition to the limits of liability, we will pay for an *insured* any costs listed below resulting from such accident.

1. Court costs of any suit for damages.

2. Interest on damages owed by the *insured* due to a judgment and accruing:

   a. after the judgment, and until we pay, offer or deposit in court, the amount due under this coverage; or

   b. before the judgment, where owed by law, but only on that part of the judgment we pay.

3. Premiums or costs of bonds:

   a. to secure the release of an *insured's* property attached under a court order. The amount of the bond we pay for shall not be more than our limit of liability; and

   b. required to appeal a decision in a suit for damages if we have not paid our limit of liability that applies to the suit; and

   c. up to $250 for each bail bond needed because of an accident or traffic violation.

   We have no duty to furnish or apply for any bonds.

4. Expense incurred by an *insured*:

   a. for loss of wages or salary up to $35 per day if we ask the *insured* to attend the trial of a civil suit.

   b. for first aid to others at the time of the accident.

   c. at our request.

We have the right to investigate, negotiate and settle any claim or suit.

**Coverage for the Use of Other Cars**

The liability coverage extends to the use, by an *insured*, of a *newly acquired car*, a *temporary substitute car* or a *non-owned car*.

**Who Is an Insured**

When we refer to *your car*, a *newly acquired car* or a *temporary substitute car*, *insured* means:

1. *you*;

2. *your spouse*;

3. the *relatives* of the first *person* named in the declarations;

4. any other *person* while using such a *car* if its use is within the scope of consent of *you* or *your spouse*; and

5. any other *person* or organization liable for the use of such a *car* by one of the above *insureds*.

When we refer to a *non-owned car*, *insured* means:

1. the first *person* named in the declarations;

2. his or her *spouse*;

3. their *relatives*; and

4. any *person* or organization which does not own or hire the *car* but is liable for its use by one of the above *persons*.

THERE IS NO COVERAGE FOR *NON-OWNED CARS*:

1. IF THE DECLARATIONS STATE THE "USE" OF *YOUR CAR* IS OTHER THAN "PLEASURE AND BUSINESS"; OR

2. WHILE:

   a. BEING REPAIRED, SERVICED OR USED BY ANY *PERSON* WHILE THAT *PERSON* IS WORKING IN ANY *CAR BUSINESS*; OR

   b. USED IN ANY OTHER BUSINESS OR OCCUPATION. This does not apply to a *private passenger car* driven or *occupied*

7

by the first ~~con~~ named in the declarations, his o~~r~~ *spouse* or their *relatives*.

## Trailer Coverage

1. Trailers designed to be pulled by a *private passenger car* or a *utility vehicle*, except those trailers in 2.a. below, are covered while owned or used by an *insured*.

   Farm implements and farm wagons are considered trailers while pulled on public roads by a *car* we insure for liability.

   These trailers are not described in the declarations and no extra premium is charged.

2. The following trailers are covered only if described on the declarations page and extra premium is paid:

   a. those trailers designed to be pulled by a *private passenger car* or a *utility vehicle*:

      (1) if designed to carry *persons*; or

      (2) while used with a motor vehicle whose use is shown as "commercial" on the declarations page (trailers used only for pleasure use are covered even if not described and no extra premium paid); or

      (3) while used as premises for office, store or display purposes; or

   b. any trailer not designed for use with a *private car* or a *utility vehicle*.

   THERE IS NO COVERAGE WHEN A TRAILER IS USED WITH A MOTOR VEHICLE OWNED OR HIRED BY *YOU* WHICH WE DO NOT INSURE FOR LIABILITY COVERAGE.

## Limits of Liability

The amount of bodily injury liability coverage is shown on the declarations page under "Limits of Liability – Coverage A – Bodily Injury, Each Person, Each Accident." Under "Each Person" is the amount of coverage for all damages due to *bodily injury* to one *person*. "*Bodily injury* to one *person*" includes all injury and damages to others resulting from this *bodily injury*. Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to *bodily injury* to two or more *persons* in the same accident.

The amount of property damage liability coverage is shown on the declarations page under "Limits of Liability – Coverage A – Property Damage, Each Accident."

We will pay damages for which an *insured* is legally liable up to these amounts.

The limits of liab~~ility~~ are not increased because more than one *person* ~~or~~ organization may be an *insured*.

A motor vehicle and attached trailer are one vehicle. Therefore, the limits are not increased.

When two or more motor vehicles are insured under this section the limits apply separately to each.

## When Coverage A Does Not Apply

In addition to the limitations of coverage in **Who Is an Insured** and **Trailer Coverage**:

THERE IS NO COVERAGE:

1. WHILE ANY VEHICLE INSURED UNDER THIS SECTION IS:

   a. RENTED TO OTHERS OR USED TO CARRY *PERSONS* FOR A CHARGE. This does not apply to the use on a share expense basis of:

      (1) a *private passenger car*; or

      (2) a *utility vehicle*, if all passengers are riding in that area of the vehicle designed by the manufacturer of the vehicle for carrying passengers.

   b. BEING REPAIRED, SERVICED OR USED BY ANY *PERSON* EMPLOYED OR ENGAGED IN ANY WAY IN A *CAR BUSINESS*. This does not apply to:

      (1) *you* or *your spouse*;

      (2) any *relative*;

      (3) any resident of *your* household; or

      (4) any agent, employee or partner of *you*, *your spouse*, any *relative* or such resident.

   This coverage is excess for (3) and (4) above.

2. FOR ANY *BODILY INJURY* TO:

   a. A FELLOW EMPLOYEE WHILE ON THE JOB AND ARISING FROM THE MAINTENANCE OR USE OF A VEHICLE BY ANOTHER EMPLOYEE IN THE EMPLOYER'S BUSINESS. *You* and *your spouse* are covered for such injury to a fellow employee.

   b. ANY EMPLOYEE OF AN *INSURED* ARISING OUT OF HIS OR HER EMPLOYMENT. This does not apply to a household employee who is not covered or required to be covered under any worker's compensation insurance.

c.

3. F~~or~~

   a.

   b.

4. F~~or~~
   O
   O
   S~~ervice~~

   a.

   b.

   d~~

5. F~~or~~
   S~~
   D
   C
   S.

6. F~~or~~
   S~~
   A

**If There**
**Own Mo~~tor~~**

1. Vehi~~cle~~

   a. If
      o~~r~~
      a~~

      (1

      (2

      (2

   b. If
      t~~o~~
      li~~
      w~~
      li~~
      s~~
      o~~

8

8107

c. ANY *INSURED* OR ANY MEMBER OF AN *INSURED'S* FAMILY RESIDING IN THE *INSURED'S* HOUSEHOLD.

3. FOR:

a. THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES; OR

b. ANY *PERSON* WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY.

4. FOR ANY DAMAGES TO PROPERTY OWNED BY, RENTED TO, IN CHARGE OF OR TRANSPORTED BY AN *INSURED*. But coverage applies to a rented:

a. residence; or

b. private garage

damaged by a *car* we insure.

5. FOR ANY OBLIGATION OF AN *INSURED*, OR HIS OR HER INSURER, UNDER ANY TYPE OF WORKER'S COMPENSATION OR DISABILITY OR SIMILAR LAW.

6. FOR LIABILITY ASSUMED BY THE *INSURED* UNDER ANY CONTRACT OR AGREEMENT.

**If There Is Other Liability Coverage or If You Own More Than One Vehicle**

1. **Vehicles You Own**

a. If the vehicle involved in the accident is owned by *you* or *your spouse*, this coverage applies only if it is:

(1) *your car*; or

(2) a trailer described under "Trailer Coverage" for which no extra premium is charged; or

(3) a *newly acquired car*. THIS COVERAGE DOES NOT APPLY IF THERE IS OTHER VEHICLE LIABILITY COVERAGE ON THE *NEWLY ACQUIRED CAR*.

b. If *your car* is also described in a policy issued to *you* by another company, the total limits of liability shall not exceed those of the policy with the highest limits of liability. We are liable only for our share of the damages. Our share is the per cent that the limit of liability of the policy issued by us bears to the sum of the limits of liability of the policies issued by us and the other company.

2. **Policies Issued by Us to You, Your Spouse, or Any Relative**

If two or more vehicle liability policies issued by us to *you, your spouse*, or any *relative* apply to the same accident, the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability.

3. **Temporary Substitute Car, Non-Owned Car, Trailer**

If a *temporary substitute car*, a *non-owned car* or a trailer designed for use with a *private passenger car* or, *utility vehicle* has other vehicle liability coverage on it, then this coverage is excess.

4. **Other Liability Coverage Available From Other Sources**

Subject to items 1, 2 and 3, if other vehicle liability coverage applies, we are liable only for our share of the damages. Our share is the per cent that the limit of liability of this policy bears to the total of all vehicle liability coverage applicable to the accident.

**Motor Vehicle Compulsory Insurance Law or Financial Responsibility Law**

1. **Out-of-State Coverage**

If an *insured* under the liability coverage is in another state or Canada and, as a nonresident, becomes subject to its motor vehicle compulsory insurance, financial responsibility or similar law:

a. the policy will be interpreted to give the coverage required by the law; and

b. the coverage so given replaces any coverage in this policy to the extent required by the law for the *insured's* operation, maintenance or use of a *car* insured under this policy.

Any coverage so extended shall be reduced to the extent other coverage applies to the accident. In no event shall a *person* collect more than once.

2. **Financial Responsibility Law**

When certified under any law as proof of future financial responsibility, and while required during the policy period, this policy shall comply with such law to the extent required. The *insured* agrees to repay us for any payment we would not have had to make under the terms of this policy except for this agreement.

9

**PROPERTY DAMAGE LIABILITY – COVERAGE B.** *You* have this coverage if "B" appears in the "Coverages" space on the declarations page.

We will:

1. pay damages which an *insured* becomes legally liable to pay because of damage to or destruction of property including loss of its use, caused by accident resulting from the ownership, maintenance or use of *your car*; and

2. defend a suit against an *insured* for such property damage with attorneys hired and paid by us. If a suit seeks damages due to both property damage and *bodily injury* we will only defend the claim for property damage and the *insured* will be required to hire and pay attorneys to defend the claim for damages due to *bodily injury*. We will not defend any suit after we have paid the applicable limit of our liability for the accident which is the basis of the lawsuit.

We have the right to investigate, negotiate and settle any claim or suit.

### Coverage for the Use of Other Cars

The property damage liability coverage extends to the use, by an *insured*, of a *newly acquired car*, a *temporary substitute car* or a *non-owned car*.

### Who Is an Insured

When we refer to *your car*, a *newly acquired car* or a *temporary substitute car*, *insured* means:

1. *you*;

2. *your spouse*;

3. the *relatives* of the first *person* named in the declarations;

4. any other *person* while using such a *car* if its use is within the scope of consent of *you* or *your spouse*; and

5. any other *person* or organization liable for the use of such a *car* by one of the above *insureds*.

When we refer to a *non-owned car*, *insured* means:

1. the first *person* named in the declarations;

2. his or her *spouse*;

3. their *relatives*; and

4. any *person* or organization which does not own or hire the *car* but is liable for its use by one of the above *persons*.

THERE IS NO COVERAGE FOR *NON-OWNED CARS*:

1. IF THE DECLARATIONS STATE THE "USE" OF *YOUR CAR* IS OTHER THAN "PLEASURE AND BUSINESS"; OR

2. WHILE:

   a. BEING REPAIRED, SERVICED OR USED BY ANY *PERSON* WHILE THAT *PERSON* IS WORKING IN ANY *CAR BUSINESS*; OR

   b. USED IN ANY OTHER BUSINESS OR OCCUPATION. This does not apply to a *private passenger car* driven or occupied by the first *person* named in the declarations, his or her *spouse* or their *relatives*.

### Trailer Coverage

1. Trailers designed to be pulled by a *private passenger car* or a *utility vehicle*, except those trailers in 2.a. below, are covered while owned or used by an *insured*.

   Farm implements and farm wagons are considered trailers while pulled on public roads by a *car* we insure for liability.

   These trailers are not described in the declarations, and no extra premium is charged.

2. The following trailers are covered only if described on the declarations page and extra premium is paid:

   a. those trailers designed to be pulled by a *private passenger car* or a *utility vehicle*:

      (1) if designed to carry *persons*; or

      (2) while used with a motor vehicle whose use is shown as "commercial" on the declarations page (trailers used only for pleasure use are covered even if not described and no extra premium paid); or

      (3) while used as premises for office, store or display purposes; or

   b. any trailer not designed for use with a *private passenger car* or a *utility vehicle*.

THERE IS NO COVERAGE WHEN A TRAILER IS USED WITH A MOTOR VEHICLE OWNED OR HIRED BY *YOU* WHICH WE DO NOT INSURE FOR LIABILITY COVERAGE OR PROPERTY DAMAGE LIABILITY COVERAGE.

### Limit of Liability

The amount of property damage liability coverage is shown on the declarations page.

We will p
liable up

The limit
than one,

A motor
Therefore

When twe
this secti

**When Ce**

In additie
**an Insur**

THERE I

1. W
   D.

   a.

   b.

2. FC
3. FC

   a.

   b.

4. FO
   OV

**ON-OWNED**

STATE THE
HER THAN
3"; OR

VICED OR
ON WHILE
RKING IN
R

USINESS OR
: not apply to
ven or occu-
named in the
ouse or their

private pas-
pt those trail-
le owned or

s are consid-
oads by a *car*

the declara-
ged.

l only if de-
nd extra pre-

lled by a *pri-
vehicle*:

; or

ehicle whose
l" on the dec-
ted only for
'en if not de-
m paid); or

ffice, store or

vith a *private
le*.

A TRAILER
LE OWNED
DO NOT IN-
E OR PROP-
RAGE.

y coverage is

---

We will pay damages for which *insured* is legally liable up to this amount.

The limit of liability is not increased because more than one *person* or organization may be an *insured*.

A motor vehicle and attached trailer are one vehicle. Therefore, the limits are not increased.

When two or more motor vehicles are insured under this section the limit applies separately to each.

**When Coverage B Does Not Apply**

In addition to the limitations of coverage in Who Is an Insured and Trailer Coverage:

THERE IS NO COVERAGE:

1. WHILE ANY VEHICLE INSURED UNDER THIS SECTION IS:

   a. RENTED TO OTHERS OR USED TO CARRY *PERSONS* FOR A CHARGE.

      This does not apply to the use on a share expense basis of:

      (1) a *private passenger car*; or

      (2) a *utility vehicle*, if all passengers are riding in that area of the vehicle designed by the manufacturer of the vehicle for carrying passengers.

   b. BEING REPAIRED, SERVICED OR USED BY ANY *PERSON* EMPLOYED OR ENGAGED IN ANY WAY IN A *CAR BUSINESS*. This does not apply to:

      (1) *you* or *your spouse*;

      (2) any *relative*;

      (3) any resident of *your* household; or

      (4) any agent, employee or partner of *you, your spouse*, any *relative* or such resident.

      This coverage is excess for (3) and (4) above.

2. FOR ANY *BODILY INJURY*.

3. FOR:

   a. THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES; OR

   b. ANY *PERSON* WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY.

4. FOR ANY DAMAGES TO PROPERTY OWNED BY, RENTED TO, IN THE

---

CHARGE OF OR TRANSPORTED BY AN *INSURED*. But coverage applies to a rented:

   a. residence; or

   b. private garage

damaged by a *car* we insure.

5. FOR ANY OBLIGATION OF AN *INSURED*, OR HIS OR HER INSURER, UNDER ANY TYPE OF WORKERS' COMPENSATION OR DISABILITY OR SIMILAR LAW.

6. FOR LIABILITY ASSUMED BY THE *INSURED* UNDER ANY CONTRACT OR AGREEMENT.

**If There Is Other Liability Coverage or If You Own More Than One Vehicle**

1. **Vehicles You Own**

   a. If the vehicle involved in the accident is owned by *you* or *your spouse*, this coverage applies only if it is:

      (1) *your car*; or

      (2) a trailer described under Trailer Coverage for which no extra premium is charged; or

      (3) a *newly acquired car*. THIS COVERAGE DOES NOT APPLY IF THERE IS OTHER VEHICLE LIABILITY COVERAGE ON THE *NEWLY ACQUIRED CAR*.

   b. If *your car* is also described in a policy issued to *you* by another company, the total limit of liability shall not exceed that of the policy with the highest limit of liability. We are liable only for our share of the damages. Our share is the per cent that the limit of liability of the policy issued by us bears to the sum of the limit of liability of the policies issued by us and the other company.

2. **Policies Issued by Us to You, Your Spouse or Any Relative**

   If two or more vehicle liability policies issued by us to *you, your spouse*, or any *relative* apply to the same accident, the total limit of liability under all such policies shall not exceed that of the policy with the highest limit of liability.

11
8107

3. **Temporary Subst' t; Car, Non-Owned Car, Trailer**

If a *temporary substitute car*, a *non-owned car* or a trailer designed for use with a *private passenger car* or *utility vehicle* has other vehicle liability coverage on it then this coverage is excess.

4. **Other Liability Coverage Available From Other Sources**

Subject to items 1, 2 and 3 if other vehicle liability coverage applies, we are liable only for our share of the damages. Our share is the per cent that the limit of liability of this policy bears to the total of all vehicle liability coverage applicable to the accident.

**Motor Vehicle Compulsory Insurance Law or Financial Responsibility Law**

1. **Out-of-State Coverage**

If an *insured* under the liability coverage is in another state or Canada and, as a non-resident, becomes subject to its motor vehicle compulsory insurance, financial responsibility or similar law:

a. the policy will be interpreted to give the coverage required by the law; and

b. the cover' 'so given replaces any coverage in this po. .:o the extent required by the law for the *insured's* operation, maintenance or use of a *car* insured under this policy.

Any coverage so extended shall be reduced to the extent other coverage applies to the accident. In no event shall a *person* collect more than once.

2. **Financial Responsibility Law**

When certified under any law as proof of future financial responsibility, and while required during the policy period, this policy shall comply with such law to the extent required. The *insured* agrees to repay us for any payment we would not have had to make under the terms of this policy except for this agreement.

If *you* have Coverage B, the following changes are made to any endorsements which are a part of *your* policy:

1. The phrase "PROPERTY DAMAGE LIABIL-ITY – COVERAGE B" replaces the phrases "Section I – Liability – Coverage A" and "Liability – Coverage A" wherever they are found.

2. The phrase "When Coverage B Does Not Apply" replaces the phrase "When Coverage A Does Not Apply" wherever it is found.

3. Any reference to *bodily injury* is deleted from any provision which item 1 or 2 above makes applicable to PROPERTY DAMAGE LIABILITY – COVERAGE B.

---

# SECTION II — NO-FAULT — COVERAGE P AND MEDICAL PAYMENTS — COVERAGE C

**NO-FAULT – COVERAGE P.** *You* have this coverage if "P" with a number beside it appears in the "Coverages" space on the declarations page. "P" with a number beside it is *your* coverage symbol. Check *your* coverage symbol with the schedule in the Limits of Liability for the choice of options *you* made.

**What We Pay**

We will pay in accordance with the *No-Fault Act* for *bodily injury* to an *insured*, caused by an accident resulting from the ownership, maintenance or use of a *motor vehicle*:

1. **Medical Expenses.** 80% of the reasonable charges incurred for necessary:

a. medical, surgical, X-ray, dental, ambulance, hospital, professional nursing and rehabilitative services.

b. eyeglasses, hearing aids and prosthetic devices, and

c. remedial religious treatment or services by a recognized method of healing.

2. **Income Loss.** 60% of loss of income and earning capacity due to the *insured's* inability

to work caused by his or her *bodily injury* during the time the *insured* is not able to work.

3. **Replacement Services Loss.** Reasonable expenses incurred for ordinary and needed services the *insured* would have done, except for the injury, for the benefit of his or her household during the time the *insured* is not able to work.

4. **Death Benefits.** Death benefits of $5,000 per *person.*

*Insured* – means:

1. *you* or any *relative*:

a. while *occupying* a motor vehicle; or

b. struck as a *pedestrian* by a *motor vehicle*;

2. anyone else while *occupying* or when struck as a *pedestrian* by *your car*, a *newly acquired car*, a *non-owned car*, a *temporary substitute car* or a trailer which would be covered at no additional charge under the Trailer Coverage provision of either of the liability coverages.

*Motor Vehicle* – means a vehicle with four or more wheels that:

1. is self-propelled and is of a type:

a. designed for, and

b. required to be licensed for

use on Florida highways; or

2. is a trailer or semitrailer designed for use with a vehicle described in 1 above.

It does not include:

1. a mobile home; or

2. any motor vehicle which is:

a. used in mass transit, other than public school transportation; and

b. designed to transport more than five passengers, exclusive of the operator; and

c. owned by a municipality, a transit authority, or a political subdivision of the state.

*No-Fault Act* – means the Florida Motor Vehicle No-Fault Law and any amendments.

*Pedestrian* – means a person while not an occupant of any self-propelled vehicle.

**Disputes Regarding C' ges for Treatment of Injured Persons**

Any claim dispute involving medical benefits under this section of the policy between us and a medical services or supplies provider (hereinafter referred to as health care provider) who has agreed to accept an assignment of personal injury protection benefits shall be decided by arbitration upon written request of either party.

Upon written request for arbitration, each party shall select an arbitrator. The two arbitrators shall attempt to select a third arbitrator. If they are unable to agree on a third arbitrator within 30 days, either party may request a judge of a court of record in the county in which the arbitration is pending to appoint the third arbitrator. A written decision concurred upon by any two arbitrators shall be binding on each party.

As a condition of maintaining a claim dispute in arbitration, the health care provider shall make available for inspection and copying the entire file pertaining to the patient that is the subject of this proceeding. This file shall include patient questionnaires, reports, and test results, unless we advise in writing that certain of such materials need not be provided. No arbitration may be held until 30 days after the required request for arbitration and patient file has been supplied to us. Any arbitration award shall not exceed the personal injury protection coverage limits remaining on the policy.

The prevailing party to the arbitration shall be entitled to attorney's fees and costs. The prevailing party is determined as follows:

1. When the amount of personal injury protection benefits determined by arbitration exceeds the sum of the amount offered by us at arbitration plus 50 per cent of the difference between the amount of the claim asserted by the claimant at arbitration and the amount offered by us at arbitration, the claimant is the prevailing party.

2. When the amount of personal injury protection benefits determined by arbitration is less than the sum of the amount offered by us at arbitration plus 50 per cent of the difference between the amount of the claim asserted by the claimant at arbitration and the amount offered by us at arbitration, we are the prevailing party.

3. When neither subparagraph 1 above nor subparagraph 2 above applies, there is no prevailing party. For purposes of this paragraph, the

13

amount of the offer or claim at arbitration is the amount of least written offer or claim made at least 30 days prior to the arbitration.

4. In the demand for arbitration, the party requesting arbitration must include a statement specifically identifying the issues for arbitration for each examination or treatment in dispute. The other party must subsequently issue a statement specifying any other examinations or treatment and any other issues that it intends to raise in the arbitration. The parties may amend their statements up to 30 days prior to arbitration, provided that arbitration shall be limited to those identified issues and neither party may add additional issues during arbitration.

The arbitration shall take place in the county in which the health care provider is located. If they are located out-of-state, arbitration shall take place in the county in which the *insured* resides, unless the health care provider and we agree to another place. Arbitration is subject to the provisions of the Florida Arbitration Code, Chapter 682 of the Florida Statutes.

This arbitration provision does not apply to disputes regarding the termination of personal injury protection benefits.

**Payment of Any Amount Due**

We will pay any amount due:

1. to an *insured*;

2. to a parent or guardian, if the *insured* is a minor or an incompetent *person*;

3. to the surviving *spouse*; or

4. at our option:

   a. to a *person* authorized by law to receive such payment; or

   b. to the *person* or organization rendering the treatment or services.

**When Payments Are Reduced**

We will reduce the amount payable by:

1. the deductible amount shown in the Schedule for *your* coverage symbol. The deductible amount does not apply to death benefits.

2. Military benefits paid or payable when the schedule shows the reduction for *your* coverage symbol; and

3. the amount of any workers' compensation benefits paid or payable for the same items of loss or expense.

**No Duplication of Benefits**

No *insured* shall recover twice for the same expense or loss under this or similar vehicle insurance or self-insurance.

**Reimbursement**

We have a right to recover our no-fault payments from the owner of or the company insuring a *motor vehicle* of a type not included in 2a or 2b below if:

1. we have made payment for *bodily injury* resulting from the *insured's occupying* or being struck as a *pedestrian* by that *motor vehicle*; and

2. the *motor vehicle* we insure for no-fault coverage is:

   a. a sedan, station wagon or jeep type vehicle; or

   b. a pickup, panel, van, camper or motor home type and not used mainly in an occupation, profession or business.

**Limits of Liability**

1. The most we pay.

   The most we pay for each *insured* for all loss and expense from one accident shall be $10,000 less the amount of any reduction described under **When Payments Are Reduced** that applies to the *insured*.

14
8107

2. SCHEDULE

| Coverage Symbol | Deductible That Applies To You | Deductible That Applies To Each Of Your Dependent Relatives | Reduction for Military Benefits Applies | Loss of Income Benefits Eliminated |
|---|---|---|---|---|
| P10 | None | None | No | No |
| P12 | None | None | Yes | No |
| P14 | None | None | No | Yes |
| P16 | None | None | Yes | Yes |
| P20 | $250 | None | No | No |
| P21 | $250 | $250 | No | No |
| P30 | $500 | None | No | No |
| P31 | $500 | $500 | No | No |
| P40 | $1000 | None | No | No |
| P41 | $1000 | $1000 | No | No |
| P50 | $2000 | None | No | No |
| P51 | $2000 | $2000 | No | No |

**If There Is Other No-Fault Coverage or If You Own More Than One Vehicle**

1. **Vehicles You Own**

   a. If the vehicle involved in the accident is owned by *you* or *your spouse*, this coverage applies only if it is:

   (1) *your car*; or

   (2) a *newly acquired car*. THIS COVERAGE DOES NOT APPLY IF THERE IS OTHER NO-FAULT COVERAGE ON THE *NEWLY ACQUIRED CAR*.

   b. If *your car* is also described in a policy issued to *you* by another company, the total limits of liability shall not exceed those of the policy with the highest limits of liability. We are liable only for our share of the damages. Our share is the per cent that the limit of liability of the policy issued by us bears to the sum of the limits of liability of the policies issued by us and the other company.

2. **Policies Issued by Us to You**

   If two or more policies providing no-fault coverage issued by us to *you* apply to the same accident, the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability.

3. **Coverage Available From Other Sources**

   Subject to items 1 and 2, if other no-fault coverage applies, we will pay only our share. Our share is the per cent that the limit of liability of the policy issued by us bears to the total of all coverage applicable to the accident.

**What Is Not Covered Under Coverage P**

THERE IS NO COVERAGE:

1. FOR *BODILY INJURY* TO:

   a. ANY *PEDESTRIAN* NOT A LEGAL RESIDENT OF FLORIDA. This does not apply to *you* or any *relative*.

   b. ANY *PERSON* ENTITLED TO NO-FAULT BENEFITS FROM:

   (1) THE OWNER OF A *MOTOR VEHICLE* OTHER THAN *YOU* OR

   (2) THAT OWNER'S INSURER.

   This does not apply to *you* or any *relative*.

2. FOR ANY *PERSON*:

   a. WHOSE CONDUCT CONTRIBUTED TO HIS OR HER *BODILY INJURY* UNDER ANY OF THE FOLLOWING CIRCUMSTANCES:

   (1) CAUSING *BODILY INJURY* TO HIMSELF OR HERSELF INTENTIONALLY; OR

   (2) WHILE COMMITTING A FELONY; OR

   b. WHOSE *BODILY INJURY* OCCURRED WHILE:

   (1) DRIVING *YOUR CAR* OR A *NEWLY ACQUIRED CAR* WITHOUT *YOUR* PERMISSION;

15
8107

(2) *OCCUPYING A MOTOR VEHI-CLE* *ATED FOR USE AS A DWELLING OR PREMISES;*

c. WHO OWNS A *MOTOR VEHICLE* SUBJECT TO THE *NO-FAULT ACT.*

This does not apply to *you* and, if the accident occurs outside Florida, any *relative* while *occupying your car.*

3. FOR INCOME LOSS WHEN THE SCHEDULE SHOWS INCOME LOSS BENEFITS ARE ELIMINATED UNDER *YOUR* COVERAGE SYMBOL.

**MEDICAL PAYMENTS – COVERAGE C.** *You* have this coverage if "C" appears in the "Coverages" space on the declarations page.

We will pay reasonable medical expenses incurred for *bodily injury* caused by accident. These expenses are for necessary:

1. medical, surgical, X-ray, dental, ambulance, hospital, professional nursing and rehabilitative services,

2. eyeglasses, hearing aids and prosthetic devices,

3. remedial religious treatment or services by a recognized method of healing; and

4. funeral expenses.

These incurred expenses must be:

1. for:

    a. services performed; or

    b. medical supplies, medication or drugs prescribed

    by a medical provider licensed by the state to provide the specific medical services; and

2. for funeral services or remedial religious treatment or services by a recognized method of healing.

We have the right to make or obtain a utilization review of the medical expenses and services to determine if they are reasonable and necessary for the *bodily injury* sustained.

The accident must result from the ownership, maintenance or use of a motor vehicle.

**Persons for Whom Medical Expenses Are Payable**

We will pay medical expenses for *bodily injury* sustained by:

1. a. the first *person* named in the declarations;

b. his or her *spouse*; and

c. their *relatives.*

These *persons* have to sustain the *bodily injury*:

a. while they operate or *occupy* a vehicle covered under the liability section; or

b. through being struck as a *pedestrian* by a self-propelled vehicle or trailer.

*Pedestrian* means a *person* not an occupant of any self-propelled vehicle.

2. any other *person* while *occupying*:

a. a vehicle covered under the liability coverage, except a *non-owned car*. Such vehicle has to be used by a *person* who is insured under the liability coverage; or

b. a *non-owned car.* The *bodily injury* has to result from such *car's* operation or occupancy by the first *person* named in the declarations, his or her *spouse* or their *relatives.*

**Payment of Medical Expenses**

We may pay the injured *person* or any *person* or organization performing the services.

**Limit of Liability**

1. The amount of coverage for medical expenses, including funeral services, is shown on the declarations page under "Limit of Liability – Coverage C – Each Person". If the amount shown is $3,000 or more, the most we pay for funeral services is $3,000 per *person*.

2. This coverage is excess over:

a. any medical expenses paid or payable under no-fault coverage P, or which would be except for any reduction described under no-fault coverage P. When Payments Are Reduced; and

b. military benefits.

3. The liability and uninsured motor vehicle coverages shall be excess over and shall not pay again any medical expenses paid under this coverage.

**Two or More Vehicles**

1. A motor vehicle and attached trailer are one vehicle as respects limits.

2. When two or more motor vehicles are insured under this section the limits apply separately to each.

16
8107

## If There Are Other Medical Payments Coverages or If You Own More Than One Vehicle

### 1. Vehicles You Own

a. If the vehicle involved in the accident is owned by *you* or *your spouse*, this coverage applies only if it is:

   (1) *your car*; or

   (2) a trailer described under **Trailer Coverage** for which no extra premium is charged; or

   (3) a *newly acquired car*. THIS COVERAGE DOES NOT APPLY IF THERE IS OTHER VEHICLE MEDICAL PAYMENTS COVERAGE ON THE *NEWLY ACQUIRED CAR*.

b. If *your car* is also described in a policy issued to *you* by another company, the total limits of liability shall not exceed those of the policy with the highest limits of liability. We are liable only for our share of the damages. Our share is the per cent that the limit of liability of the policy issued by us bears to the sum of the limits of liability of the policies issued by us and the other company.

### 2. Policies Issued by Us to You

If two or more vehicle policies providing medical payments coverage issued by us to *you* apply to the same accident, the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability.

### 3. Temporary Substitute Car, Non-Owned Car, Trailer or Pedestrian

Subject to item 2, this coverage is excess if other vehicle medical payments coverage applies to:

a. a *temporary substitute car*, a *non-owned car* or a trailer; or

b. *bodily injury* sustained by a *pedestrian*.

### 4. Coverage Available From Other Sources

Subject to items 1, 2 and 3, if other vehicle medical payments coverage applies, we are liable only for our share of the damages. Our share is the per cent that the limit of liability of the policy issued by us bears to the total of all vehicle medical payments coverage applicable to the accident.

## What Is Not Covered Under Coverage C

THERE IS NO COVERAGE UNDER MEDICAL PAYMENTS:

  I.  WHILE A *NON-OWNED CAR* IS USED:

a. BY ANY *PERSON* EMPLOYED OR ENGAGED IN ANY WAY IN A *CAR BUSINESS*; OR

b. IN ANY OTHER BUSINESS OR JOB. This does not apply when the first *person* named in the declarations, his or her *spouse* or any *relative* is operating or *occupying* a *private passenger car*.

2. WHILE *OCCUPYING* OR THROUGH BEING STRUCK BY ANY MOTOR VEHICLE OR TRAILER:

a. DESIGNED MAINLY FOR USE OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

b. LOCATED FOR USE AS A RESIDENCE OR PREMISES; OR

c. THAT RUNS ON RAILS OR CRAWLER-TREADS.

3. FOR *BODILY INJURY* DUE TO WAR OF ANY KIND.

4. FOR MEDICAL EXPENSES FOR *BODILY INJURY*:

a. SUSTAINED WHILE *OCCUPYING* OR THROUGH BEING STRUCK BY A VEHICLE OWNED BY *YOU, YOUR SPOUSE*, OR ANY *RELATIVE*, WHICH IS NOT INSURED UNDER THIS COVERAGE; OR

b. TO THE EXTENT WORKER'S COMPENSATION BENEFITS ARE REQUIRED TO BE PAYABLE; OR

c. SUSTAINED BY ANY *PERSON*, other than the first *person* named in the declarations, his or her *spouse* or their *relatives*, WHILE *OCCUPYING* A VEHICLE:

   (1) RENTED TO OTHERS; OR

   (2) USED TO CARRY *PERSONS* FOR A CHARGE. This does not apply to a *private passenger car* used on a share expense basis.

d. SUSTAINED BY ANY *PERSON* WHO AT THE TIME OF THE ACCIDENT:

   (1) OWNS A MOTOR VEHICLE SUBJECT TO THE *NO-FAULT ACT*; AND

   (2) IS NOT INSURED FOR THE COVERAGE REQUIRED BY THE *NO-FAULT ACT*.

This does not apply to *you* and, if the accident occurs outside Florida, any *relative* while *occupying your car*.

17
8107

## SECTION I ~ UNINSURED MOTOR VEHICLE — COVERAGES U AND U3

### UNINSURED MOTOR VEHICLE – COVERAGE U

**(Includes Underinsured Motor Vehicle Coverage on an Excess Basis)**

*You* have this coverage if "U" appears in the "Coverages" space on the declarations page.

### UNINSURED MOTOR VEHICLE — COVERAGE U3

**(Non-Stacking Optional Form)**

*You* have this coverage if "U3" appears in the" Coverages" space on the declarations page.

### UNINSURED MOTOR VEHICLE — COVERAGES U and U3

We will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *uninsured motor vehicle*. The *bodily injury* must be sustained by an *insured* and must be caused by accident arising out of the operation, maintenance or use of an *uninsured motor vehicle*.

The *bodily injury* must be a serious injury as described in section 627.737(2) of the Florida Motor Vehicle No-Fault Law before we will pay for damages consisting of pain, suffering, mental anguish, or inconvenience.

*Uninsured Motor Vehicle* – means:

1. a land motor vehicle, the ownership, maintenance or use of which is:

   a. not insured, not self-insured or not bonded for bodily injury liability at the time of the accident; or

   b. insured, self-insured or bonded for bodily injury liability at the time of the accident; but

   (1) the limits of liability of the insurance, self-insurance or bond are less than required by the financial responsibility act of the state where *your car* is mainly garaged; or

   (2) the limits of liability of the insurance, self-insurance or bond are less than the damages for *bodily injury* sustained by the *insured*; or

   (3) the insuring company or self-insurer denies coverage or is or becomes insolvent; or

2. a land motor vehicle whose owner or driver remains unknown and who was the proximate cause of *bodily injury* to an *insured*.

A self-insured motor vehicle is one owned or operated by a self-insurer under any motor vehicle financial responsibility law, a motor carrier law or any similar law.

An *uninsured motor vehicle* does not include a land motor vehicle:

1. insured under the liability coverage of this policy, unless *you, your spouse* or any *relative* sustains *bodily injury* while the vehicle is being operated by a *person* other than *you, your spouse* or any *relative*;

2. furnished for the regular use of *you, your spouse* or any *relative*;

3. designed for use mainly off public roads except while on public roads; or

4. while located for use as premises.

### Who Is an Insured

### Coverage U

*Insured* – means the *person* or *persons* covered by uninsured motor vehicle coverage. This is:

1. the first *person* named in the declarations;

2. his or her *spouse*;

3. their *relatives*; and

4. any other *person* while *occupying*:

   a. *your car*, a *temporary substitute car*, a *newly acquired car* or a trailer attached to such *car*. Such vehicle has to be used within the scope of the consent of *you* or *your spouse*;

   b. a *car* not owned by *you, your spouse* or any *relative*, or a trailer attached to such a *car*. It has to be driven by the first *person* named in the declarations or that *person's spouse* and within the scope of the owner's consent.

   Such other *person occupying* a vehicle used to carry *persons* for a charge is not an *insured*. This does not apply to the use on a share expense basis.

5. any *p*
   caus
   throu

**Coverage U**

*Insured* – m
uninsured m

1. the fi

2. his o

3. their

4. any c

   a. *y*
      *n*
      *s*
      *v*
      *y*

   b. a
      *r*.
      a
      b
      ti
      tl

   Such
   to ca
   *sure*
   share

5. any *p*
   caus
   throu

**Deciding Fa U3**

Two questic
tween the *in*:

1. Is the
   ages
   *sure*

2. If so,

If there is no

1. If bo
   be de

   Each
   parti
   third
   the t
   party
   able
   the *in*

2. bel

5. any *person* entitled r̄ cover damages be-
cause of *bodily injur,* an *insured* under 1
through 4 above.

### Coverage U3

*Insured* – means the *person* or *persons* covered by
uninsured motor vehicle coverage. This is:

1. the first *person* named in the declarations;

2. his or her *spouse*;

3. their *relatives*; and

4. any other *person* while *occupying*:

    a. *your car,* a *temporary substitute car,* a
    *newly acquired car* or a trailer attached to
    such *car.* Such vehicle has to be used
    within the scope of the consent of *you* or
    *your spouse*; or

    b. a *car* not owned by *you, your spouse,* any
    *relative* or such other *person* or a trailer
    attached to such a *car.* It has to be driven
    by the first *person* named in the declara-
    tions or that *person's spouse* and within
    the scope of the owner's consent.

    Such other *person occupying* a vehicle used
    to carry *persons* for a charge is not an *in-
    sured.* This does not apply to the use on a
    share expense basis.

5. any *person* entitled to recover damages be-
cause of *bodily injury* to an *insured* under 1
through 4 above.

### Deciding Fault and Amount – Coverages U and U3

Two questions must be decided by agreement be-
tween the *insured* and us:

1. Is the *insured* legally entitled to collect dam-
ages from the owner or driver of the *unin-
sured motor vehicle*; and

2. If so, in what amount?

If there is no agreement, then:

1. If both parties consent, these questions shall
be decided by arbitration as follows:

    Each party shall select a competent and im-
    partial arbitrator. These two shall select a
    third one. The written decision of any two of
    the three arbitrators shall be binding on each
    party. If the two selected arbitrators are un-
    able to agree on a third one within 30 days,
    the *insured* shall proceed as provided in item
    2. below.

The cost of the r̄ rator and any expert wit-
ness shall be p̄ by the party who hired
them. The cost of the third arbitrator and
other expenses of arbitration shall be shared
equally by both parties.

The arbitration shall take place in the county
in which the *insured* resides unless the parties
agree to another place. State court rules gov-
erning procedure and admission of evidence
shall be used; or

2. If either party does not consent to arbitrate
these questions or if the arbitrators selected
by each party cannot agree on a third arbitra-
tor, the *insured* shall:

    a. file a lawsuit in the proper court against
    the owner or driver of the *uninsured mo-
    tor vehicle* and us, or if such owner or
    driver is:

    (1) unknown; or

    (2) has been released from liability ac-
    cording to the terms of this provision,

    against us; and

    b. upon filing, immediately give us copies
    of the summons and complaints filed by
    the *insured* in that action, and

    c. secure a judgment in that action. The
    judgment must be the final result of an
    actual trial and an appeal, if an appeal is
    taken.

3. If the *insured* files suit against the owner or
driver of the *uninsured motor vehicle,* we
have the right to defend on the issues of the
legal liability of and the damages owed by
such owner or driver.

If the *insured* reaches a settlement agreement
with the party legally liable for his or her
*bodily injury* and his or her insurer, the *in-
sured* must submit written notice to us, by
certified or registered mail, of the proposed
settlement agreement if:

    a. the settlement would not fully satisfy the
    *insured's* claim for *bodily injury*; and

    b. an *uninsured motor vehicle* claim has
    been or will be made against us.

If, within 30 days after our receipt of the
notice of the proposed settlement, we:

    a. authorize the settlement; or

    b. fail to respond;

19

the *insured* may proceed to execute a full release in favor of the party legally liable for the *insured's bodily injury* and his or her insurer, and finalize the proposed settlement without losing the right to make an *uninsured motor vehicle* claim against us.

If we refuse to authorize the proposed settlement we must, within 30 days after receipt of the notice, pay the *insured* the amount of the written offer from the insurer of the party legally liable for the *insured's bodily injury*. We are then entitled to seek subrogation against the party legally liable for the *insured's bodily injury* and his or her insurer upon final resolution of the claim.

In determining the amount payable under this coverage we may reduce the *insured's* damages by the amount of the liability limits of the policy insuring the party legally liable for the *bodily injury*.

Except as provided above:

1. We are not bound by any judgment against any party obtained without our written consent; and,

2. The *insured* shall not enter into any settlement with any party legally liable for the *insured's bodily injury* without our consent if the settlement agreement precludes our right of recovery against such party.

**Payment of Any Amount Due – Coverages U and U3**

We will pay any amount due:

1. to the *insured*;

2. to a parent or guardian if the *insured* is a minor or an incompetent *person*;

3. to the surviving *spouse*; or

4. at our option, to a *person* authorized by law to receive such payment.

**Limits of Liability**

**Coverage U**

1. The amount of coverage is shown on the declarations page under "Limits of Liability – U – Each Person, Each Accident". Under "Each Person" is the amount of coverage for all damages due to *bodily injury* to one *person*. *"Bodily injury* to one *person"* includes all injury and damages to others resulting from this *bodily injury*. Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to *bodily injury* to two or more *persons* in the same accident.

2. This coverage is excess over, but shall not duplicate, any amount:

   a. paid to or for the *insured* by or for any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; and

   b. paid or payable under:

      (1) any workers' compensation, disability benefits, or similar law;

      (2) the no-fault coverage, or which would be payable except for a deductible;

      (3) any *car* medical expense coverage; and

      (4) any *car* liability coverage.

3. The limits of liability are not increased because:

   a. more than one vehicle is insured under this policy; or

   b. more than one *person* is insured at the time of the accident.

**Coverage U3**

1. The amount of coverage is shown on the declarations page under "Limits of Liability – U3 – Each Person, Each Accident". Under "Each Person" is the amount of coverage for all damages due to *bodily injury* to one *person*. *"Bodily injury* to one *person"* includes all injury and damages to others resulting from this *bodily injury*. Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to *bodily injury* to two or more persons in the same accident.

2. This coverage is excess over, but shall not duplicate, any amount:

   a. paid to or for the *insured* by or for any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; and

   b. paid or payable under:

      (1) any workers' compensation, disability benefits, or similar law;

      (2) the no-fault coverage, or which would be payable except for a deductible;

      (3) any *car* medical expense coverage; and

      (4) any *car* liability coverage.

3. Except as provided in item 3 of **If There Is Other Uninsured Motor Vehicle Coverage**, regardless of the number of motor vehicles involved, the number of *persons* covered or claims made, vehicles or premiums shown in the policy or premiums paid, the limit of liability for uninsured motor vehicle coverage shall not be added to or

stac
to o
. of c
one

4. The

   a.

   b.

When t
THERE
·· BENEF

1.

2.

3.

When t
THERE

1.

2.

If Ther
Covera

Covera

1. If a
   ped

   a.

   b.

20

8107

:hall not dupli-

for any *person*
be held legally
ie *insured*; and

ion, disability

·hich would be
:tible;

overage; and

:ased because:

ired under this

:ed at the time

on the declara-
ty – U3 – Each
ach Person" is
image due to
·dily injury to
id damages to
*injury*. Under
it of coverage,
ier "Each Per-
i injury to two
ent.

:hall not dupli-

for any *person*
be held legally
ie *insured*; and

ion, disability

·hich would be
:tible;

overage; and

stacked upon limits for sr̄ ⌐coverages applying
to other motor vehicles tc ̣ ̣ ̣rmine the amount
of coverage available to an *insured* injured in any
one accident.

4. The limits of liability are not increased because:

   a. more than one vehicle is insured under this
     policy; or

   b. more than one *person* is insured at the time
     of the accident.

**When Coverage U Does Not Apply**

THERE IS NO COVERAGE TO THE EXTENT IT
BENEFITS:

  1. ANY WORKERS' COMPENSATION OR
    DISABILITY BENEFITS INSURANCE
    COMPANY.

  2. A SELF-INSURER UNDER ANY WORK-
    ERS' COMPENSATION, OR DISABILITY
    BENEFITS OR SIMILAR LAW.

  3. ANY GOVERNMENTAL BODY OR
    AGENCY.

**When Coverage U3 Does Not Apply**

THERE IS NO COVERAGE:

  1. TO THE EXTENT IT BENEFITS:

    a. ANY WORKERS' COMPENSATION
      OR DISABILITY BENEFITS INSUR-
      ANCE COMPANY.

    b. A SELF-INSURER UNDER ANY
      WORKERS' COMPENSATION, OR
      DISABILITY BENEFITS OR SIMILAR
      LAW.

    c. ANY GOVERNMENTAL BODY OR
      AGENCY.

  2. FOR *BODILY INJURY* TO AN *INSURED*
    WHILE *OCCUPYING* ANY VEHICLE
    OWNED BY *YOU*, *YOUR SPOUSE*, OR
    ANY *RELATIVE* IF IT IS NOT INSURED
    FOR THIS COVERAGE UNDER THIS
    POLICY. This does not apply to an *insured*
    *occupying a newly acquired car* which has
    no uninsured motor vehicle coverage applica-
    ble to it.

**If There Is Other Uninsured Motor Vehicle
Coverage**

**Coverage U**

1. If an *insured* is *occupying* or is struck as a
   pedestrian by a vehicle:

   a. which is not *your car*; and

   b. other uninsured motor vehicle coverage ap-
    plies, this coverage is excess.

2. Subject to item 1 ab⌐ ̣ ⌐if other uninsured motor
   vehicle coverage a ̣ ̣s, we are liable only for
   our share of the damages. Our share is the per cent
   that the limit of liability of the coverage issued
   by us bears to the total of all uninsured motor
   vehicle coverage applicable to the accident.

**Coverage U3**

1. If an *insured* sustains *bodily injury* while not
   *occupying* a motor vehicle and other uninsured
   motor vehicle coverage is available:

   a. the *insured* must select the limit of one such
    coverage under which to make claim; and

   b. THIS COVERAGE DOES NOT APPLY IF
    THE *INSURED* SELECTS ANY OTHER
    UNINSURED MOTOR VEHICLE COV-
    ERAGE UNDER WHICH TO MAKE
    CLAIM.

2. If the *insured* sustains *bodily injury* while *occu-
   pying your car*, and *your car* is described on the
   declarations page of another policy providing
   uninsured motor vehicle coverage:

   a. the total limits of liability under all such cov-
    erages shall not exceed that of the coverage
    with the highest limit of liability; and

   b. we are liable only for our share. Our share is
    that per cent of the damages that the limit of
    liability of this coverage bears to the total of
    all uninsured motor vehicle coverage applica-
    ble to the accident.

3. If an *insured* as defined in item 1, 2 or 3 of the
   definition of *insured* sustains *bodily injury* while
   *occupying* a vehicle not owned by *you, your
   spouse* or a *relative*, such injured *person* can
   select one uninsured motor vehicle coverage that
   covers the injured *person* as a named insured or
   *relative* to apply:

   a. as excess over the coverage on the vehicle
    *occupied*; or

   b. as primary if there is no coverage on the
    vehicle *occupied*.

   THIS COVERAGE DOES NOT APPLY IF
   OTHER APPLICABLE COVERAGE IS SE-
   LECTED.

4. If an *insured* as defined in item 4 of the definition
   of *insured* sustains *bodily injury* while *occupy-
   ing* a vehicle not owned by *you, your spouse,
   your relatives* or such *insured*:

   a. THIS COVERAGE DOES NOT APPLY TO
    SUCH *INSURED* IF THERE IS OTHER
    UNINSURED MOTOR VEHICLE COV-
    ERAGE:

21

8107

(1) APPLICABLE TO THE VEHICLE *OC-CUPIED;* OR

(2) AVAILABLE TO SUCH *INSURED* AS A NAMED INSURED OR INSURED FAMILY MEMBER UNDER AN-OTHER POLICY PROVIDING UNIN-SURED MOTOR VEHICLE COVERAGE.

b. and, subject to a. above, coverage under more than one policy issued to *you, your spouse* or *your relatives* is applicable, the injured *person* can select one such uninsured motor vehicle coverage to apply.

THIS COVERAGE DOES NOT APPLY IF OTHER APPLICABLE COVERAGE IS SE-LECTED.

## SECTION IV — PHYSICAL DAMAGE COVERAGES

*Loss* – means, when used in this section, each direct and accidental loss of or damage to:

1. *your car;*

2. its equipment which is common to the use of *your car* as a vehicle;

3. clothes and luggage insured; and

4. a detachable living quarters attached or re-moved from *your car* for storage. Detachable living quarters includes its body and items securely fixed in place as a permanent part of the body. *You* must have told us about the living quarters before the *loss* and paid any extra premium needed.

**COMPREHENSIVE – COVERAGE D.** *You* have this coverage if "D" appears in the "Coverages" space on the declarations page. If a deductible applies the amount is shown by the number beside "D".

1. Loss to *Your Car.* We will pay for *loss* to *your car* EXCEPT *LOSS* BY *COLLISION* but only for the amount of each such *loss* in excess of the deductible amount, if any. If the *loss* is breakage of glass, the deductible does not apply.

Breakage of glass, or *loss* caused by missiles, falling objects, fire, theft, larceny, explosion, earthquake, windstorm, hail, water, flood, malicious mischief or vandalism, riot or civil commotion, is payable under this coverage. *Loss* due to hitting or being hit by a bird or an animal is payable under this coverage.

2. We will repay *you* for transportation costs if *your car* is stolen. We will pay up to $16 per day for the period that begins 48 hours after *you* tell us of the theft. The period ends when we offer to pay for *loss.*

**COLLISION – 80% – COVERAGE F.** *You* have this coverage if "F" appears in the "Coverages" space on the declarations page.

We will pay 80% of the first $250 and 100% over that amount of *loss* to *your car* caused by *collision.* If we offer to pay for the repair of damaged windshield glass instead of the replacement of the windshield and *you* agree to have such repair made, we will pay the full cost of repairing the windshield glass regardless of *your* deductible. If the *collision* is with another motor vehicle insured by us, we will pay 100% of the *loss.*

22
8107

**COLLISION – COVERAGE G.** *You* have this coverage if "G" appears in the "Coverages" space on the declarations page. The deductible amount is shown by the number beside "G".

We will pay for *loss* to *your car* caused by *collision* but only for the amount of each such *loss* in excess of the deductible amount. If we offer to pay for the repair of damaged windshield glass instead of the replacement of the windshield and *you* agree to have such repair made, we will pay the full cost of repairing the windshield glass regardless of *your* deductible. If the *collision* is with another motor vehicle insured with us, *you* do not pay *your* deductible if it is $100 or less as we pay it.

*Collision* – means *your car* upset or hit or was hit by a vehicle or other object.

**Clothes and Luggage – Comprehensive and Collision Coverages**

We will pay for *loss* to clothes and luggage owned by the first *person* named in the declarations, his or her *spouse*, and their *relatives*. These items have to be in or on *your car*. *Your car* has to be covered under this policy for:

1. Comprehensive, and the *loss* caused by fire, lightning, flood, falling objects, explosion, earthquake or theft. If the *loss* is due to theft, *YOUR* ENTIRE *CAR* MUST HAVE BEEN STOLEN; or

2. Collision, and the *loss* caused by *collision*.

We will pay up to $200 for *loss* to clothes and luggage in excess of any deductible amount shown for comprehensive or collision. $200 is the most we will pay in any one occurrence even though more than one *person* has a *loss*. This coverage is excess over any other coverage.

**Limit of Liability – Comprehensive and Collision Coverages**

The limit of our liability for *loss* to property or any part of it is the lower of:

1. the actual cash value; or

2. the cost of repair or replacement.

Actual cash value is determined by the market value, age and condition at the time the *loss* occurred. Any deductible amount that applies is then subtracted.

The cost of repair or replacement is based upon one of the following:

1. the cost of repair or replacement agreed upon by *you* and us;

2. a competitive bid approved by us; or

3. an estimate written based upon the prevailing competitive price. The prevailing competitive price means prices charged by a majority of the repair market in the area where the *car* is to be repaired as determined by a survey made by us. If *you* ask, we will identify some facilities that will perform the repairs at the prevailing competitive price. We will include in the estimate parts sufficient to restore the vehicle to its pre-loss condition. *You* agree with us that such parts may include either parts furnished by the vehicle's manufacturer or parts from other sources including non-original equipment manufacturers.

Any deductible amount that applies is then subtracted.

**Settlement of Loss – Comprehensive and Collision Coverages**

We have the right to settle a loss with *you* or the owner of the property in one of the following ways:

1. pay the agreed upon actual cash value of the property at the time of the *loss* in exchange for the damaged property. If the owner keeps the damaged property, we will deduct its value after the *loss* from our payment. The damaged property cannot be abandoned to us;

2. pay to:

   a. repair the damaged property or part, or

   b. replace the property or part.

   If the repair or replacement results in betterment, *you* must pay for the amount of betterment; or

3. return the stolen property and pay for any damage due to the theft.

The Settlement of Loss provision for comprehensive and collision coverages incorporates the Limit of Liability provision of those coverages.

If we can pay the *loss* under either comprehensive or collision, we will pay under the coverage where *you* collect the most.

When there is *loss* to *your car*, clothes and luggage in the same occurrence, any deductible will be applied first to the *loss* to *your car*. *You* pay only one deductible.

**EMERGENCY ROAD SERVICE – COVERAGE H.** *You* have this coverage if "H" appears in the "Coverages" space on the declarations page.

We will pay the fair cost *you* incur for *your car* for:

1. mechanical labor up to one hour at the place of its breakdown;

23

8107

2. towing to the nearest place where the necessary repairs can be made during regular business hours if it will not run;

3. towing it out if it is stuck on or immediately next to a public highway;

4. delivery of gas, oil, loaned battery, or change of tire. WE DO NOT PAY FOR THE COST OF THESE ITEMS.

**CAR RENTAL EXPENSE – COVERAGE R. You** have this coverage if "R" appears in the "Coverages" space on the declarations page.

We will repay *you* up to $10 per day when *you* rent a car from a car rental agency or garage due to a *loss* to *your car* which would be payable under coverage D, F or G, starting:

1. when it cannot run due to the *loss*; or

2. if it can run, when *you* leave it at the shop for agreed repairs;

and ending when:

1. it has been repaired or replaced, or

2. we offer to pay for the *loss*, or

3. *you* incur 30 days rent,

whichever comes first.

Any car payable under coverage R is REDUCED TO THE EXTENT IT IS PAYABLE UNDER COMPREHENSIVE.

**CAR RENTAL AND TRAVEL EXPENSES – COVERAGE R1. You** have this coverage if "R1" appears in the "Coverages" space on the declarations page.

1. **Car Rental Expense. We will:**

   a. pay *you* up to $16 of the daily rental charge when *you* rent a *car* from a car rental agency or garage; or

   b. pay *you* $10 for each complete 24 hour period that *your car* is not drivable if *you* choose to not rent a *car*. *You* must report to us the period of time *your car* was not drivable.

   We will pay only if *your car* is not drivable because of a *loss* which would be payable under coverage D, F or G.

   This applies during a period starting:

   a. when *your car* cannot run due to the *loss*; or

   b. if *your car* can run, when *you* leave it at the shop for agreed repairs;

and ending when:

a. when it has been repaired or replaced, or

b. (1) when we offer to pay for the *loss*, if *your car* is repairable, or

   (2) five days after we offer to pay for the *loss*, if:

      (a) *your car* was stolen and not recovered, or

      (b) we declare it a total loss,

whichever comes first.

Any car rent payable under this coverage is REDUCED TO THE EXTENT IT IS PAYABLE UNDER COMPREHENSIVE.

2. **Travel Expenses.** If *your car* cannot run due to a *loss* which would be payable under coverage D, F or G more than 50 miles from home, we will repay *you* for expenses incurred by *you, your spouse* and any *relative* for:

   a. Commercial transportation fares to continue to *your* destination or home.

   b. Extra meals and lodging needed when the *loss* to *your car* causes a delay enroute. The expenses must be incurred between the time of the *loss* and *your* arrival at *your* destination or home or by the end of the fifth day, whichever occurs first.

   c. Meals, lodging and commercial transportation fares incurred by *you* or a *person you* choose to drive *your car* from the place of repair to *your* destination or home.

3. **Rental Car – Repayment of Deductible Amount Expense.** We will repay the expense of any deductible amount *you* are required to pay the owner under comprehensive or collision coverage in effect on a substitute *car* rented from a car rental agency or garage.

**Total Amount of Expenses Payable – Coverage R1**

1. The most we will pay for the total of the Car Rental Expense and Rental Car – Repayment of Deductible Amount Expense incurred in any one occurrence is $400.

2. The most we will pay for **Travel Expenses** incurred by all persons in any one occurrence is $400.

**CAR RENTAL AND TRAVEL EXPENSES – COVERAGE R2.** *You* have this coverage if "R2" appears in the "Coverages" space on the declarations page.

1. **Car Rent**

   a. We w

      (1) pa
           re
           ga
           re
           re

      (2) pa
           pe
           ch
           to
           no

      We w
      becau
      under

   b. Paym

      (1) st

         (a

         (b

      (2) en

         (a

         (b

         (c

      w

   Any car
   REDUCI
   MENT I
   SIVE CC

2. **Travel E**
   to a *loss*
   home and
   age D, F
   incurred
   for:

   a. comn
       to *yo*

24

r replaced, or
or the *loss*, if
or
to pay for the

n and not re-

loss,

s coverage is
IT IS PAY-
ISIVE.

annot run due
le under cov-
) miles from
l any *relative*

fares to con-
home.

ded when the
elay enroute.
rred between
'ur arrival at
by the end of
urs first.

cial transpor-
t or a *person*
car from the
estination or

Deductible
y the expense
re required to
isive or colli-
ubstitute *car*
or garage.

Coverage R1
l of the Car
Repayment
curred in any

Expenses in-
ccurrence is

XPENSES –
erage if "R2"
: declarations

1. **Car Rental Expense.**

   a. We will:

      (1) pay 80% of the rental charge when *you* rent a *car* from a car rental agency or garage. "Rental charge" means the daily rental rate plus charges for mileage and related taxes; or

      (2) pay *you* $10 for each complete 24 hour period that *your car* is not drivable if *you* choose to not rent a *car*. *You* must report to us the period of time that *your car* was not drivable.

      We will pay only if *your car* is not drivable because of a *loss* which would be payable under coverage D, F or G.

   b. Payment will be made for a period that:

      (1) starts:

         (a) when *your car* is not drivable due to the *loss*; or

         (b) if *your car* is drivable, when *you* leave it at the shop for agreed repairs; and

      (2) ends:

         (a) when *your car* has been repaired or replaced; or

         (b) when we offer to pay for the *loss*, if *your car* is repairable but *you* choose to delay repairs; or

         (c) five days after we offer to pay for the *loss* if:

            (i) *your car* was stolen and not recovered; or

            (ii) we declare that *your car* is a total loss;

         whichever comes first.

      Any car rent payable under this coverage is REDUCED TO THE EXTENT THAT PAYMENT IS MADE UNDER COMPREHENSIVE COVERAGE.

2. **Travel Expenses.** If *your car* is not drivable due to a *loss* which occurs more than 50 miles from home and which would be payable under coverage D, F or G, we will pay *you* for expenses incurred by *you*, *your spouse* and any *relative* for:

   a. commercial transportation fares to continue to *your* destination or home;

   b. extra meals and lodging needed when the *loss* to *your car* causes delay enroute. The expenses must be incurred between the time of the *loss* and *your* arrival at *your* destination or home or by the end of the fifth day, whichever occurs first; and

   c. meals, lodging and commercial transportation fares incurred by *you* or a *person you* choose to drive *your car* from the place of repair to *your* destination or home.

3. **Rental Car – Repayment of Deductible Amount Expense.** We will pay the expense of any deductible amount *you* are required to pay the owner under comprehensive or collision coverage in effect on a substitute *car* rented from a car rental agency or garage.

**Total Amount of Expenses Payable – Coverage R2**

1. The most we will pay for Car Rental Expense incurred in any one occurrence is $500.

2. The most we will pay for Travel Expenses incurred by all *persons* in any one occurrence is $400.

3. The most we will pay for Rental Car – Repayment of Deductible Amount Expense incurred in any one occurrence is $400.

**Trailer Coverage**

1. **Owned Trailer**

   *Your* trailer is covered:

   a. when it is described on the declarations page of the policy; and

   b. for the coverages shown as applying to it.

2. **Non-Owned Trailer or Detachable Living Quarters**

   Any physical damage coverage in force on *your car* applies to a non-owned:

   a. trailer, if it is designed for use with a *private passenger car*, or

   b. detachable living quarters unit

   used by the first *person* named in the declarations, his or her *spouse* or their *relatives*.

   The most we will pay under the comprehensive or collision coverage for a *loss* to such nonowned trailer or unit is $500.

   A non-owned trailer or detachable living quarters unit is one that:

   a. is not owned by or registered in the name of:

25

(1) *you, your spouse* or any *relative*;

(2) any other *person* residing in the same household as *you, your spouse* or any *relative*; or

(3) an employer of *you, your spouse* or any *relative*; and

b. has not been used or rented by or in the possession of *you, your spouse* or any *relative* during any part of each of the last 21 or more consecutive days. If *you* are insured by one or more other car policies issued by us, the 21 day limit is increased by an additional 21 days for each such additional policy; and

c. is not rented and used in connection with the employment or business of *you, your spouse* or any *relative*.

**Coverage for the Use of Other Cars**

The coverages in this section *you* have on *your car* extend to a *loss* to a *newly acquired car*, a *temporary substitute car* or a *non-owned car*. These coverages extend to a *non-owned car* while it is driven by or in the custody of an *insured*.

*Insured* – as used in this provision means:

1. the first *person* named in the declarations;

2. his or her *spouse*; or

3. their *relatives*.

**When Coverages D, F, G, H, R, R1 and R2 Do Not Apply**

THERE IS NO COVERAGE FOR:

1. A *NON-OWNED CAR*:

   a. IF THE DECLARATIONS STATE THE "USE" OF *YOUR CAR* IS OTHER THAN PLEASURE AND BUSINESS;

   b. WHILE BEING REPAIRED, SERV-ICED OR USED BY ANY *PERSON* WHILE THAT *PERSON* IS WORKING IN ANY *CAR BUSINESS*; OR

   c. WHILE USED IN ANY OTHER BUSI-NESS OR OCCUPATION. This does not apply to a *private passenger car* driven or *occupied* by the first *person* named in the declarations, his or her *spouse* or their *relatives*.

2. ANY VEHICLE WHILE:

   a. RENTED OR LEASED TO OTHERS; OR

   b. USED TO CARRY *PERSONS* FOR A CHARGE. This does not apply to the use on a share expense basis; OR

3. *LOSS* TO ANY VEHICLE DUE TO:

   a. TAKING BY ANY GOVERNMENTAL AUTHORITY;

   b. WAR OF ANY KIND;

   c. AND LIMITED TO WEAR AND TEAR, FREEZING, MECHANICAL OR ELECTRICAL BREAKDOWN OR FAILURE. This does not apply when the *loss* is the result of a theft covered by this policy. Nor does it apply to emergency road service; OR

   d. CONVERSION, EMBEZZLEMENT OR SECRETION BY ANY *PERSON* WHO HAS THE VEHICLE DUE TO ANY LIEN, RENTAL OR SALES AGREEMENT.

4. TIRES unless:

   a. stolen, or damaged by fire or vandalism; or

   b. other *loss* covered by this section happens at the same time.

5. TAPES OR DISCS FOR RECORDING OR REPRODUCING SOUND.

6. ANY LASER OR RADAR DETECTOR.

7. *YOUR CAR* WHILE SUBJECT TO ANY LIEN, LEASE OR SALES AGREEMENT NOT SHOWN IN THE DECLARATIONS.

**If There Is Other Physical Damage Coverage or If You Own More Than One Vehicle**

1. **Vehicles You Own**

   a. If the vehicle involved in the accident is owned by *you* or *your spouse*, this coverage applies only if it is:

      (1) *your car*; or

      (2) a *newly acquired car*. THIS INSUR-ANCE DOES NOT APPLY. IF THERE IS SIMILAR COVERAGE ON THE *NEWLY ACQUIRED CAR*.

   b. If *your car* is also described in a policy issued to *you* by another company, the total limits of liability shall not exceed those of the policy with the highest limits of liability. We are liable only for our share of the damages. Our share is the per cent that the limit of liability of the policy issued by us bears to the sum of

26

8107

ONS FOR A
oply to the use
OR

JE TO:

RNMENTAL

/EAR AND
CHANICAL
KDOWN OR
pply when the
overed by this
to emergency

ZZLEMENT
NY PERSON
LE DUE TO
OR SALES

or vanda ism;

ction happens

ORDING OR

ETECTOR.

CT TO ANY
GREEMENT
ARATIONS.

: Coverage or
e

ne accident is
, this coverage

THIS INSUR-
Y. IF THERE
GE ON THE
R.

a policy issued
e total limits of
e of the policy
bility. We are
damages. Our
mit of liability
s to the sum of

. the limits of liability of policies issued by us and the other comp

### 2. Policies Issued by Us to You

If two or more vehicle policies issued by us to *you* apply to the same *loss* or occurrence, we will pay under the policy with the highest limit.

### 3. Temporary Substitute Car, Non-Owned Car or Trailer

If a *temporary substitute car*, a *non-owned car* or trailer designed for use with a *private passenger car* has other coverage on it, then this coverage is excess.

### 4. Coverage Available from Other Sources

Subject to items 1, 2 and 3, if other coverage applies to the *loss* or expenses, we will pay only our share. Our share is the per cent that the limit of liability of this policy issued by us bears to the total of all coverage that applies.

### No Benefit to Bailee

These coverages shall not benefit any carrier or other bailee for hire liable for *loss*.

### Two or More Vehicles

If two or more of *your cars* are insured for the same coverage, the coverage applies separately to each.

## SECTION V — DEATH, DISMEMBERMENT AND LOSS OF SIGHT — COVERAGE S

If "S" is shown in the "Coverages" space on the declarations page each *insured* has the coverage.

We will pay the amount shown in the schedule that applies for death, or *loss*, caused by accident. The *insured* has to be *occupying* or be struck by a land motor vehicle or trailer. The death or *loss* must be the direct result of the accident and not due to any other cause. The death or *loss* must occur within 90 days of the accident.

*Insured* – means a *person* listed under "Persons Insured – Coverage S" on the declarations page.

*Loss* – means the loss of:

1. the foot or hand, cut off through or above the ankle or wrist; or

2. the whole thumb or finger; or

3. all sight.

### The Most We Pay

The most we will pay because of the death of, or *loss* to, the *insured*, except as provided below, is shown under "Amount" next to his or her name on the declarations page.

The amount shown in the schedule for death or *loss* is doubled for an *insured* who, at the time of the accident, is using the vehicle's complete restraint system as recommended by the vehicle's manufacturer.

If the *insured* dies as a result of this accident, any payment made or due for *loss* reduces the amount of the death payment.

### SCHEDULE

| | If amount under S in the declarations is: | |
|---|---|---|
| | $5,000 | $10,000 |
| Death | $5,000 | $10,000 |
| *Loss* of: | | |
| hands; feet; sight of eyes; one hand & one foot; or one hand or one foot & sight of one eye | 5,000 | 10,000 |
| one hand or one foot; or sight of one eye | 2,500 | 5,000 |
| thumb & finger on one hand; or three fingers | 1,500 | 3,000 |
| any two fingers | 1,000 | 2,000 |

**Payment of Any Amount Due**

We will pay any amount due:

1. to the *insured*;

2. to a parent or guardian if the *insured* is a minor or an incompetent *person*;

3. to the surviving *spouse*; or

4. at our option, to any *person* or organization authorized by law to receive such payment.

Any payment made is to its extent a complete discharge of our obligations. We are not responsible for the way the money is used.

**Autopsy**

We have the right to have an autopsy made where it is not forbidden by law.

**When Coverage S Does Not Apply**

THIS COVERAGE DOES NOT APPLY TO DEATH OF OR *LOSS* TO AN *INSURED*:

1. WHILE ON THE JOB, OPERATING, *OC-CUPYING*, LOADING OR UNLOADING:

   a. AN EMERGENCY VEHICLE; OR

   b. A VEHICLE USED IN THE *IN-SURED'S* BUSINESS OR JOB.

   But 1.b. does not apply if the vehicle is:

   (1) a *private passenger car* or school bus; or

   (2) of a pickup or van type, with a Gross Vehicle Weight of 10,000 pounds or less, while not used for delivery.

2. WHILE:

   a. ON THE JOB IN ANY *CAR BUSI-NESS*; OR

   b. *OCCUPYING* ANY:

      (1) VEHICLE WHILE BEING USED IN A RACE; OR

      (2) MILITARY VEHICLE.

3. DUE TO:

   a. DISEASE except pus forming infection due to *bodily injury* received in the accident; or

   b. SUICIDE OR ATTEMPTED SUICIDE WHILE SANE OR INSANE; OR

   c. WAR OF ANY KIND.

4. WHILE *OCCUPYING* OR THROUGH BE-ING STRUCK BY A MOTOR VEHICLE OR TRAILER:

   a. THAT RUNS ON RAILS OR CRAWLER-TREADS;

   b. DESIGNED FOR USE MAINLY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

   c. LOCATED FOR USE AS PREMISES.

28

8107

an type, with a
right of 0,000
ile not used for

TY CAR BUSI-

BEING USED

LE.

rming infection
ived in the acci-

TED SUICIDE
ANE; OR

THROUGH BE-
FOR VEHICLE

RAILS OR

MAINLY OFF
E OFF PUBLIC

S PREMISES.

## CONDITIONS

### 1. Policy Changes

**a. Policy Terms.** The terms of this policy may be changed or waived only by:

(1) an endorsement issued by us; or

(2) the revision of this policy form to give broader coverage without an extra charge. If any coverage you carry is changed to give broader coverage, we will give *you* the broader coverage without the issuance of a new policy as of the date we make the change effective.

**b. Change of Interest.** No change of interest in this policy is effective unless we consent in writing. However, if *you* die, we will protect as named insured, except under death, dismemberment and loss of sight coverage:

(1) *your* surviving *spouse*;

(2) any *person* with proper custody of *your car*, a *newly acquired car* or a *temporary substitute car* until a legal representative is qualified; and then

(3) the legal representative while acting within the scope of his or her duties.

Policy notice requirements are met by mailing the notice to the deceased named insured's last known address.

**c. Consent of Beneficiary.** Consent of the beneficiary under death, dismemberment and loss of sight coverage is not needed to cancel or change the policy.

**d. Joint and Individual Interests.** When there are two or more named insureds, each acts for all to cancel or change the policy.

### 2. Suit Against Us

There is no right of action against us:

a. until all the terms of this policy have been met; and

b. under the liability coverages, until the amount of damages an *insured* is legally liable to pay has been finally determined by:

(1) verdict after actual trial; or

(2) agreement between the *insured*, the claimant and us.

Bankruptcy or insolvency of the *insured* or his or her estate shall not relieve us of our obligations.

c. under no-fault, medical payments, uninsured motor vehicle, any physical damage and death, dismemberment and loss of sight coverages, until 30 days after we get the *insured's* notice of accident or *loss*.

### 3. Our Right to Recover Our Payments

a. Medical payments and death, dismemberment and loss of sight coverage payments are not recoverable by us.

b. Under uninsured motor vehicle coverage:

(1) we are subrogated to the extent of our payments to the proceeds of any settlement the injured *person* recovers from any party liable for the *bodily injury*, unless we have waived our subrogation rights according to the provision titled **Deciding Fault and Amount — Coverages U and U3.**

(2) if the *person* to or for whom we have made payment has not recovered from the party at fault, he or she shall:

(a) keep these rights in trust for us;

(b) execute any legal papers we need; and

(c) when we ask, take action through our representative to recover our payments.

We are to be repaid our payments, costs and fees of collection out of any recovery.

c. Under the liability and physical damage coverages the right of recovery of any party we pay passes to us. Such party shall:

(1) not hurt our rights to recover; and

(2) help us get our money back.

### 4. Cancellation

**How You May Cancel.** *You* may cancel *your* policy by notifying us in writing of the date to cancel, which must be later than the date *you* mail or deliver it to us. We may waive these requirements by confirming the date and time of cancellation to *you* in writing.

However, if *your* policy provides liability and no-fault coverages, *you* may not cancel *your* policy during the first two months immediately following the policy effective date unless:

a. *your car* has been totally destroyed;

b. *you* have transferred ownership of *your car*;

29
8107

c. *you* have purcha    ~another policy covering
   *your car*; or

d. *you* are a member of the United States Armed
   Forces and have been called to or are on active
   duty outside the United States in an emer-
   gency situation.

**How and When We May Cancel.** We may
cancel *your* policy by written notice, mailed or
delivered to *your* last known address. The notice
shall give the date cancellation is effective. Ex-
cept as provided under **Cancellation Due to In-
correct Premium**, the notice will be mailed or
delivered to *you* at least:

a. 10 days before the cancellation effective date
   if the cancellation is because *you* did not pay
   the premium; or

b. 45 days before the cancellation effective date
   if the cancellation is because of any other
   reason.

The mailing of the notice by United States postal
proof of mailing or certified or registered mailing
shall be sufficient proof of notice.

During the first 60 days immediately following
the policy effective date, if we cancel *your* policy
for nonpayment of premium, we will do so only
if a check used to pay the premium is dishonored
for any reason. Subject to this, on or after the 60th
day that *your* policy has been in effect, we will
not cancel *your* policy before the end of the
current policy period unless:

a. *you* fail to pay the premium when due;

b. *you*, *your* spouse, any *relative* or any other
   *person* who usually drives *your car* has had
   his or her driver's license under suspension
   or revocation during the 180 days just before
   the effective date of the policy or during the
   policy period or, if the policy is a renewal,
   during its policy period.

c. the grounds for the cancellation are based on
   material misrepresentation or fraud.

**Cancellation Due to Incorrect Premium.** If we
determine that we have charged *you* an incorrect
premium for coverages requested in *your* insur-
ance application, we will immediately notify *you*
of any additional premium due. *You* may:

a. maintain *your* policy in force by paying the
   additional amount due by the date stated in
   the notice; or

b. cancel *your* policy by the date stated in the
   notice and receive a refund of any unearned
   premium.

If *you* fail to respond by the date stated in the notice,
we will cancel *your* policy. The cancellation

30
8107

effective date v ~ be stated in the notice and will
be at least 14 d.    after the date we mail or deliver
the notice to *you*:

**Return of Unearned Premium.** If *you* cancel,
premium will be earned on a pro-rata basis. We
may retain up to ten percent of any unearned
premium. Any remaining unearned premium
will be returned to *you* within 30 days after we
receive *your* request to cancel *your* policy. If we
cancel, premium will be earned on a pro-rata
basis. Any unearned premium will be returned at
the time we cancel or within 30 days after we
issue the cancellation notice. Delay in the return
of unearned premium does not affect the cancel-
lation.

**5. Renewal**

Unless we mail or deliver to *you* written notice
of cancellation or a notice of our intention not to
renew the policy, we agree to renew the policy
for the next policy period upon *your* payment of
the renewal premium. It is agreed that the re-
newal premium will be based upon the rates in
effect, the coverages carried, the applicable limits
of liability, deductibles and other elements that
affect the premium that apply at the time of
renewal.

Other elements that may affect *your* premium
include, but are not limited to:

a. drivers of *your car* and their ages and marital
   status;

b. *your car* and its use;

c. eligibility for discounts or other premium
   credits;

d. applicability of a surcharge based either on
   accident history, or on other factors.

A notice of our intention to not renew will be
mailed or delivered to *your* last known address at
least 45 days before the end of the current policy
period.   The mailing of the notice by United
States postal proof of mailing or certified or
registered mailing shall be sufficient proof of
notice.

**6. Premium**

The premium for this policy may vary based upon
the purchase of other insurance from one of the
State Farm affiliated companies.

The premium for this policy is based on informa-
tion State Farm has received from *you* or other
sources. If the information is incorrect or incom-
plete, or changes during the policy period, *you*
must inform State Farm of any changes regarding
the following:

a. . yo

b. th
   in

c. y

d. th
   g

*You* 
infor
incor.
polic:
prem
corre
*You*
incre
will 
miun
miun

**7. Med**

We c
clair

a. i
   f

   j

b. i
   t

by f
of h

1. Me
   firs
   to 
   div
   ma
   sifi
   lish

2. No
   ses:

In Wit
signed
a duly

*Kim*

SECR.

a. *your car*, or its use, inc' ``ng annual mileage;

b. the *persons* who regularly drive *your car*, including newly licensed family members;

c. *your* marital status; or

d. the location where *your car* is principally garaged.

*You* agree that if this information or any other information used to determine the premium is incorrect or incomplete, or changes during the policy period, we may decrease or increase the premium during the policy period based upon the corrected, completed or changed information. *You* agree that if the premium is decreased or increased during the policy period, State Farm will refund or credit to *you* any decrease in premium and *you* will pay for any increase in premium.

### 7. Mediation

We or the *insured* may request mediation of any claim:

a. in an amount of $10,000 or less resulting from:

   1. *bodily injury* under Sections II or III; or

   2. death of or *loss* to an *insured* under Section V; or

b. in any amount for a *loss* covered under Section IV,

by filing a written request with the Department of Insurance on a form which may be obtained from the departmer    The request must state why mediation is b.   , requested and the issue in dispute.

The Department of Insurance will appoint a mediator. Each party may reject one mediator whether before or after the other party has made a rejection. The mediator will notify the parties of the date, time, and place of the mediation conference, which will be held within 45 days of the request for mediation. The mediation will be conducted informally and may be held by telephone if feasible. Participants must have authority to make a binding decision, and must mediate in good faith. Information and disclosure provided during mediation are not admissible in any subsequent action or proceeding relating to the claim or cause of action giving rise to the claim. Costs of the mediator shall be shared equally by each party unless the mediator determines a party has not mediated in good faith.

If a person files suit which relates to facts already mediated, such facts shall not be mediated again. Only one mediation may be requested for each claim, unless all parties agree to further mediation. Any suit regarding a mediated dispute must be filed as prescribed under the "Limitations of Actions" statutes or within 60 days after the conclusion of the mediation process, whichever is later.

### 8. Concealment or Fraud

There is no coverage under this policy if *you* or any other *person* insured under this policy has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy.

## MUTUAL CONDITIONS

1. **Membership.** While this policy is in force, the first insured named in the declarations is entitled to vote at all meetings of members and to receive dividends the Board of Directors in its discretion may declare in accordance with reasonable classifications and groupings of policyholders established by such Board.

2. **No Contingent Liability.** This policy is non-assessable.

3. **Annual Meeting.** The annual meeting of the members of the company shall be held at its home office at Bloomington, Illinois, on the second Monday of June at the hour of 10:00 A.M., unless the Board of Directors shall elect to change the time and place of such meeting, in which case, but not otherwise, due notice shall be mailed each member at the address disclosed in this policy at least 10 days prior thereto.

In Witness Whereof, the State Farm Mutual Automobile Insurance Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois, and countersigned on the declarations page by a duly authorized representative of the Company.

*Kim M. Brunner*

SECRETARY

*Edward B Rust, Jr*

PRESIDENT

31

8107

**Page No.**        WHA ~ ~T IS AND WHERE YOU CAN FIND I~ - THE INDEX

6   Reporting a Claim – Insured's Duties – What to do if *you* have an accident, claim or are sued.
3   Defined Words
4   Declarations Continued
5   When and Where Coverage Applies
5   Financed Vehicles – Coverage for Creditor

**Coverages**

7   A – **Liability** – When there is *bodily injury* to others or damage to others' property.
10  B – **Property Damage Liability** – When there is damage to others' property.
12  P – **No-Fault** – When there are medical expenses, work loss or death.
16  C – **Medical Payments** – When there are medical and funeral expenses.
18  U – **Uninsured Motor Vehicle** – When the other car or driver is not insured or is underinsured. (Underinsured coverage is on an excess basis.)
18  U3 – **Uninsured Motor Vehicle** – When the other car or driver is not insured or is underinsured. (Non-Stacking Optional Form.)
22  D – **Comprehensive** – When *your car* is damaged except by collision or upset. Any deductible amount is shown by the number beside "D" on the declarations page.
22  F – **Collision – 80%** – When *your car* is damaged by collision or upset.
23  G – **Collision** – When *your car* is damaged by collision or upset. The deductible is shown by the number beside "G" on the declarations page.
23  H – **Emergency Road Service** – When *your car* breaks down or needs a tow.
24  R – **Car Rental Expense** – When *you* need to rent a *car* because of damage to *your car*.
24  R1 – **Car Rental and Travel Expenses** – When *you* need to rent a *car* and pay extra travel expenses because of damage to *your car*.
24  R2 – **Car Rental and Travel Expenses** – When *you* need to rent a *car* and pay extra travel expenses because of damage to *your car*.
27  S – **Death, Dismemberment and Loss of Sight** – Pays for death of or certain injuries to *persons* named.

**Conditions**

29   1.   Policy Changes
29   2.   Suit Against Us
29   3.   Our Right To Recover Our Payments
29   4.   Cancellation
30   5.   Renewal
30   6.   Premium
31   7.   Mediation
31   8.   Concealment or Fraud

31   **Mutual Conditions**

Policy Form 9810.7

## 6893MM AMENDMENT OF CAR RENTAL AND TRAVEL EXPENSES COVERAGES

This endorsement is a part of *your* policy. Except for the changes it makes, all other terms of the policy remain the same and apply to this endorsement. It is effective at the same time as *your* policy unless a different effective date is specified by us in writing.

In consideration of the premium charged, it is agreed that **SECTION IV — PHYSICAL DAMAGE COVERAGES** of *your* policy is changed as follows:

**CAR RENTAL AND TRAVEL EXPENSES — COVERAGE R1** and **CAR RENTAL AND TRAVEL EXPENSES — COVERAGE R2** are deleted and replaced by the following:

**CAR RENTAL AND TRAVEL EXPENSES – COVERAGE R1.** *You* have this coverage if "R1" appears in the "Coverages" space on the declarations page.

1. **Car Rental Expense.**

   a. If:

   (1) a dollar amount is shown under "Limits of Liability – Car Rental Expense, Each Day" on the declarations page, we will pay *you* the daily rental charge up to that dollar amount; or

   (2) a percentage amount is shown under "Limits of Liability – Car Rental Expense, Each Day" on the declarations page, we will pay *you* that percentage of the daily rental charge

   when *you* rent a *car* from a car rental agency or *car business*. "Daily rental charge" means the daily rental rate plus charges for mileage and related taxes.

   If *you* choose not to rent a *car*, we will pay *you* $10 for each complete 24 hour period that *your car* is not drivable. *You* must report to us the period of time that *your car* was not drivable.

   We will pay only if *your car* is not drivable because of a *loss* which would be payable under coverage D, F or G.

   b. Payment will be made for a period that:

   (1) starts:

   (a) when *your car* is not drivable due to the *loss*; or

   (b) if *your car* is drivable, when *you* leave it at the shop for agreed repairs; and

   (2) ends:

   (a) when *your car* has been repaired or replaced; or

   (b) when we offer to pay for the *loss*, if *your car* is repairable but *you* choose to delay repairs; or

   (c) five days after we offer to pay for the *loss* if:

   (i) *your car* was stolen and not recovered; or

   (ii) we declare that *your car* is a total loss;

   whichever comes first.

   If the incurred daily rental charge is payable under both Comprehensive Coverage and Car Rental and Travel Expenses Coverage, we will pay only under the one coverage where *you* collect the most.

6893MM

# 6127HH AMENDATORY ENDORSEMENT

This endorsement is a part of *your* policy. Except for the changes it makes, all other terms of the policy remain the same and apply to this endorsement. It is effective at the same time as *your* policy unless a different effective date is specified by us in writing.

In consideration of the premium charged, it is agreed that *your* policy is changed as follows:

1.  **DEFINED WORDS**

    a.  The definition of *Newly Acquired Car* is changed to read:

    > *Newly Acquired Car* means a *car* newly owned by or newly leased to *you* or *your spouse*. A *car* ceases to be a *newly acquired car* on the earlier of:

    > 1.  the effective date and time of a policy, including any binder, issued by us or any other company that describes the *car* as an insured vehicle; or

    > 2.  the end of the 14th calendar day immediately following the date the *car* is delivered to *you* or *your spouse*.

    > If *you* or *your spouse* want coverage for a *car* newly owned by or newly leased to *you* or *your spouse* after that *car* ceases to be a *newly acquired car* and it:

    > 1.  replaces *your car*, then *you* must ask us to insure that *car* within 14 days after it is delivered to *you* or *your spouse* and pay us any added amount due. The added amount due will be calculated based on the date the replacement *car* is delivered to *you* or *your spouse*.

    > 2.  does not replace *your car*, then *you* or *your spouse* must apply to us for a separate policy to insure that added *car*. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

    > If a *newly acquired car* is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that *newly acquired car*, subject to a deductible of $500. Any coverage provided as a result of this paragraph will apply only

    until the end of the 5th calendar day immediately following the date the *newly acquired car* is delivered to *you* or *your spouse*.

    b.  The definition of *Your Car* is changed to read:

    > *Your Car* means the vehicle described on the Declarations Page. *Your Car* does not include a vehicle that *you* no longer own or lease.

    > If *you* ask us to replace the *car* shown on the Declarations Page with a *car* newly owned by or newly leased to *you* or *your spouse*, the *car* being replaced will continue to be considered *your car* until the earliest of:

    > 1.  the end of the 30th calendar day immediately following the date such newly owned or newly leased *car* is delivered to *you* or *your spouse*;

    > 2.  the date this policy is no longer in force; or

    > 3.  the date *you* no longer own or lease the *car* being replaced.

2.  **REPORTING A CLAIM — INSURED'S DUTIES**

    The following is added:

    > A *person* or organization making claim under this policy must give us proof of loss on forms we furnish.

    > A *person* making claim under No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, or Death, Dismemberment and Loss of Sight Coverage must provide written authorization for us to obtain:

    > 1.  medical bills;

    > 2.  medical records;

    > 3.  wage, salary, and employment information; and

    > 4.  any other information we deem necessary to substantiate the claim.

Page 1 of 2

6127HH

**CERTIFICATE OF GUARANTEED RENEWAL**
**6091 Amendment of Cancellation and Renewal Conditions**

This endorsement is a part of *your* policy. Except for the changes it makes, all other terms of the policy remain the same and apply to this endorsement. It is effective at the same time as *your* policy unless a different effective date is shown for the endorsement on the Declarations Page.

This endorsement is issued by the **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY** of Bloomington, Illinois.

We agree that we will not cancel or non-renew this policy as long as:

1. this policy insures a *private passenger car;*

2. premiums are paid when due;

3. all drivers of *your car* maintain valid drivers licenses;

4. *you* continue to reside in an area in which State Farm Mutual Automobile Insurance Company sells automobile insurance and has the Certificate of Guaranteed Renewal available for use; and

5. no *person* other than the current named insured or that *person's spouse* becomes a named insured on this policy.

*You* will be able to select from those coverages which continue to be available from State Farm Mutual Automobile Insurance Company. Coverage will be provided by our car policy, including any revisions that may be made to it.

Edward B Rust Jr

Chief Executive Officer

Page 1 of 1                                    6091

### 6910.3 AM  )ATORY ENDORSEMENT

This endorsement is a part of *your* policy. Except for the changes it makes, all other terms of the policy remain the same and apply to this endorsement. It is effective at the same time as *your* policy unless a different effective date is specified by us in writing.

In consideration of the premium charged, it is agreed that *your* policy is changed as follows:

1. **DEFINED WORDS**

   a. The following definition is added:

   *Fungi* — means any type or form of fungus or fungi and includes:

   1. mold;

   2. mildew; and

   3. any of the following that are produced or released by fungi:

      a. mycotoxins;

      b. spores;

      c. scents; or

      d. byproducts.

   b. The definition of "*Non-Owned Car*" is changed by deleting the provision that reads:

   *Non-owned car* does not include a rented *car* while it is used in connection with the *Insured's* employment or business.

2. **REPORTING A CLAIM — INSURED'S DUTIES**

   a. **Other Duties Under the Physical Damage Coverages**

   Item e. is deleted.

   b. Item 4. is changed to read:

      4. **Other Duties Under No-Fault, Medical Payments, Uninsured Motor Vehicle and Death, Dismemberment and Loss of Sight Coverages**

      Any *person* who suffers a *bodily injury* which results in a MEDICAL PAYMENTS — COVERAGE C claim under this policy must notify us of the claim in writing as soon as reasonably possible after the *person's* first examination or treatment resulting from the *bodily injury*. Another *person* may give us the required notice on behalf of the injured *person*.

      Any *person* making claim:

      a. under the no-fault, medical payments, uninsured motor vehicle and death, dismemberment and loss of sight coverages shall:

         (1) give us all the details about the death, injury, treatment and other information we need to determine the amount payable.

         (2) be examined by physicians chosen and paid by us as often as we reasonably may require. A copy of the report will be sent to the *person* upon written request. The *person*, or his or her legal representative if the *person* is dead or unable to act, shall authorize us to obtain all medical reports and records.

      b. under the uninsured motor vehicle coverage shall:

         (1) report an accident to the police within 24 hours and to us within 30 days if the accident involves a land motor vehicle with an unknown owner or driver.

         (2) let us see the insured *car* the *person occupied* in the accident.

      c. under the no-fault and uninsured motor vehicle coverages shall send us at once a copy of all suit papers if the *person* sues the party liable for the accident for damages.

      d. under the no-fault and death, dismemberment and loss of sight coverages shall give us proof of claim as soon as practicable on forms we furnish.

Page 1 of 12

6910.3

c. ⁷ ⁻ollowing is added:

**Questioning Under Oath**

Under:

a. Liability Coverage and Property Damage Liability Coverage, each *insured*;

b. No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, and Death, Dismemberment and Loss of Sight Coverage any *person* or organization making claim or seeking payment; and

c. Physical Damage Coverages, *you* or the owner of a covered vehicle, or any other *person* or organization making claim or seeking payment;

must, at our option, submit to an examination under oath, provide a statement under oath, or do both, as reasonably often as we require. Such *person* or organization must answer questions under oath, asked by anyone we name, and sign copies of the answers. We may require each *person* or organization answering questions under oath to answer the questions with only that *person's* or organization's legal representative, our representatives, and no other *person* present.

3. **LIABILITY — COVERAGE A and PROPERTY DAMAGE LIABILITY — COVERAGE B**

a. **Trailer Coverage**

This provision is changed to read:

**Trailer Coverage**

The liability coverage extends to the ownership, maintenance or use, by an *insured*, of:

1. trailers designed to be pulled by a *private passenger car* or a *utility vehicle*, except those trailers in 2.a. below.

Farm implements and farm wagons are considered trailers while pulled on public roads by a *car* we insure for liability.

These trailers are not described in the declarations and no extra premium is charged.

Page 2 of 12

2. the following trailers only if they are described on the declarations page and extra premium is paid:

a. trailers designed to be pulled by a *private passenger car* or a *utility vehicle*:

(1) if designed to carry *persons*; or

(2) while used with a motor vehicle whose use is shown as "commercial" on the declarations page (trailers used only for pleasure use are covered even if not described and no extra premium paid); or

(3) while used as premises for office, store or display purposes; or

b. trailers not designed to be pulled by a *private passenger car* or a *utility vehicle.*

When we refer to trailer coverage, *insured* means:

1. *you*;

2. *your spouse*;

3. the *relatives* of the first *person* named in the declarations;

4. any other *person* while using *your car*, a *newly acquired car* or a *temporary substitute car*, if its use is within the scope of consent of *you* or *your spouse*; and

5. any other *person* or organization liable for the use of a covered trailer by one of the above *insureds*.

THERE IS NO COVERAGE WHEN A TRAILER IS USED WITH A MOTOR VEHICLE THAT IS NOT COVERED UNDER THE LIABILITY COVERAGE OF THIS POLICY.

6910.3

b. If 1
   If 1

4. LIABII

a. Un
   tior
   for
   suit

(1)
(2)

b. **If There Is Other Liability Coverage or If You Own More Than One Vehicle**

Item 3. is changed to read:

3. **Temporary Substitute Car, Non-Owned Car, Trailer**

If a *temporary substitute car*, a *non-owned car* or a trailer designed for use with a *private passenger car* or *utility vehicle*:

a. has other vehicle liability coverage on it; or

b. is self-insured under any motor vehicle financial responsibility law, a motor carrier law or any similar law,

then this coverage is excess over such insurance or self-insurance.

4. **LIABILITY — COVERAGE A**

a. Under the paragraph that reads "In addition to the limits of liability, we will pay for an *insured* any costs listed below resulting from such accident":

(1) item 3.c. is deleted.

(2) item 4. is changed to read:

4. The following costs and expenses if related to and incurred after a civil lawsuit has been filed against an *insured* for damages for which liability coverage is provided by this policy:

a. loss of wages or salary, but not other income, up to $100 for each day an *insured* attends at our request:

(1) an arbitration;

(2) a mediation; or

(3) a trial of a civil suit.

b. reasonable expenses incurred by an *insured* at our request, other than loss of wages, salary, or other income.

The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to us before we will pay.

b. **Limits of Liability**

The first paragraph of this provision is changed to read:

The amount of bodily injury liability coverage is shown on the declarations page under "Limits of Liability – Coverage A – Bodily Injury, Each Person, Each Accident". Under "Each Person" is the amount of coverage for all damages due to *bodily injury* to one *person*. "*Bodily injury* to one *person*" includes all injury and damages to others resulting from this *bodily injury*, and all emotional distress resulting from this *bodily injury* sustained by other *persons* who do not sustain *bodily injury*. Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to *bodily injury* to two or more *persons* in the same accident.

5. **NO-FAULT – COVERAGE P**

a. The first paragraph of NO-FAULT – COVERAGE P is replaced by the following:

**NO-FAULT – COVERAGE P.** *You* have this coverage if "P" with a number beside it appears in the "Coverages" space on the declarations page. "P" with a number beside it is *your* coverage symbol. Check *your* coverage symbol with the SCHEDULE under Limits of Liability for the Income Loss option *you* chose.

b. Item 1. of What We Pay is changed to read:

1. **Medical Expenses.** 80% of all reasonable expenses incurred for:

a. *medically necessary* medical, surgical, X-ray, dental, ambulance, hospital, professional nursing and rehabilitative services, eyeglasses, hearing aids and prosthetic devices; and

b. necessary remedial treatment and services recognized and permitted under the laws of the state for an injured *person* who relies upon spiritual means through prayer alone for healing, in accordance with his or her religious beliefs.

6910.3

To determine whether a charge is reasonable we may consider usual and customary charges and payments accepted by the provider, reimbursement levels in the community and various federal and state medical fee schedules applicable to automobile and other insurance coverages, and other information relevant to the reasonableness of the reimbursement for the service, treatment or supply.

We will not pay any charge that the *No-Fault Act* does not require us to pay, or the amount of any charge that exceeds the amount the *No-Fault Act* allows to be charged.

c.  Item 1. under the definition of *Insured* is replaced by the following:

   *Insured* – means:

   1.  *you* or any *relative*.

      a.  while *occupying* a *motor vehicle*; or

      b.  struck as a *pedestrian* by a *motor vehicle*; or

d.  The term "*medically necessary*" is added and defined as follows:

   *Medically necessary* – means a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating an illness, injury, disease, or symptom in a manner that is:

   1.  in accordance with generally accepted standards of medical practice;

   2.  clinically appropriate in terms of type, frequency, extent, site, and duration; and

   3.  not primarily for the convenience of the patient, physician, or other health care provider.

e.  When Payments are Reduced and Limits of Liability are replaced by the following:

   Application of Any Deductible and Workers' Compensation Offset and Limits of Liability

   1.  The deductible amount, if any, is shown on the declarations page beside *your* coverage symbol. The deductible amount does not

apply to death benefits. The deductible amount does apply:

   a.  to *you* if "N" follows the deductible amount; or

   b.  to *you* and each of *your* dependent *relatives* if "N" does not follow the deductible amount.

   Any deductible will be applied to 100% of any medical expenses, income loss, and replacement services loss eligible to be paid under this coverage. The deductible will be applied to such expenses and losses upon our receipt of reasonable proof of such loss and the amount of expenses and loss incurred.

   2.  After any applicable deductible has been applied, we will determine the amount payable under medical expenses, income loss, replacement services loss, and death benefits in accordance with the percentages and limits as described in What We Pay.

   3.  We will reduce the amount payable as determined in item 2. above by any workers' compensation benefits received for the same loss or expense.

   4.  The most we will pay for each *Insured* for all medical expenses, income loss, replacement services loss, and death benefits combined as a result of any one accident is $10,000.

5.  SCHEDULE

| Coverage Symbol | Income Loss Benefits Eliminated For *You* | Income Loss Benefits Eliminated For *Your* Dependent *Relatives* |
|---|---|---|
| P10 | No | No |
| P14 | Yes | Yes |
| P19 | Yes | No |

f.  If There Is Other No-Fault Coverage or If You Own More Than One Vehicle

   (1)  Item a. under Vehicles You Own is changed to read:

      a.  If the vehicle involved in the accident is owned by *you*,

g.

6.  ME
is re

6910.3

this coverage applie    ly if it is:

(1) *your car*; or

(2) a *newly acquired car*. THIS COVERAGE DOES NOT APPLY IF THERE IS OTHER NO-FAULT COVERAGE ON THE *NEWLY AC-QUIRED CAR*.

(2) Item 2. is changed to read:

2. **Policies Issued by Us to You or Any Relative**

If two or more policies providing no-fault coverage issued by us to *you* or any *relative* apply to the same accident, the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability.

g. **What Is Not Covered Under Coverage P**

Item 1.a. is changed to read:

THERE IS NO COVERAGE FOR *BODILY INJURY* TO ANY *PEDES-TRIAN* NOT A RESIDENT OF FLORIDA. This does not apply to *you* or any *relative*.

6. **MEDICAL PAYMENTS – COVERAGE C** is replaced by the following:

**MEDICAL PAYMENTS – COVERAGE C.** *You* have this coverage if "C" appears in the "Coverages" space on the declarations page.

We will pay reasonable medical expenses incurred, for *bodily injury* caused by accident, for services furnished within three years of the date of the accident. These expenses must be for:

1. *medically necessary* medical, surgical, X-ray, dental, ambulance, hospital, professional nursing and rehabilitative services, eyeglasses, hearing aids and prosthetic devices;

2. necessary remedial treatment and services recognized and permitted under the laws of the state for an injured *person* who relies upon spiritual means through prayer alone for healing, in accordance with his or her religious beliefs; and

3. funeral expenses.

To determine whether a charg.. .s reasonable we may consider usual and customary charges and payments accepted by the provider, reimbursement levels in the community and various federal and state medical fee schedules applicable to automobile and other insurance coverages, and other information relevant to the reasonableness of the reimbursement for the services, treatment or supply.

The accident must result from the ownership, maintenance or use of a *motor vehicle*.

The *bodily injury* must be discovered and treated within one year of the date of the accident.

THERE IS NO COVERAGE UNTIL THE MEDICAL EXPENSE BENEFITS OF ALL NO-FAULT COVERAGE AVAILABLE FROM ALL SOURCES HAS BEEN EXHAUSTED. However, this does not apply to the 20% of expenses that are not paid under no-fault coverage because of the 80% limitation.

We have the right to make or obtain a utilization review of the medical expenses and services to determine if they are reasonable and *medically necessary* for the *bodily injury* sustained.

*Medically necessary* – means a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating an illness, injury, disease, or symptom in a manner that is:

1. in accordance with generally accepted standards of medical practice;

2. clinically appropriate in terms of type, frequency, extent, site, and duration; and

3. not primarily for the convenience of the patient, physician, or other health care provider.

**Persons for Whom Medical Expenses Are Payable**

We will pay medical expenses for *bodily injury* sustained by *you* and any *relative*:

1. while *occupying* a *motor vehicle* as defined under no-fault – coverage.P; or

2. through being struck as a *pedestrian* by:

a. a *motor vehicle* as defined under no-fault – coverage P; or

b. a motorcycle of a type required to be licensed for use on Florida highways.

*Pedestrian* means a *person* not an occupant of any self-propelled vehicle.

### Payment of Medical Expenses

We may pay the injured *person* or any *person* or organization performing the services.

### Limit of Liability

1. The amount of coverage for medical expenses, including funeral services, is shown on the declarations page under "Limit of Liability – Coverage C – Each Person". If the amount shown is $3,000 or more, the most we pay for funeral services is $3,000 per *person*.

2. Medical payments coverage is excess over and shall not pay any medical expenses paid or payable under any no-fault coverage, or which would otherwise be payable except for:

   a. any no-fault deductible; or

   b. the amount of workers' compensation benefits paid or payable for the same items of loss or expense.

3. The liability and uninsured motor vehicle coverages shall be excess over and shall not pay any medical expenses paid under this coverage.

### Two or More Vehicles

1. A *motor vehicle* and attached trailer are one vehicle as respects limits.

2. When two or more *motor vehicles* are insured under this section the limits apply separately to each.

### If There Are Other Medical Payments Coverages or If You Own More Than One Vehicle

1. Vehicles You Own

   a. If the vehicle involved in the accident is owned by *you* or *your spouse*, this coverage applies only if it is:

      (1) *your car*, or

      (2) a trailer described under Trailer Coverage for which no extra premium is charged; or

(3) a *newly acquired car*. THIS COVERAGE DOES NOT APPLY IF THERE IS OTHER VEHICLE MEDICAL PAYMENTS COVERAGE ON THE *NEWLY ACQUIRED CAR*.

   b. If *your car* is also described in a policy issued to *you* by another company, the total limits of liability shall not exceed those of the policy with the highest limits of liability. We are liable only for our share of the damages. Our share is the percent that the limit of liability of the policy issued by us bears to the sum of the limits of liability of the policies issued by us and the other company.

2. Policies Issued by Us to You or Any Relative

   If two or more vehicle policies providing medical payments coverage issued by us to *you* or any *relative* apply to the same accident, the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability.

3. Temporary Substitute Car, Non-Owned Car, Trailer or Pedestrian

   Subject to item 2., this coverage is excess if other vehicle medical payments coverage applies to:

   a. a *temporary substitute car*, a *non-owned car* or a trailer; or

   b. *bodily injury* sustained by a *pedestrian*.

4. Coverage Available From Other Sources

   Subject to items 1., 2. and 3., if other vehicle medical payments coverage applies, we are liable only for our share of the damages. Our share is the percent that the limit of liability of the policy issued by us bears to the total of all vehicle medical payments coverage applicable to the accident.

### What Is Not Covered Under Coverage C

THERE IS NO COVERAGE UNDER MEDICAL PAYMENTS:

1. FOR ANY MEDICAL EXPENSES THAT ARE NOT PAYABLE UNDER NO-FAULT COVERAGE, except for:

Page 6 of 12

6910.3

a. the 20% of expenses that are not paid under no-fault coverage because of the 80% limitation;

b. expenses not paid because the medical expense benefits of all no-fault coverage available from all sources has been exhausted; and

c. expenses for *bodily injury* sustained through being struck as a *pedestrian* by:

    (1) a *motor vehicle* as defined under no-fault — coverage P while outside Florida, but within the area described under **Where Coverage Applies** for medical payments coverage; or

    (2) a motorcycle of a type required to be licensed for use on Florida highways.

2. FOR MILEAGE COSTS FOR THE USE OF A PERSONAL VEHICLE.

3. FOR ANY INTEREST CHARGES.

4. WHILE A *NON-OWNED CAR* IS USED BY ANY *PERSON* EMPLOYED OR ENGAGED IN ANY WAY IN A *CAR BUSINESS*.

5. FOR *BODILY INJURY* DUE TO WAR OF ANY KIND.

6. FOR MEDICAL EXPENSES FOR *BODILY INJURY:*

a. SUSTAINED WHILE *OCCUPYING* OR THROUGH BEING STRUCK BY A VEHICLE OWNED BY *YOU* OR ANY *RELATIVE* WHICH IS NOT INSURED UNDER THIS COVERAGE; OR

b. TO THE EXTENT WORKERS' COMPENSATION BENEFITS:

    (1) HAVE BEEN PAID; OR
    (2) ARE REQUIRED TO BE PAYABLE; OR

c. SUSTAINED BY ANY *RELATIVE* WHO AT THE TIME OF THE ACCIDENT:

    (1) OWNS A MOTOR VEHICLE SUBJECT TO THE *NO-FAULT ACT;* AND

    (2) IS NOT INSURED FOR THE COVERAGE REQUIRED BY THE *NO-FAULT ACT.*

This does not apply to any *relative* while *occupying your car* if the accident occurs outside of Florida.

7. FOR *BODILY INJURY* THAT RESULTS FROM EXPOSURE TO *FUNGI.*

8. FOR *BODILY INJURY* THAT RESULTS FROM:

a. NUCLEAR REACTION;

b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE.

7. **SECTION III — UNINSURED MOTOR VEHICLE — COVERAGES U AND U3**

a. Item 1. that follows "An *uninsured motor vehicle* does not include a land motor vehicle:" is changed to read:

    1. insured under the liability coverage of this policy. However, any such vehicle will be deemed to be an *uninsured motor vehicle* for *bodily injury* sustained by *you, your spouse* or any *relative* while the vehicle is being operated by a *person* other than *you, your spouse* or any *relative;*

b. **Limits of Liability — Coverage U**

    (1) Item 1. of this provision is changed to read:

        1. The amount of coverage is shown on the declarations page under "Limits of Liability — U — Each Person, Each Accident". Under "Each Person" is the amount of coverage for all damages due to *bodily injury* to one *person.* "*Bodily Injury* to one *person*" includes all injury and

6910.3

damages to others resulting from this *bodily injury*, and all emotional distress resulting from this *bodily injury* sustained by other *persons* who do not sustain *bodily injury*. Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to *bodily injury* to two or more *persons* in the same accident.

(2) Item 2.b.(2) of this provision is changed to read:

(2) the no-fault coverage;

c.  Limits of Liability – Coverage U3

(1) The first paragraph of this provision is changed to read:

1. The amount of coverage is shown on the declarations page under "Limits of Liability – U3 – Each Person, Each Accident". Under "Each Person" is the amount of coverage for all damages due to *bodily injury* to one *person*. "*Bodily injury* to one *person*" includes all injury and damages to others resulting from this *bodily injury*, and all emotional distress resulting from this *bodily injury* sustained by other *persons* who do not sustain *bodily injury*. Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to *bodily injury* to two or more *persons* in the same accident.

(2) Item 2.b.(2) of this provision is change to read:

(2) the no-fault coverage;

8.  **SECTION IV — PHYSICAL DAMAGE COVERAGES**

a.  **COMPREHENSIVE – COVERAGE D**

(1) The second paragraph of item 1. is changed to read:

Breakage of glass or *loss* due to hitting or being hit by a bird or an animal is payable under this coverage.

Item 2. is changed to read:

2. We will pay *you* for transportation costs incurred if *your car* is stolen. We will pay up to $25 per day beginning when *you* tell us of the theft and ending when we offer to pay for the *loss*.

If the daily incurred transportation costs are payable under both Comprehensive Coverage and Car Rental and Travel Expenses Coverage, we will pay only under the one coverage where *you* collect the most. If payments have been made under Car Rental and Travel Expenses Coverage and such payments have either exhausted the total amount payable under Car Rental Expense or reduced the total amount payable under Car Rental Expense to less than $25, then we will pay under Comprehensive Coverage.

b.  **COLLISION – COVERAGES F and G**

The following paragraph is added:

*Loss* caused by collision does not include *loss* due to:

1. missiles or falling objects;

2. windstorm or hail;

3. earthquake, water or flood;

4. theft or larceny;

5. malicious mischief or vandalism; or

6. riot or civil commotion.

c.  **EMERGENCY ROAD SERVICE – COVERAGE H**

The following paragraph is added:

We will pay the fair cost *you* incur for *your car* for locksmith services, up to one hour, to open *your car* if *your* key is lost, stolen or locked inside *your car*. We will pay only the cost of labor.

d.  **CAR RENTAL EXPENSE — COVERAGE R**

The paragraph that reads:

Any car rent payable under Coverage R is REDUCED TO THE EXTENT

6910.3

IT IS PAYABLE UNDER C( RE-
HENSIVE.

is changed to read:

If the incurred daily rental charge is
payable under both Comprehensive
Coverage and Car Rental Expense
Coverage, we will pay only under the
one coverage where *you* collect the
most.

e. **CAR RENTAL AND TRAVEL EX-
PENSES – COVERAGE R1**

(1) **Car Rental Expense**

The paragraph in the policy booklet
that reads:

Any car rent payable under this
coverage is REDUCED TO THE
EXTENT IT IS PAYABLE UN-
DER COMPREHENSIVE.

is changed to read:

If the incurred daily rental charge
is payable under both Compre-
hensive Coverage and Car Rental
and Travel Expenses Coverage,
we will pay only under the one
coverage where *you* collect the
most.

(2) The provision in the policy booklet ti-
tled Total Amount of Expenses Pay-
able – Coverage R1 is changed to
read:

Total Amount of Expenses Pay-
able – Coverage R1

1. The most we will pay for
Car Rental Expense in-
curred in any one occurrence
is $400.

2. The most we will pay for
Travel Expenses incurred by
all *persons* in any one occur-
rence is $400.

3. The most we will pay for
Rental Car – Repayment of
Deductible Amount Ex-
pense incurred in any one
occurrence is $400.

f. **Trailer Coverage**

(1) The most we will pay under compre-
hensive or collision coverage for a
covered non-owned trailer or detach-
able living quarters unit is increased to
$2500.

(2) Item 2.c. is deleted.

g. The following is added to V Cover-
ages D, F, G, H, R, R1 and , Do Not
Apply:

(1) THERE IS NO COVERAGE FOR
*LOSS* TO ANY VEHICLE DUE TO
*FUNGI*. THIS APPLIES REGARD-
LESS OF WHETHER OR NOT THE
*FUNGI* RESULT FROM A *LOSS*
THAT IS PAYABLE UNDER ANY
OF THE PHYSICAL DAMAGE
COVERAGES. WE WILL ALSO
NOT PAY FOR ANY TESTING OR
REMEDIATION OF *FUNGI*, OR
ANY ADDITIONAL COSTS RE-
QUIRED TO REPAIR ANY VEHI-
CLE THAT ARE DUE TO THE
EXISTENCE OF *FUNGI*.

(2) THERE IS NO COVERAGE FOR
*LOSS* TO ANY VEHICLE THAT
RESULTS FROM:

1. NUCLEAR REACTION;

2. RADIATION OR RADIO-
ACTIVE CONTAMINA-
TION FROM ANY
SOURCE; OR

3. THE ACCIDENTAL DETONA-
TION OF, OR RELEASE OF
RADIATION FROM, ANY
NUCLEAR OR RADIOAC-
TIVE DEVICE.

h. **If There Is Other Physical Damage Cov-
erage or If You Own More Than One
Vehicle**

Item 2. is changed to read:

2. **Policies Issued by Us to You,
Your Spouse or Any Relative**

If two or more vehicle policies is-
sued by us to *you*, *your spouse* or
any *relative* apply to the same
*loss* or occurrence, we will pay
under the policy with the highest
limit.

9. **CONDITIONS**

a. The provision titled Suit Against Us is
changed to read:

2. **Suit Against Us**

There is no right of action against
us:

a. until all the terms of this pol-
icy have been met; and

b. under the liability coverages,
until the amount of damages

6810.3

(left margin fragments)
or transpor-
ed if *your*
will pay up
beginning
of the theft
we offer to

d transpor-
rable under
ve Cover-
ental and
Coverage,
re *you* col-
payments
under Car
Expenses
payments
ted the to-
under Car
or reduced
ayable un-
xpense to
n we will
prehensive

**F and G**
d:
oes not in-
objects;
or flood;
or vandal-
tion.
RVICE –
d:
u incur for
ices, up to
f *your* key
oside *your*
cost of la-

**COVER-**

Coverage
EXTENT

an *insured* is legally liable to pay has been finally determined by:

(1) verdict after actual trial; or

(2) agreement between the *insured*, the claimant and us.

Bankruptcy or insolvency of the *insured* or his or her estate shall not relieve us of our obligations.

c. under uninsured motor vehicle, any physical damage and death, dismemberment and loss of sight coverages, until 30 days after we get the *insured's* notice of accident or *loss*.

d. under no-fault coverage if, within 15 days after our receipt of written notice of an intent to initiate litigation for:

(1) an overdue claim we pay the overdue claim, applicable interest, and a penalty of ten percent of the overdue amount that we pay, subject to a maximum penalty of $250; or

(2) our withdrawal of payment for future treatment not yet rendered we mail to the *person* filing the notice a written statement of our agreement to pay for such treatment in accordance with the notice and to pay a penalty of ten percent, subject to a maximum penalty of $250, when we pay for such future treatment.

Payment or our written statement of agreement to pay for future treatment not yet rendered shall be treated as being made on the date a draft, other valid instrument that is equivalent to payment, or our written statement of agreement to pay, is placed in the United States mail in a properly addressed, postpaid envelope, or if not so posted, on the date of delivery.

Page 10 of 12

Such notice of intent to initiate litigation may not be sent until the claim is overdue, including any additional time we have to pay the claim pursuant to the *No-Fault Act.* The notice shall state that it is a "demand letter under s. 627.736 (11)" and shall specify:

(1) the name of the *insured* for whom benefits are being sought, including a copy of the assignment giving rights to the claimant if the claimant is not the *insured*;

(2) the claim number or policy number upon which the claim was originally submitted to us; and

(3) to the extent applicable, the name of the medical provider who rendered the treatment, services, accommodations or supplies that form the basis of the claim, and an itemized statement specifying each exact amount, the date of treatment, service, or accommodation, and the type of benefit claimed to be due. A properly completed Centers for Medicare and Medicaid Services (CMS) 1500 form, UB 92 form, any other standard form approved by the Department of Financial Services, or the lost-wage statement previously submitted, may be used as the itemized statement. To the extent that the demand involves our withdrawal of payment for future treatment not yet rendered, the claimant shall attach a copy of our notice withdrawing such payment and an itemized statement of the type, frequency, and duration of future treatment claimed to be reasonable and *medically necessary.*

6910.3

ɔ initiate
sent until
including
e have to
nt to the
e notice
"demand
36 (11)"

*Insured*
:fits are
:luding a
:ignment
to the
claimant
f;

r or pol-
n which
riginally
ɩnd

plicable,
medical
rendered
services,
. or sup-
he basis
and an
tatement
ɩ exact
Jate of
e, or ac-
and the
claimed
properly
ters for
Medicaid
) 1500
ɪm, any
orm ap-
Depart-
inancial
ɩe lost-
: previ-
may be
itemized
ɩe extent
involves
of pay-
reatment
red, the
attach a
ce with-
payment
d state-
pe, fre-
ation of
claimed
ble and
ıary.

6910.3

---

The notice must be ∙ered
to us by United State certi-
fied or registered mail, return
receipt requested, at the ad-
dress we have filed with, and
that is made available by, the
office of the Florida Chief
Financial Officer on its In-
ternet Website.

e. under medical payments cov-
erage unless we receive writ-
ten notice of an intent to
initiate litigation and if
within 15 days after our re-
ceipt of such for:

(1) a claim we pay the claim;
or

(2) our withdrawal of payment
for future treatment not yet
rendered we mail to the
*person* filing the notice a
written statement of our
agreement to pay for such
treatment in accordance
with the notice.

Payment or our written
statement of agreement to
pay for future treatment not
yet rendered shall be treated
as being made on the date a
draft, other valid instrument
that is equivalent to payment,
or our written statement of
agreement to pay, is placed in
the United States mail in a
properly addressed, postpaid
envelope, or if not so posted,
on the date of delivery.

The notice shall state that it
is a "demand letter for medi-
cal payments coverage" and
shall specify:

(1) the name of the *insured*
for whom benefits are
being sought, including a
copy of the assignment
giving rights to the
claimant if the claimant
is not the *insured*;

(2) the claim number or pol-
icy number upon which
the claim was originally
submitted to us; and

(3) to the extent applicable,
the name of the medical
provider who rendered

Page 11 of 12

---

the treatm services,
accommoda....s or sup-
plies that form the basis
of the claim, and an
itemized statement
specifying each exact
amount, the date of
treatment, service, or ac-
commodation, and the
type of benefit claimed
to be due. A properly
completed Centers for
Medicare and Medicaid
Services (CMS) 1500
form, UB 92 form, or
any other standard form
approved by the De-
partment of Financial
Services, may be used as
the itemized statement.
To the extent that the
demand involves our
withdrawal of payment
for future treatment not
yet rendered, the claim-
ant shall attach a copy of
our notice withdrawing
such payment and an
itemized statement of the
type, frequency, and du-
ration of future treatment
claimed to be reasonable
and *medically neces-
sary.*

The notice must be delivered
to us by United States certi-
fied or registered mail, return
receipt requested, at the ad-
dress we have filed with, and
that is made available by, the
office of the Florida Chief
Financial Officer on its
Internet Website.

b. **Under Our Right to Recover Our Pay-
ments:**

(1) Item a. is changed to read:

a. Death, dismemberment and
loss of sight coverage pay-
ments are not recoverable by
us.

(2) Item c. is changed to read:

c. Under the liability, medical
payments and physical dam-
age coverages the right of re-
covery of any party we pay
passes to us.   Such party
shall:

6910.3

(1) not hurt our rights to re-cover; and

(2) help us get our money back.

c. **Cancellation**

**Return of Unearned Premium** is changed to read:

**Return of Unearned Premium.** If *you* cancel, premium will be earned on a pro-rata basis. We may retain up to ten percent of any unearned premium. Any remaining unearned premium will be mailed to *you* within 30 days after the effective date of the policy cancellation, or 30 days after we receive *your* request to cancel *your* policy, whichever is later. If we cancel, premium will be earned on a pro-rata basis. Any unearned premium will be mailed at the time we cancel or within 15 days after the effective date of the policy cancellation. Delay in the return of unearned premium does not affect the cancellation.

d. Condition 8, **Concealment or Fraud**, is replaced by the following:

**8. Concealment or Fraud**

a. **Coverages Other Than No-Fault**

There is no coverage under this policy if *you* or any other *person* insured under

this policy has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy.

b. **No-Fault Coverage**

There is no coverage under this policy for an *insured* who has committed, by material act or omission, any insurance fraud relating to the no-fault coverage provided by this policy, if the fraud is admitted to in a sworn statement by the *insured* or if it is established in a court of competent jurisdiction. Such fraud voids all coverage for no-fault benefits for the *insured* who committed the fraud, regardless of whether a portion of the claim is legitimate.

We are entitled to recover from the *insured* who committed the fraud any payments we made before the fraud was discovered. The prevailing party is entitled to its costs and attorney fees in any action to enforce our right of recovery under this provision.

6910.3

## 6290B MEDICAL PAYMEN    COVERAGE TRANSITION ENDORSE    NT

This endorsement is a part of *your* policy. Except for the changes it makes, all other terms of the policy remain the same and apply to this endorsement. This endorsement becomes effective on October 1, 2007 and expires on *your* first renewal on or after October 1, 2007. However, if Florida motor vehicle no-fault law is extended or reenacted on or before October 1, 2007, whether in its current form or in a modified form, then this endorsement will be null and void.

MEDICAL PAYMENTS – COVERAGE C as found in the policy booklet and endorsement 6910.3 is replaced by the following:

This policy provides Medical Payments Coverage if "C" appears in the "Coverages" space on the Declarations Page.

### Insuring Agreement

We will pay reasonable medical expenses incurred, for *bodily injury* that is sustained by an *insured* and caused by a motor vehicle accident, for services furnished within three years of the date of the accident. These expenses must be for:

1.  *medically necessary* medical, surgical, X-ray, dental, ambulance, hospital, professional nursing and rehabilitative services, eyeglasses, hearing aids and prosthetic devices;

2.  necessary remedial treatment and services recognized and permitted under the laws of the state for an injured *person* who relies upon spiritual means through prayer alone for healing, in accordance with his or her religious beliefs; and

3.  funeral expenses.

To determine whether a charge is reasonable we may consider usual and customary charges and payments accepted by the provider, reimbursement levels in the community and various federal and state medical fee schedules applicable to automobile and other insurance coverages, and other information relevant to the reasonableness of the reimbursement for the service, treatment or supply.

The *bodily injury* must be discovered and treated within one year of the date of the accident.

THERE IS NO COVERAGE UNTIL THE MEDICAL EXPENSE BENEFITS OF ALL NO-FAULT COVERAGE, NON-STATUTORY NO-FAULT COVERAGE OR OTHER SIMILAR VEHICLE INSURANCE AVAILABLE FROM ALL SOURCES HAVE BEEN EXHAUSTED. However, this does not apply to the 20% of expenses that are not paid under no-fault coverage, Non-Statutory No-Fault Coverage or other similar vehicle insurance because of the 80% limitation that applies to payment of medical expenses under such coverages.

### Additional Definitions

*Insured* means *you*, *your spouse*, and *relatives*:

1.  while *occupying*:

    a.  *your car*;

    b.  a *newly acquired car*;

    c.  a *temporary substitute car*;

    d.  a *non-owned car*; or

    e.  a trailer while attached to a *car* described in a., b., c., or d. above; or

2.  if struck as a *pedestrian* by a motor vehicle or trailer.

*Medically Necessary* means a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating of an illness, injury, disease, or symptom in a manner that is:

1.  in accordance with generally accepted standards of medical practice;

2.  clinically appropriate in terms of type, frequency, extent, site, and duration; and

3.  not primarily for the convenience of the patient, physician, or other health care provider.

*Pedestrian* means a *person* who is not *occupying* any self-propelled vehicle.

*Relative* means a *person* related to *you* or *your spouse* by blood, marriage or adoption (including a ward or foster child) who resides primarily with *you*. It includes *your* unmarried and unemancipated child away at school.

### Determining Medical Expenses

We have the right to:

1.  obtain and use:

    a.  utilization reviews;

    b.  peer reviews; and

    c.  medical bill reviews

    to determine if the incurred charges are reasonable and *medically necessary* for the *bodily injury* sustained; and

2.  use a medical examination of the *insured* to determine if the *bodily injury* was caused by a motor vehicle accident.

### Limit

1.  The Medical Payments Coverage limit is shown on the Declarations Page under "Limit of Liability – Coverage C – Each Person".

6290B

This li⁺ᵇ s the most we will pay for medical expens..and funeral expenses combined, incurred by or on behalf of any one *insured* as a result of any one accident, regardless of the number of:

a. *insureds*;

b. claims made;

c. vehicles insured;

d. vehicles involved in the accident; or

e. policies applicable to the accident.

Subject to the limit shown on the Declarations Page, the most we will pay for funeral expenses incurred for any one *insured* is $3,000.

2. Medical Payments Coverage is excess over and shall not pay any medical expenses paid or payable under any no-fault coverage, Non-Statutory No-Fault Coverage or other similar vehicle insurance, or which would otherwise be payable except for any no-fault coverage, Non-Statutory No-Fault Coverage or similar vehicle insurance deductible.

### Nonduplication

We will not pay any medical expenses or funeral expenses under Medical Payments Coverage that have already been paid:

1. as damages under Liability Coverage or Uninsured Motor Vehicle Coverage of any policy issued by us to *you, your spouse,* or any *relative*; or

2. by or on behalf of a party who is legally liable for the *insured's bodily injury*.

### Exclusions

THERE IS NO COVERAGE FOR AN *INSURED*:

1. FOR ANY MEDICAL EXPENSES THAT ARE NOT PAYABLE UNDER NO-FAULT COVERAGE, NON-STATUTORY NO-FAULT COVERAGE OR OTHER SIMILAR VEHICLE INSURANCE, except for:

   a. the 20% of expenses that are not paid under no-fault coverage, Non-Statutory No-Fault Coverage or other similar vehicle insurance because of the 80% limitation that applies to payment of medical expenses under such coverages;

   b. expenses not paid because the medical expense benefits of all no-fault coverage, Non-Statutory No-Fault Coverage or other similar vehicle insurance available from all sources has been exhausted; and

   c. expenses for *bodily injury* sustained through being struck as a *pedestrian* by a

c. .tor vehicle while outside Florida, but ..thin the United States of America, its territories and possessions or Canada;

2. FOR MILEAGE COSTS FOR THE USE OF A PERSONAL VEHICLE;

3. FOR ANY INTEREST CHARGES;

4. IF ANY WORKERS' COMPENSATION LAW OR ANY SIMILAR LAW APPLIES TO THAT *INSURED'S BODILY INJURY*;

5. WHILE MAINTAINING OR USING A *NON-OWNED CAR* IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*;

6. WHOSE *BODILY INJURY* RESULTS FROM WAR OF ANY KIND;

7. WHOSE *BODILY INJURY* RESULTS FROM EXPOSURE TO *FUNGI*; AND

8. WHOSE *BODILY INJURY* RESULTS FROM:

   a. NUCLEAR REACTION;

   b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

   c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE.

### If Other Medical Payments Coverage or Similar Vehicle Insurance Applies

1. An *insured* shall not recover for the same medical expenses or funeral expenses under both this coverage and other medical payments coverage, no-fault coverage, Non-Statutory No-Fault Coverage or similar vehicle insurance.

2. If Medical Payments Coverage provided by this policy and one or more other vehicle policies issued to *you, your spouse,* or any *relative* by us apply to the same *bodily injury*, then:

   a. the Medical Payments Coverage limits of such policies shall not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. We may choose one or more policies from which to make payment.

3. The Medical Payments Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car* or a trailer attached to it.

a. If:

(1) this is the only vehicle policy issued to *you, your spouse,* or any *relative* by us that provides Medical Payments Coverage which applies to the accident as primary coverage; and

(2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than us also applies as primary coverage for the same accident,

then we will pay the proportion of medical expenses and funeral expenses payable as primary that our applicable limit bears to the sum of our applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as primary coverage.

b. If:

(1) more than one vehicle policy issued to *you, your spouse,* or any *relative* by us provides Medical Payments Coverage which applies to the accident as primary coverage; and

(2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than us also applies as primary coverage for the same accident,

then we will pay the proportion of medical expenses and funeral expenses payable as primary that the maximum amount that may be paid by us as determined in 2. above bears to the sum of such amount and the limits of all other medical payments coverage or similar vehicle insurance that apply as primary coverage.

4. Except as provided in 3. above, the Medical Payments Coverage provided by this policy applies as excess coverage.

a. If:

(1) this is the only vehicle policy issued to *you, your spouse,* or any *relative* by us that provides Medical Payments Coverage which applies to the accident as excess coverage; and

(2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than us also applies as excess coverage for the same accident,

then we will pay the proportion of medical expenses and funeral expenses payable as

excess that our applicable limit bears to the sum of our applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

b. If:

(1) more than one vehicle policy issued to *you, your spouse,* or any *relative* by us provides Medical Payments Coverage which applies to the accident as excess coverage; and

(2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than us also applies as excess coverage for the same accident,

then we will pay the proportion of medical expenses and funeral expenses payable as excess that the maximum amount that may be paid by us as determined in 2. above bears to the sum of such amount and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

**Our Payment Options**

We may, at our option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*;

4. A *person* authorized by law to receive such payment; or

5. Any *person* or organization that provides the treatment or funeral services.

**Our Right to Recover Our Payments – Medical Payments Coverage**

1. Subrogation

If we are obligated under this policy to make payment to or for a *person* or organization who has a legal right to collect from another *person* or organization, then we will be subrogated to that right to the extent of our payment.

The *person* or organization to or for whom we make payment must help us recover our payments by:

a. doing nothing to impair that legal right;

b. executing any documents we may need to assert that legal right; and

c. taking legal action through our representatives when we ask.

6290B

**2. Reimbursement**

If we make payment under this policy and the *person* or organization to or for whom we make payment recovers or has recovered from another *person* or organization, then the *person* or organization to or for whom we make payment must:

a. hold in trust for us the proceeds of any recovery; and

b. reimburse us to the extent of our payment.

## Suit Against Us – Medical Payments Coverage

There is no right of action against us:

1. until all the terms of this policy have been met; and

2. unless we receive written notice of an intent to initiate litigation and within 15 days after our receipt of such for:

 a. a claim we do not pay the claim; or

 b. our withdrawal of payment for future treatment not yet rendered we do not mail to the *person* filing the notice a written statement of our agreement to pay for such treatment in accordance with the notice.

Payment or our written statement of agreement to pay for future treatment not yet rendered shall be treated as being made on the date a draft, other valid instrument that is equivalent to payment, or our written statement of agreement to pay is placed in the United States mail in a properly addressed, postpaid envelope, or if not so posted, on the date of delivery.

The notice shall state that it is a "demand letter for Medical Payments Coverage" and shall specify:

a. the name of the *insured* for whom benefits are being sought, including a copy of the assignment giving rights to the claimant if the claimant is not the *insured*;

b. the claim number or policy number upon which the claim was originally submitted to us; and

c. the extent applicable, the name of the medical provider who rendered the treatment, services, accommodations or supplies that form the basis of the claim, and an itemized statement specifying each exact amount, the date of treatment, service, or accommodation, and the type of benefit claimed to be due. A properly completed Centers for Medicare and Medicaid Services (CMS) 1500 form, UB 92 form, or any other standard form approved by the Department of Financial Services may be used as the itemized statement. To the extent that the demand involves our withdrawal of payment for future treatment not yet rendered, the claimant shall attach a copy of our notice withdrawing such payment and an itemized statement of the type, frequency, and duration of future treatment claimed to be reasonable and *medically necessary*.

The notice must be delivered to us by United States certified or registered mail, return receipt requested, at the address we have filed with, and that is made available by, the office of the Florida Chief Financial Officer on its Internet Website.

## Where Coverage Applies

This provision as it applies to Medical Payments Coverage is changed to read:

The Medical Payments Coverage *you* chose applies:

1. in the United States of America, its territories and possessions or Canada; or

2. while the insured vehicle is being shipped between their ports.

Medical Payments Coverage also applies in Mexico within 50 miles of the United States border.

6290B

## 6296GG NON-STATUTORY NO-FAULT COVERAGE TRANSITION ENDORSEMENT

This endorsement is a part of *your* policy. Except for the changes it makes, all other terms of the policy remain the same and apply to this endorsement. This endorsement becomes effective on October 1, 2007 and expires on *your* first renewal on or after October 1, 2007. However, if Florida motor vehicle no-fault law is extended or reenacted on or before October 1, 2007, whether in its current form or in a modified form, then this endorsement will be null and void.

### 1. REPORTING A CLAIM — INSURED'S DUTIES

All duties that apply to No-Fault Coverage also apply to Non-Statutory No-Fault Coverage.

### 2. SECTION I — LIABILITY COVERAGE

The following is added:

#### Nonduplication

We will not pay any damages or expenses under Liability Coverage that have already been paid, could be sought, or could have been sought under the Non-Statutory No-Fault Coverage or Medical Payments Coverage of any policy issued by us.

### 3. NO-FAULT — COVERAGE P as found in the policy booklet and endorsement 6910.3 is replaced by the following:

#### NON-STATUTORY NO-FAULT COVERAGE

This policy provides Non-Statutory No-Fault Coverage if "P" with a number beside it appears in the "Coverages" space on the declarations page. "P" with a number beside it is *your* coverage symbol. Check *your* coverage symbol with the SCHEDULE under Amount Payable for the Income Loss option *you* chose.

#### Insuring Agreement

We will pay the following expenses, losses, and benefits for *bodily injury* that is sustained by an *insured* and caused by a motor vehicle accident:

1. **Medical Expenses.** 80% of all reasonable expenses incurred for:

   a. *medically necessary* medical, surgical, X-ray, dental, ambulance, hospital, professional nursing and rehabilitative services, eyeglasses, hearing aids and prosthetic devices; and

   b. necessary remedial treatment and services recognized and permitted under the laws of the state for an injured *person* who relies upon spiritual means through prayer alone for healing, in accordance with his or her religious beliefs.

   To determine whether a charge is reasonable we may consider usual and customary charges and payments accepted by the provider, reimbursement levels in the community and various federal and state medical fee schedules applicable to automobile and other insurance coverages, and other information relevant to the reasonableness of the reimbursement for the service, treatment or supply.

2. **Income Loss.** 60% of loss of income and earning capacity due to the *insured's* inability to work caused by his or her *bodily injury* during the time the *insured* is not able to work.

3. **Replacement Services Loss.** Reasonable expenses incurred for ordinary and needed services the *insured* would have done, except for the injury, for the benefit of his or her household during the time the *insured* is not able to work.

4. **Death Benefits.** Death benefits of $5,000 per deceased *insured*.

#### Additional Definitions

*Insured* means:

1. *you*, *your spouse*, and *relatives*:

   a. while *occupying*:

      (1) *your car*;

      (2) a *newly acquired car*;

      (3) a *temporary substitute car*;

      (4) a *non-owned car*; or

      (5) a trailer while attached to a car described in (1), (2), (3), or (4) above; or

   b. if struck as a *pedestrian* by a motor vehicle or a trailer; and

2. any other *person* while *occupying*:

   a. *your car*, a *newly acquired car*, or a *temporary substitute car*. Such vehicle must be used within the scope of *your* or *your spouse's* consent;

   b. a *non-owned car*. The *bodily injury* must result from such *car's* operation or *occupancy* by *you*, *your spouse* or a *relative*; or

Page 1 of 6

6296GG

a trailer while attached to a *car* described in a. or b. above.

*Medically Necessary* means a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating of an illness, injury, disease, or symptom in a manner that is:

1. in accordance with generally accepted standards of medical practice;

2. clinically appropriate in terms of type, frequency, extent, site, and duration; and

3. not primarily for the convenience of the patient, physician, or other health care provider.

*Pedestrian* means a *person* who is not *occupying* any self-propelled vehicle.

*Relative* means a *person* related to *you* or *your spouse* by blood, marriage or adoption (including a ward or foster child) who resides primarily with *you*. It includes *your* unmarried and unemancipated child away at school.

**Determining Medical Expenses**

We have the right to:

1. obtain and use:

    a. utilization reviews;

    b. peer reviews; and

    c. medical bill reviews

    to determine if the incurred charges are reasonable and *medically necessary* for the *bodily injury* sustained; and

2. use a medical examination of the *insured* to determine if the *bodily injury* was caused by a motor vehicle accident.

**Amount Payable**

1. The deductible amount, if any, is shown on the declarations page beside *your* coverage symbol. The deductible amount does not apply to death benefits. The deductible amount does apply:

    a. to *you* if "N" follows the deductible amount; or

    b. to *you* and each of *your* dependent *relatives* if "N" does not follow the deductible amount.

    Any deductible will be applied to 100% of any medical expenses, income loss, and replacement services

loss eligible to be paid under this coverage. The deductible will be applied to such expenses and losses upon our receipt of reasonable proof of such loss and the amount of expenses and loss incurred.

2. After any applicable deductible has been applied, we will determine the amount payable under medical expenses, income loss, replacement services loss, and death benefits in accordance with the percentages and limits as described in the **Insuring Agreement**.

3. We will reduce the amount payable as determined in item 2. above by any workers' compensation benefits received for the same loss or expense.

4. The most we will pay for each *insured* for all medical expenses, income loss, replacement services loss, and death benefits combined as a result of any one accident is $10,000, regardless of the number of:

    a. *insureds*;

    b. claims made;

    c. vehicles insured;

    d. vehicles involved in the accident; or

    e. policies applicable to the accident.

5. **SCHEDULE**

| Coverage Symbol | Income Loss Benefits Eliminated For *You* | Income Loss Benefits Eliminated For *Your* Dependent *Relatives* |
|---|---|---|
| P10 | No | No |
| P14 | Yes | Yes |
| P19 | Yes | No |

**Nonduplication**

We will not pay any medical expenses, income loss, replacement services loss, or death benefits under Non-Statutory No-Fault Coverage that have already been paid:

1. as damages under Liability Coverage or Uninsured Motor Vehicle Coverage of any policy issued by us to *you*, *your spouse*, or any *relative*; or

6296GG

2. by or on behalf of a party to this legally liable for the *insured's* *bodily injury*.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO IS STRUCK AS A *PEDESTRIAN* BY A MOTOR VEHICLE OWNED BY OR LEASED TO THAT *INSURED*, *YOU*, OR *YOUR SPOUSE*, IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*;

2. WHO IS PROVIDED NON-STATUTORY NO-FAULT COVERAGE, NO-FAULT COVERAGE, OR ANY SIMILAR COVERAGE UNDER ANOTHER VEHICLE INSURANCE POLICY. This exclusion does not apply to *you*, *your spouse* or any *relative*;

3. WHOSE CONDUCT CONTRIBUTED TO HIS OR HER *BODILY INJURY* UNDER ANY OF THE FOLLOWING CIRCUMSTANCES:

   a. CAUSING *BODILY INJURY* TO HIMSELF OR HERSELF INTENTIONALLY; OR

   b. WHILE COMMITTING A FELONY;

4. WHO IS EITHER *OCCUPYING* OR STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT IS LOCATED FOR USE AS A DWELLING OR OTHER PREMISES;

5. WHO IS STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT:

   a. IS DESIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

   b. RUNS ON RAILS OR CRAWLER-TREADS; AND

6. FOR INCOME LOSS WHEN THE SCHEDULE SHOWS INCOME LOSS BENEFITS ARE ELIMINATED UNDER *YOUR* COVERAGE SYMBOL.

**If Other Non-Statutory No-Fault Coverage, No-Fault Coverage or Similar Vehicle Insurance Applies**

1. An *insured* shall not recover for the same medical expenses, income loss, replacement services loss, or death benefits under both this coverage and other Non-Statutory No-Fault Coverage, no-fault coverage, or similar vehicle insurance.

2. If Non-Statutory No-Fault Coverage provided by this policy and one or more other vehicle policies issued to *you*, *your spouse*, or any *relative* by us apply to the same *bodily injury*, then:

   a. the Non-Statutory No-Fault Coverage limits of such policies shall not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. We may choose one or more policies from which to make payment.

3. The Non-Statutory No-Fault Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car* or a trailer attached to it.

   a. If:

   (1) this is the only vehicle policy issued to *you*, *your spouse*, or any *relative* by us that provides Non-Statutory No-Fault Coverage which applies to the accident as primary coverage; and

   (2) no-fault coverage or other similar vehicle insurance provided by one or more sources other than us also applies as primary coverage for the same accident,

   then we will pay the proportion of medical expenses, income loss, replacement services loss, and death benefits payable as primary that our applicable limit bears to the sum of our applicable limit and the limits of all other no-fault coverage or similar vehicle insurance that apply as primary coverage.

   b. If:

   (1) more than one vehicle policy issued to *you*, *your spouse*, or any *relative* by us provides Non-Statutory No-Fault Coverage which applies to the accident as primary coverage; and

6296GG

(2) no-fault coveraged to other similar vehicle insurance provided by one or more sources other than us also applies as primary coverage for the same accident,

then we will pay the proportion of medical expenses, income loss, replacement services loss, and death benefits payable as primary that the maximum amount that may be paid by us as determined in 2. above bears to the sum of such amount and the limits of all other no-fault coverage or similar vehicle insurance that apply as primary coverage.

4. Except as provided in 3. above, the Non-Statutory No-Fault Coverage provided by this policy applies as excess coverage.

a. If:

(1) this is the only vehicle policy issued to *you, your spouse,* or any *relative* by us that provides Non-Statutory No-Fault Coverage which applies to the accident as excess coverage; and

(2) no-fault coverage or other similar vehicle insurance provided by one or more sources other than us also applies as excess coverage for the same accident,

then we will pay the proportion of medical expenses, income loss, replacement services loss, and death benefits payable as excess that our applicable limit bears to the sum of our applicable limit and the limits of all other no-fault coverage or similar vehicle insurance that apply as excess coverage.

b. If:

(1) more than one vehicle policy issued to *you, your spouse,* or any *relative* by us provides Non-Statutory No-Fault Coverage which applies to the accident as excess coverage; and

(2) no-fault coverage or other similar vehicle insurance provided by one or more

sources other than us also applies as excess coverage for the same accident,

then we will pay the proportion of medical expenses, income loss, replacement services loss, and death benefits payable as excess that the maximum amount that may be paid by us as determined in 2. above bears to the sum of such amount and the limits of all other no-fault coverage or similar vehicle insurance that apply as excess coverage.

**Our Payment Options**

We may, at our option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*;

4. A *person* authorized by law to receive such payment; or

5. Any *person* or organization that provides the treatment or services.

**Where Coverage Applies**

Non-Statutory No-Fault Coverage applies:

1. in Florida; and

2. outside Florida, but:

a. within the United States of America, its territories and possessions or Canada; or

b. in Mexico within 50 miles of the United States border

to *you, your spouse,* or a *relative,* while *occupying your car,* a *newly acquired car,* a *temporary substitute car,* a *non-owned car,* or a trailer while attached to a *car* described above.

**Our Right to Recover Our Payments – Non-Statutory No-Fault Coverage**

1. **Subrogation**

If we are obligated under this policy to make payment to or for a *person* or organization who has a legal right to collect from another *person* or organization, then we will be subrogated to that right to the extent of our payment.

Page 4 of 6

6296GG

The *person* or organization to or for whom we make payment must help us recover our payments by:

a. doing nothing to impair that legal right;

b. executing any documents we may need to assert that legal right; and

c. taking legal action through our representatives when we ask.

2. **Reimbursement**

If we make payment under this policy and the *person* or organization to or for whom we make payment recovers or has recovered from another *person* or organization, then the *person* or organization to or for whom we make payment must:

a. hold in trust for us the proceeds of any recovery; and

b. reimburse us to the extent of our payment.

**Suit Against Us – Non-Statutory No-Fault Coverage**

There is no right of action against us:

1. until all the terms of this policy have been met; and

2. unless we receive written notice of an intent to initiate litigation and within 15 days after receipt of such for:

a. a claim we do not pay the claim; or

b. our withdrawal of payment for future treatment not yet rendered we do not mail to the *person* filing the notice a written statement of our agreement to pay for such treatment in accordance with the notice.

Payment or our written statement of agreement to pay for future treatment not yet rendered shall be treated as being made on the date a draft, other valid instrument that is equivalent to payment, or our written statement of agreement to pay is placed in the United States mail in a properly addressed, postpaid envelope, or if not so posted, on the date of delivery.

The notice shall state that it is a "demand letter for Non-Statutory No-Fault Coverage" and shall specify:

a. the name of the *insured* for whom benefits are being sought, including a copy of the assignment giving rights to the claimant if the claimant is not the *insured*;

b. the claim number or policy number upon which the claim was originally submitted to us; and

c. to the extent applicable, the name of the medical provider who rendered the treatment, services, accommodations or supplies that form the basis of the claim, and an itemized statement specifying each exact amount, the date of treatment, service, or accommodation, and the type of benefit claimed to be due. A properly completed Centers for Medicare and Medicaid Services (CMS) 1500 form, UB 92 form, any other standard form approved by the Department of Financial Services, or the lost wage statement previously submitted, may be used as the itemized statement. To the extent that the demand involves our withdrawal of payment for future treatment not yet rendered, the claimant shall attach a copy of our notice withdrawing such payment and an itemized statement of the type, frequency, and duration of future treatment claimed to be reasonable and *medically necessary*.

The notice must be delivered to us by United States certified or registered mail, return receipt requested, at the address we have filed with, and that is made available by, the office of the Florida Chief Financial Officer on its Internet Website.

4. **SECTION III — UNINSURED MOTOR VEHICLE — COVERAGES U and U3**

a. The following provision is deleted:

The *bodily injury* must be a serious injury as defined in Section 627.737(2) of the Florida Motor Vehicle No-Fault Law before we will pay for damages consisting of pain, suffering, mental anguish, or inconvenience.

b. **Limits of Liability – Coverage U**

Item 2.b.(2) of this provision as found in the policy booklet and endorsement 6910.3 is changed to read:

(2) the Non-Statutory No-Fault Coverage;

Page 5 of 6

6296GG

c. **Limits of Liability – Coverage** *car*
Item 2.b.(2) of this provision as found in the policy booklet and endorsement 6910.3 is changed to read:

    (2) the Non-Statutory No-Fault Coverage;

5. **CONDITIONS**

The **Concealment or Fraud** condition as found in the policy booklet and endorsement 6910.3 is replaced by the following:

loss

**Concealment or Fraud**

There is no coverage under this policy if *you* or any other *person* or organization insured under this policy has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy.

6296GG

## 6127HH.1 AMENDATORY ENDORSEMENT

This endorsement is a part of *your* policy. Except for the changes it makes, all other terms of the policy remain the same and apply to this endorsement. It is effective at the same time as *your* policy unless a different effective date is specified by us in writing.

In consideration of the premium charged, it is agreed that *your* policy is changed as follows:

1. **DEFINED WORDS**

    a. The following definition is added:

    > *Fungi* – means any type or form of fungus or fungi and includes:
    >
    > 1. mold;
    > 2. mildew; and
    > 3. any of the following that are produced or released by fungi:
    >    a. mycotoxins;
    >    b. spores;
    >    c. scents; or
    >    d. byproducts.

    b. The definition of *Newly Acquired Car* is changed to read:

    > *Newly Acquired Car* means a *car* newly owned by or newly leased to *you* or *your spouse*. A *car* ceases to be a *newly acquired car* on the earlier of:
    >
    > 1. the effective date and time of a policy, including any binder, issued by us or any other company that describes the *car* as an insured vehicle; or
    > 2. the end of the 14th calendar day immediately following the date the *car* is delivered to *you* or *your spouse.*
    >
    > If *you* or *your spouse* want coverage for a *car* newly owned by or newly leased to *you* or *your spouse* after that *car* ceases to be a *newly acquired car* and it:
    >
    > 1. replaces *your car*, then *you* must ask us to insure that *car* within 14 days after it is delivered to *you* or *your spouse* and pay us any added amount due. The added amount due will be calculated based on the date the replacement *car* is delivered to *you* or *your spouse.*
    > 2. does not replace *your car*, then *you* or *your spouse* must apply to

    us for a separate policy to insure that added *car*. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

    > If a *newly acquired car* is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that *newly acquired car*, subject to a deductible of $500. Any coverage provided as a result of this paragraph will apply only until the end of the 5th calendar day immediately following the date the *newly acquired car* is delivered to *you* or *your spouse.*

    c. The definition of *Non-Owned Car* is changed by deleting the provision that reads:

    > *Non-owned car* does not include a rented *car* while it is used in connection with the *insured's* employment or business.

    d. The definition of *Your Car* is changed to read:

    > *Your Car* means the vehicle described on the Declarations Page. *Your Car* does not include a vehicle that *you* no longer own or lease.
    >
    > If *you* ask us to replace the *car* shown on the Declarations Page with a *car* newly owned by or newly leased to *you* or *your spouse*, the *car* being replaced will continue to be considered *your car* until the earliest of:
    >
    > 1. the end of the 30th calendar day immediately following the date such newly owned or newly leased *car* is delivered to *you* or *your spouse*;
    > 2. the date this policy is no longer in force; or
    > 3. the date *you* no longer own or lease the *car* being replaced.

6127HH.1

2. **Where Coverage Applies**

This pro___ion is changed to read:

1. The liability, medical payments, uninsured motor vehicle and physical damage coverages *you* chose apply:

   a. in the United States of America, its territories and possessions or Canada; or

   b. while the insured vehicle is being shipped between their ports.

   The liability and physical damage coverages also apply in Mexico within 50 miles of the United States border. A physical damage coverage *loss* in Mexico is determined on the basis of cost at the nearest United States point.

2. The death, dismemberment and loss of sight coverage *you* chose applies anywhere in the world.

3. **REPORTING A CLAIM — INSURED'S DUTIES**

   a. **Other Duties Under the Physical Damage Coverages**

      Item e. is deleted.

   b. Item 4. is changed to read:

      4. **Other Duties Under Medical Payments, Uninsured Motor Vehicle and Death, Dismemberment and Loss of Sight Coverages**

         Any *person* who suffers a *bodily injury* which results in a MEDICAL PAYMENTS – COVERAGE C1 claim under this policy must notify us of the claim in writing as soon as reasonably possible after the *person's* first examination or treatment resulting from the *bodily injury*. Another *person* may give us the required notice on behalf of the injured *person*.

         Any *person* making claim:

         a. under the medical payments, uninsured motor vehicle and death, dismemberment and loss of sight coverages shall:

            (1) give us all the details about the death, injury, treatment and other information we need to determine the amount payable.

            (2) be examined by physicians chosen and paid by us as often as we reasonably may require. A copy of the report will be sent to the *person* upon written request. The *person*, or his or her legal representative if the *person* is dead or unable to act, shall authorize us to obtain all medical reports and records.

         b. under the uninsured motor vehicle coverage shall:

            (1) report an accident to the police within 24 hours and to us within 30 days if the accident involves a land motor vehicle with an unknown owner or driver.

            (2) let us see the insured *car* the *person occupied* in the accident.

            (3) send us at once a copy of all suit papers if the *person* sues the party liable for the accident for damages.

   c. The following are added:

      (1) **Questioning Under Oath**

         Under:

         1. Liability Coverage and Property Damage Liability Coverage, each *insured*;

         2. Medical Payments Coverage, Uninsured Motor Vehicle Coverage, and Death, Dismemberment and Loss of Sight Coverage any *person* or organization making claim or seeking payment; and

         2. Physical Damage Coverages, *you* or the owner of a covered vehicle, or any other *person* or organization making claim or seeking payment;

         must, at our option, submit to an examination under oath, provide a statement under oath, or do both, as reasonably often as we require. Such *person* or organization must answer questions under oath, asked by anyone we name, and sign copies of the answers. We may require each *person* or

(2

4. **LIAB ERT AGE**

   a. T
      p

organization answering questions under oath to answer the question with only that *person's* or organization's legal representative; our representatives, and no other *person* present.

(2) A *person* or organization making claim under this policy must give us proof of loss on forms we furnish.

A *person* making claim under Medical Payments Coverage, Uninsured Motor Vehicle Coverage, or Death, Dismemberment and Loss of Sight Coverage must provide written authorization for us to obtain:

1. medical bills;

2. medical records;

3. wage, salary, and employment information; and

4. any other information we deem necessary to substantiate the claim.

If an injured *person* is a minor, unable to act, or dead, then his or her legal representative must provide us with the written authorization.

If the holder of the information refuses to provide it to us despite the authorization, then at our request the *person* making claim or his or her legal representative must obtain the information and promptly provide it to us.

4. **LIABILITY — COVERAGE A and PROPERTY DAMAGE LIABILITY — COVERAGE B**

a. **Trailer Coverage**

This provision is changed to read:

**Trailer Coverage**

The liability coverage extends to the ownership, maintenance or use, by an *insured*, of:

1. trailers designed to be pulled by a *private passenger car* or a *utility vehicle*, except those trailers in 2.a. below.

Farm implements and farm wagons are considered trailers while pulled on public roads by a *car* we insure for liability.

These trailers are not described in the declarations and no extra premium is

2. the following trailers only if they are described on the declarations page and extra premium is paid:

a. trailers designed to be pulled by a *private passenger car* or a *utility vehicle*:

(1) if designed to carry *persons*; or

(2) while used with a motor vehicle whose use is shown as "commercial" on the declarations page (trailers used only for pleasure use are covered even if not described and no extra premium paid); or

(3) while used as premises for office, store or display purposes; or

b. trailers not designed to be pulled by a *private passenger car* or a *utility vehicle*.

When we refer to trailer coverage, *insured* means:

1. *you*;

2. *your spouse*;

3. the *relatives* of the first *person* named in the declarations;

4. any other *person* while using *your car*, a *newly acquired car* or a *temporary substitute car*, if its use is with the permission of *you* or *your spouse*; and

5. any other *person* or organization liable for the use of a covered trailer by one of the above *insureds*.

THERE IS NO COVERAGE WHEN A TRAILER IS USED WITH A MOTOR VEHICLE THAT IS NOT COVERED UNDER THE LIABILITY COVERAGE OF THIS POLICY.

**b. If There Is Other Liability Coverage or If You Own More Than One Vehicle**

Item 3. is changed to read:

3. **Temporary Substitute Car, Non-Owned Car, Trailer**

If a *temporary substitute car*, a *non-owned car* or a trailer designed for use with a *private passenger car* or *utility vehicle*:

a. has other vehicle liability coverage on it; or

b. is self-insured under any motor vehicle financial responsibility law, a motor carrier law or any similar law,

then this coverage is excess over such insurance or self-insurance.

## 5. LIABILITY — COVERAGE A

a. Under the paragraph that reads "In addition to the limits of liability, we will pay for an *insured* any costs listed below resulting from such accident":

(1) item 3.c. is deleted.

(2) item 4. is changed to read:

4. The following costs and expenses if related to and incurred after a civil lawsuit has been filed against an *insured* for damages for which liability coverage is provided by this policy:

a. loss of wages or salary, but not other income, up to $100 for each day an *insured* attends at our request:

(1) an arbitration;

(2) a mediation; or

(3) a trial of a civil suit.

b. reasonable expenses incurred by an *insured* at our request, other than loss of wages, salary, or other income.

The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to us before we will pay.

b. **Nonduplication**

We will not pay any damages or expenses under Liability Coverage that have already been paid as expenses under Medical Payments Coverage or any similar vehicle insurance of any policy issued by us to *you*, *your spouse*, or any *relative*.

## 6. MEDICAL PAYMENTS — COVERAGE C

as found in the policy booklet is replaced by the following:

**MEDICAL PAYMENTS — COVERAGE C1**

This policy provides Medical Payments Coverage if "C1" appears in the "Coverages" space on the Declarations Page.

**Additional Definitions**

*Insured* means:

1. *you*, *your spouse*, and *relatives*:

a. while *occupying*:

(1) *your car*;

(2) a *newly acquired car*;

(3) a *temporary substitute car*;

(4) a *non-owned car*; or

(5) a trailer while attached to a *car* described in (1), (2), (3), or (4) above; or

b. if struck as a *pedestrian* by a motor vehicle or any type of trailer; and

2. any other *person* while *occupying*:

a. *your car*;

b. a *newly acquired car*;

c. a *temporary substitute car*; or

d. a trailer while attached to a *car* described in a., b., or c. above.

Such vehicle must be used with *your* permission.

*Medical Expenses* mean *reasonable expenses* for *medical services*.

*Medical Services* mean treatments, procedures, products, and other services that are:

1. necessary to achieve maximum medical improvement for the *bodily injury*;

2. rendered by a healthcare provider:

a. who is licensed as a healthcare provider if a license is required by law; and

b. within the legally authorized scope of that healthcare provider's practice;

6127HH.1

Medical Pay-
r vehicle in-
y us to *you*,

'ERAGE C
replaced by

OVERAGE

d Payments
the "Cover-
s Page.

*tives:*

*car;*

*titute car;*
 or

tached to a
1), (2), (3),

*n by a mo-
e of trailer;*

*upying:*
 :

*car*, or

*d to a car*
. above.

d with *your*

*onable ex-*

*ents, prote-
s that are:*

*mum medi-
dily injury;*

ovider:

healthcare
is required

authorized
bcare pro-

---

3. commonly and customari' recog-
   nized throughout the medi  .rofes-
   sion and within the United States of
   America as appropriate for the treat-
   ment of the *bodily injury*;
4. primarily designed to serve a medical
   purpose;
5. not experimental; and
6. not for research purposes.

*Pedestrian* means a *person* who is not *occu-
pying*:

1. a motorized vehicle; or
2. a vehicle designed to be pulled by a
   motorized vehicle.

*Reasonable Expenses* mean the lowest
one of the following charges:

1. The usual and customary fees charged
   by a majority of healthcare providers
   who provide similar *medical services*
   in the geographical area in which the
   charges were incurred;
2. The fee specified in any fee schedule:
   a. applicable to medical payments
      coverage, no-fault coverage, or
      personal injury protection cover-
      age included in motor vehicle li-
      ability policies issued in the state
      where *medical services* are pro-
      vided; and
   b. as prescribed or authorized by the
      law of the state where *medical
      services* are provided;
3. The fees agreed to by both the *in-
   sured's* healthcare provider and us; or
4. The fees agreed upon between the *in-
   sured's* healthcare provider and a third
   party when we have a contract with
   such third party.

*Relative* means a *person* related to *you* or
*your spouse* by blood, marriage or adop-
tion (including a ward or foster child) who
resides primarily with *you*. It includes
*your* unmarried and unemancipated child
away at school.

**Insuring Agreement**

We will pay:

1. *medical expenses* incurred because of
   *bodily injury* that is sustained by an
   *insured* and caused by a motor vehicle
   accident if:
   a. that *insured* is first provided
      *medical services* within one year
      immediately following the date of
      the accident; and

---

b. such *medical ex   ~ses* are for
   *medical services*   lt are pro-
   vided within three years immedi-
   ately following the date of the
   accident; and
2. funeral expenses incurred for an *in-
   sured* who dies within three years
   immediately following the date of a
   motor vehicle accident if the death is a
   direct result of *bodily injury* sustained
   in such accident.

**Determining Medical Expenses**

We have the right to:

1. obtain and use:
   a. utilization reviews;
   b. peer reviews; and
   c. medical bill reviews
   to determine if the incurred charges
   are *medical expenses*;
2. use a medical examination of the *in-
   sured* to determine if:
   a. the *bodily injury* was caused by a
      motor vehicle accident; and
   b. the expenses incurred are *medical
      expenses*; and
3. enter into a contract with a third party
   that has an agreement with the *in-
   sured's* healthcare provider to charge
   fees as determined by that agreement.

**Arbitration**

1. If there is a disagreement as to whether
   incurred charges are *medical expenses*,
   then the disagreement will be resolved
   by arbitration upon mutual written con-
   sent of the *insured* and us.
2. The arbitration will take place in the
   county in which the *insured* resides
   unless the parties agree to another lo-
   cation.

   The *insured* and we will each select a
   competent arbitrator. These two arbi-
   trators will select a third competent
   arbitrator. If they are unable to agree
   on the third arbitrator within 30 days,
   then either the *insured* or we may pe-
   tition a court that has jurisdiction to
   select the third arbitrator.

   Each party will pay the cost of its own
   arbitrator, attorneys, and expert wit-
   nesses, as well as any other expenses
   incurred by that party. Both parties
   will share equally the cost of the third

---

3. The arbitrators shall only decide ,ether incurred charges are *medical expenses*. Arbitrators shall have no authority to decide any other questions of fact, decide any questions of law, or conduct arbitration on a class-wide or class-representative basis.

4. A written decision that is both agreed upon by and signed by any two arbitrators, and that also contains an explanation of how they arrived at their decision, will be binding on:

   a. us;

   b. the *insured*;

   c. any assignee of the *insured*; and

   d. any *person* or organization with whom the *insured* expressly or impliedly contracts for *medical services*.

5. Subject to 1., 2., 3., and 4. above, state court rules governing procedure and admission of evidence will be used.

6. We do not waive any of our rights by submitting to arbitration.

## Limit

The Medical Payments Coverage limit is shown on the Declarations Page under "Limit of Liability – Coverage C1 – Each Person". This limit is the most we will pay for the *medical expenses* and funeral expenses combined, incurred by or on behalf of any one *insured* as a result of any one accident, regardless of the number of:

1. *insureds*;

2. claims made;

3. vehicles insured; or

4. vehicles involved in the accident.

Subject to the limit shown on the Declarations Page, the most we will pay for funeral expenses incurred for any one *insured* is $3,000.

## Nonduplication

We will not pay any *medical expenses* or funeral expenses under Medical Payments Coverage that have already been paid:

1. as damages under Liability Coverage or Uninsured Motor Vehicle Coverage of any policy issued by us to *you*, *your spouse* or any *relative*; or

2. by or on behalf of a party who is legally liable for the *insured's bodily injury*.

## Exclusions

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO IS STRUCK AS A *PEDESTRIAN* BY A MOTOR VEHICLE, OWNED BY THAT *INSURED* OR *YOU*, IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*;

2. IF ANY WORKERS' COMPENSATION LAW OR ANY SIMILAR LAW APPLIES TO THAT *INSURED'S BODILY INJURY*;

3. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

4. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to:

   a. the use of a *private passenger car* on a share-the-expense basis; or

   b. an *insured* while *occupying* a *non-owned car* as a passenger;

5. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:

   a. *you* or *your spouse*;

   b. any *relative*; or

   c. any agent, employee or partner of a. or b. above

   while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a trailer;

6. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;

7. WHILE MAINTAINING OR USING A *NON-OWNED CAR* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car*;

8. WHO IS EITHER *OCCUPYING* OR STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT IS LOCATED FOR USE AS A DWELLING OR OTHER PREMISES;

E FOR AN

A *PEDES-*
VEHICLE,
*SURED* OR
IR CAR OR
CAR;

OMPENSA-
· SIMILAR
THAT *IN-*
*IRY*;

\ VEHICLE
D TO OR
BY AN *IN-*

\ VEHICLE
USED TO
FOR  A
on does rot

*issenger car*
e basis; or

*ccupying* a
assenger;

3 OR US-
VNECTION
ED'S EM-
ENGAGE-
IN A *CAR*
on does not

*or partner of*

*your car*, a
*rary subsi-*

IS VALET

OR USING
IN ANY
CUPATION
*BUSINESS*
is exclusion
atenance or
ar;

*PYING* OR
*UAN* BY A
ATED FOR
OR OTHER

9. WHO IS STRUCK AS A *PEDES-TRIAN* BY A VEHICLE T :

   a. IS DESIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

   b. RUNS ON RAILS OR CRAWLER-TREADS;

10. WHOSE *BODILY INJURY* RESULTS FROM WAR OF ANY KIND;

11. WHOSE *BODILY INJURY* RESULTS FROM:

    a. NUCLEAR REACTION;

    b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

    c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

12. WHOSE *BODILY INJURY* RESULTS FROM EXPOSURE TO *FUNGI*; OR

13. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS:

    a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

    b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH SPEED DRIVING. This exclusion (14.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving, or any type of competitive driving.

**If Other Medical Payments Coverage or Similar Vehicle Insurance Applies**

1. An *insured* shall not recover for the same *medical expenses* or funeral expenses under both this coverage and other medical payments coverage or similar vehicle insurance.

2. If Medical Payments Coverage provided by this policy and one or more

*your spouse*, or any *relative* by us apply to the same *bodil    ury*, then:

   a. the Medical Payments Coverage limits of such policies shall not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. We may choose one or more policies from which to make payment.

3. The Medical Payments Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car* or a trailer attached to it.

   a. If:

      (1) this is the only vehicle policy issued to *you*, *your spouse* or any *relative* by us that provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as primary coverage; and

      (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than us also applies as primary coverage for the same accident,

      then we will pay the proportion of *medical expenses* and funeral expenses payable as primary that our applicable limit bears to the sum of our applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as primary coverage.

   b. If:

      (1) more than one vehicle policy issued to *you*, *your spouse*, or any *relative* by us provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as primary coverage; and

      (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than us also applies as primary cov-

then we will pay the proportion of *medical expenses* and funeral expenses payable as primary that the maximum amount that may be paid by us as determined in 2. above bears to the sum of such amount and the limits of all other medical payments coverage or similar vehicle insurance that apply as primary coverage.

4. Except as provided in 3. above, the Medical Payments Coverage provided by this policy applies as excess coverage.

   a. If:

      (1) this is the only vehicle policy issued to *you*, *your spouse*, or any *relative* by us that provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

      (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than us also applies as excess coverage for the same accident,

      then we will pay the proportion of *medical expenses* and funeral expenses payable as excess that our applicable limit bears to the sum of our applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

   b. If:

      (1) more than one vehicle policy issued to *you*, *your spouse*, or any *relative* by us provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

      (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than us also applies as excess coverage for the same accident,

      then we will pay the proportion of *medical expenses* and funeral expenses payable as excess that the maximum amount that may be paid by us as determined in 2.

above bears to the sum of such amount and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

**Our Payment Options**

We may, at our option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*;

4. A *person* authorized by law to receive such payment; or

5. Any *person* or organization that provides the *medical services* or funeral services.

**Suit Against Us – Medical Payments Coverage**

There is no right of action against us:

1. until all the terms of this policy have been met; and

2. unless the legal action relating to this coverage is brought against us within five years immediately following the date of the accident.

7. **SECTION III — UNINSURED MOTOR VEHICLE — COVERAGES U AND U3**

   a. Item 1. that follows "An *uninsured motor vehicle* does not include a land motor vehicle:" is changed to read:

      1. insured under the liability coverage of this policy. However, any such vehicle will be deemed to be an *uninsured motor vehicle* for *bodily injury* sustained by *you*, *your spouse* or any *relative* while the vehicle is being operated by a *person* other than *you*, *your spouse* or any *relative*;

   b. The following provision is deleted:

      The *bodily injury* must be a serious injury as defined in Section 627.737(2) of the Florida Motor Vehicle No-Fault Law before we will pay for damages consisting of pain, suffering, mental anguish, or inconvenience.

   c. The following is added to **Deciding Fault and Amount – Coverages U and U3:**

6127HH.1

um of such
of all other
overage or
ice that ap-

payment to

ouse;

: *insured*, if
n incomp:-

v to receive

on that pro-
· or funeral

ments Cov-

st us:

policy have

ting to this
t us within
lowing the

MOTOR
ND U3

*ured motor*
. motor ve-

ility cove-
wever, any
emed to be
*vehicle* for
d by *you*,
*ative* while
erated by a
*you*, *your*

ed:

: a serious
Section
Motor Veh:-
*e* will pay
ain, suffer-
nvenience.
ding Fault
d U3:

Arbitrators shall have no authority to decide any questions of le   r con-
duct arbitration on a clas   ide or class-representative basis.

   **d.  Limits of Liability – Coverage U**

     Item 2.b.(2) of this provision is deleted.

   **e.  Limits of Liability – Coverage U3**

     Item 2.b.(2) of this provision is deleted.

**8.  SECTION IV — PHYSICAL DAMAGE COVERAGES**

   **a.  COMPREHENSIVE – COVERAGE D**

     (1)  The second paragraph of item 1. is changed to read:

       Breakage of glass or *loss* due to hitting or being hit by a bird or an animal is payable under this coverage.

     (2)  Item 2. is changed to read:

       2.  We will pay *you* for transportation costs incurred if *your car* is stolen. We will pay up to $25 per day beginning when *you* tell us of the theft and ending when we pay for the *loss*.

       If the daily incurred transportation costs are payable under both Comprehensive Coverage and Car Rental and Travel Expenses Coverage, we will pay only under the one coverage where *you* collect the most. If payments have been made under Car Rental and Travel Expenses Coverage and such payments have either exhausted the total amount payable under Car Rental Expense or reduced the total amount payable under Car Rental Expense to less than $25, then we will pay under Comprehensive Coverage.

   **b.  COLLISION – 80% – COVERAGE F and COLLISION – COVERAGE G**

     (1)  The following paragraph is added:

       *Loss* caused by collision does not include *loss* due to:

       1.  missiles or falling objects;

       2.  windstorm or hail;

       3.  earthquake, water or flood;

       4.  theft or larceny;

       5.  malicious mischief or vandalism; or

       6.  riot or civil commotion.

     (2)  The following language is deleted:

       If we offer to pay for the repair of damaged windshield glass instead of the replacement of the windshield and *you* agree to have such repair made, we will pay the full cost of repairing the windshield glass regardless of *your* deductible.

   **c.  COMPREHENSIVE – COVERAGE D, COLLISION – 80% – COVERAGE F and COLLISION – COVERAGE G**

     The following is added:

       If *you* and we agree, windshield glass will be repaired instead of replaced.

       *You* agree that replacement glass need not have any insignia, logo, trademark, etching, or other marking that was on the replaced glass.

   **d.  EMERGENCY ROAD SERVICE – COVERAGE H**

     The following paragraph is added:

       We will pay the fair cost *you* incur for *your car* for locksmith services, up to one hour, to open *your car* if *your* key is lost, stolen or locked inside *your car*. We will pay only the cost of labor.

   **e.  CAR RENTAL EXPENSE — COVERAGE R**

     The paragraph that reads:

       Any car rent payable under Coverage R is REDUCED TO THE EXTENT IT IS PAYABLE UNDER COMPREHENSIVE.

     is changed to read:

       If the incurred daily rental charge is payable under both Comprehensive Coverage and Car Rental Expense Coverage, we will pay only under the one coverage where *you* collect the most.

   **f.  CAR RENTAL AND TRAVEL EXPENSES – COVERAGE R1**

     (1)  **Car Rental Expense**

       The paragraph in the policy booklet that reads:

       Any car rent payable under this coverage IS REDUCED TO THE

EXTENT IT IS PAYABLE UN-
DER COMPREHENSIVE.

is changed to read:

> If the incurred daily rental charge is payable under both Comprehensive Coverage and Car Rental and Travel Expenses Coverage, we will pay only under the one coverage where *you* collect the most.

(2) The provision in the policy booklet titled **Total Amount of Expenses Payable – Coverage R1** is changed to read:

> **Total Amount of Expenses Payable – Coverage R1.**
>
> 1. The most we will pay for Car Rental Expense incurred in any one occurrence is $400.
>
> 2. The most we will pay for Travel Expenses incurred by all *persons* in any one occurrence is $400.
>
> 3. The most we will pay for Rental Car – Repayment of Deductible Amount Expense incurred in any one occurrence is $400.

g. **Trailer Coverage**

(1) The most we will pay under comprehensive or collision coverage for a covered non-owned trailer or detachable living quarters unit is increased to $2500.

(2) Item 2.c. is deleted.

h. The following is added to **When Coverages D, F, G, H, R, R1 and R2 Do Not Apply:**

(1) THERE IS NO COVERAGE FOR *LOSS* TO ANY VEHICLE DUE TO *FUNGI*. THIS APPLIES REGARDLESS OF WHETHER OR NOT THE *FUNGI* RESULT FROM A *LOSS* THAT IS PAYABLE UNDER ANY OF THE PHYSICAL DAMAGE COVERAGES. WE WILL ALSO NOT PAY FOR ANY TESTING OR REMEDIATION OF *FUNGI*, OR ANY ADDITIONAL COSTS REQUIRED TO REPAIR ANY VEHICLE THAT ARE DUE TO THE EXISTENCE OF *FUNGI*.

(2) THERE IS NO COVERAGE FOR *LOSS* TO ANY VEHICLE THAT RESULTS FROM:

1. NUCLEAR REACTION;

2. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

3. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE.

i. **If There Is Other Physical Damage Coverage or If You Own More Than One Vehicle**

Item 2. is changed to read:

> 2. **Policies Issued by Us to You, Your Spouse or Any Relative**
>
> If two or more vehicle policies issued by us to *you, your spouse* or any *relative* apply to the same *loss* or occurrence, we will pay under the policy with the highest limit.

9. **CONDITIONS**

a. The following is added to Condition 1., **Policy Changes:**

> **Change of Policy Address**
>
> We may change the named insured's policy address as shown on the Declarations Page and in our records to the most recent address provided to us by:
>
> 1. *you;* or
>
> 2. the United States Postal Service.

b. The provision titled **Suit Against Us** is changed to read:

> 2. **Suit Against Us**
>
> There is no right of action against us:
>
> a. until all the terms of this policy have been met; and
>
> b. under the liability coverages, until the amount of damages an *insured* is legally liable to pay has been finally determined by:
>
> (1) verdict after actual trial; or
>
> (2) agreement between the *insured*, the claimant and us.
>
> Bankruptcy or insolvency of the *insured* or his or her estate shall not relieve us of our obligations.

**Page 10 of 11**

6127HH.1

TION;

RADIC-
INATION
CE; OR

AL   OR
DETONA-
EASE OF
M, ANY
ADIOAC-

age Cov-
han One

: to You,
lative

olicies is-
*spouse* or
same *loss*
pay under
t limit.

dition 1.,

insured's
he Decla-
rds to th:
.to us by

Service.

ıst Us is

on against

f this pol-
ınd

overages,
damages
ı liable to
lly deter-

tual trial;

ween the
claimant

lvency of
ɔr her es-
us of our

c.  under uninsured motr  vehicle,
    any physical damage    death,
    dismemberment and  .oss  of
    sight coverages, until 30 days
    after we get the *insured's* notice
    of accident or *loss*.

c.  **Under Our Right to Recover Our Pay-
    ments:**

    (1)  Item a. is changed to read:

        a.  Death,  dismemberment  and
            loss of sight coverage pay-
            ments are not recoverable by
            us.

    (2)  The following is added:

        If we are obligated under Medical
        Payments Coverage to make
        payment to or for a *person* or or-
        ganization who has a legal right
        to collect from another *person* or
        organization, then we will be sub-
        rogated to that right to the extent
        of our payment.

        The *person* or organization to or for
        whom we make payment must help
        us recover our payments by:

        (a)  doing nothing to impair that
             legal right;

        (b)  executing any documents we
             may need to assert that legal
             right; and

        (c)  taking legal action through
             our representatives when we
             ask.

        If we make payment under Medical
        Payments Coverage and the *person*
        or organization to or for whom we
        make payment recovers or has re-
        covered from another *person* or or-
        ganization, then the *person* or
        organization to or for whom we
        make payment must:

        (a)  hold in trust for us the pro-
             ceeds of any recovery; and

        (b)  reimburse us to the extent of
             our payment.

d.  **Cancellation**

    **Return of Unearned Premium** is
    changed to read:

**Return of Unearned Premium.** If
*you* cancel, premium  be earned
oñ a pro-rata basis. We ..ay retain up
to ten percent of any unearned pre-
mium. Any remaining unearned pre-
mium will be mailed to *you* within 30
days after the effective date of the pol-
icy cancellation, or 30 days after we
receive *your* request to cancel *your*
policy, whichever is later. If we can-
cel, premium will be earned on a pro-
rata basis. Any unearned premium
will be mailed at the time we cancel or
within 15 days after the effective date
of the policy cancellation. Delay in
the return of unearned premium does
not affect the cancellation.

e.  Condition 8., **Concealment or Fraud,** is
    replaced by the following:

    **8.  Concealment or Fraud**

        There is no coverage under this
        policy if *you* or any other *person*
        or organization insured under this
        policy has made false statements
        with the intent to conceal or mis-
        represent any material fact or cir-
        cumstance in connection with any
        claim under this policy.

10.  The following is added:

    *Your* purchase of this policy may allow *you*
    to purchase certain coverages, coverage
    options, coverage deductibles, coverage
    limits, or coverage terms on other policies
    from State Farm Mutual Automobile In-
    surance Company, State Farm Fire and
    Casualty Company, and subsidiaries or af-
    filiates of either, subject to their applicable
    eligibility rules.

11.  **MOTORCYCLE  COVERAGE  ENDORSE-
     MENT and TRAILER ENDORSEMENT**

    The definition of *newly acquired car* in the
    above item 1. replaces the definition of *newly
    acquired car* in both the MOTORCYCLE
    COVERAGE endorsement and the TRAILER
    ENDORSEMENT if either endorsement is a
    part of *your* policy. In addition, under the
    TRAILER ENDORSEMENT, "*car*" as found
    in the definition of *newly acquired car* is
    changed to include a trailer newly owned by or
    newly leased to *you* if it is of the same type as
    the trailer described on the declarations page.

*Edward B Rust, Jr.*
Chief Executive Officer

JS 44 (Rev. 11/05)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

**I. (a) PLAINTIFFS**

Cynthia Farber

**DEFENDANTS**

State Farm Mutual Automobile Insurance Company

**(b)** County of Residence of First Listed Plaintiff   Palm Beach
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   McLean County, IL
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

David C. Prather, Esq., Lytal Reiter et al LLP, 515 N. Flagler Dr., 10th Floor, P.O. Box 4056, West Palm Beach, Florida, 33402-4056

Attorneys (If Known)

David Krouk, Esq., and James Shaw, Esq., Butler Pappas et al LLP, 777 South Harbour Island Blvd., Ste. 500, Tampa, Florida, 33602

**(d)** Check County Where Action Arose: ☐ MIAMI- DADE ☐ MONROE ☐ BROWARD ☑ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

08CV80178 KAM/LRJ

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☑ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

**V. ORIGIN** (Place an "X" in One Box Only)

☐ 1 Original Proceeding
☑ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. RELATED/RE-FILED CASE(S).**
(See instructions second page):

a) Re-filed Case ☐ YES ☑ NO   b) Related Cases ☑ YES ☐ NO

JUDGE Hon. Robin Rosenberg - WPB Cir. Ct.   DOCKET NUMBER (circuit ct) 05-08-CA-1334-MB

**VII. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

28 U.S.C. § 1332 -- Plaintiff seeks recovery exceeding $100,000.00 from foreign insurer under insurance contract

LENGTH OF TRIAL via 5 days estimated (for both sides to try entire case)

**VIII. REQUESTED IN COMPLAINT:**

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ 100,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE 2/21/08